John H. Lovell, SBN 12609300
john@lovell-law.net
LOVELL ISERN & FARABOUGH, LLP
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Phone: (806) 373-1515
Fax:    (806) 379-7176

--and—

Matthew S. Merriott, SNB 24100846
mmerriott@mhba.com
MULLIN HOARD & BROWN, L.L.P.
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086

*Attorneys for First Bank & Trust, a
division of UMB Bank n.a., successor by
merger to HTLF Bank.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| In re: | |
| | Chapter 7 |
| McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., | |
| | Case No. 23-20084-swe |
| *Debtors*.[1] | Jointly Administered |
| Kent Ries, Chapter 7 Trustee for the Bankruptcy Estates of McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc. | |
| *Plaintiff*, | Adv. Proc. No. 25-02005-swe |
| v. | The Honorable Scott W. Everett |
| Community Financial Services Bank; HTLF Bank; Mechanics Bank; and Rabo Agrifinance, LLC, | |
| *Defendants.* | |

[1] The Debtors in these chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. (Case No. 23-20086-swe).

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................................... iii

I.        INTRODUCTION .................................................................................................. 1

II.       BACKGROUND FACTS ...................................................................................... 2

  A.     The Trustee's Factual Allegations ........................................................................ 2

  B.     The Trustee misstates the legal effect of the underlying banking transactions. .......... 2

    i.     HTLF was authorized by the Debtors and 2B Farms to complete the checks at issue.2

    ii.    Granting Provisional Settlement Credits is a normal and regular banking activity. ... 3

    iii.   Provisional Settlement Credits do not constitute a loan to the maker of the check. ... 4

III.     STANDARD OF REVIEW .................................................................................... 5

IV.     ARGUMENT ........................................................................................................ 6

    **A.**   The Trustee lacks standing to assert the victims' damage claims directly
       against HTLF. ...................................................................................................... 6

     i.    The Debtors were parties to the Ponzi scheme. ..................................................... 7

     ii.   The Trustee cannot assert direct claims based on the same torts and damages
       for which Debtors are liable. ................................................................................. 9

    B.   The Trustee fails to allege sufficient facts to support claims that require actual
       knowledge of the Ponzi scheme ............................................................................ 10

     i.    The Trustee's allegation that HTLF knowingly defrauded itself in a check
       kite is not plausible. ............................................................................................. 10

     ii.   Knowledge of and participation in a check kite is not knowledge of and
       participation in a Ponzi scheme. .......................................................................... 12

    C.   The Trustee Fails to state a claim for Professional Negligence ................................ 13

    D.   The Trustee fails to allege that HTLF received transfers from Debtors. .................... 15

CONCLUSION ........................................................................................................................... 17

CERTIFICATE OF SERVICE .................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019) ................................. 9

*Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228 (5th Cir. 2007) ........................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 6

*Barnhill v. Johnson*, 503 U.S. 393 (1992) ............................................................................ 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 10, 11

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir.) ....................................... 6

*Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890
   (7th Cir.1988) ............................................................................................................ 15, 16

*F.D.I.C. v. Ernst & Young*, 967 F.2d 166 (5th Cir. 1992) ........................................................ 8

*FG Holdings, Inc. v. London Am. Risk Specialists, Inc.*, No. 09-05-522 CV,
   2007 WL 4341408 (Tex. App.—Beaumont Dec. 13, 2007, pet. denied) ................................. 9

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017) ............ 12

*Fojtik v. First Nat. Bank of Beeville*, 752 S.W.2d 669
   (Tex. App.—Corpus Christi 1988, writ denied) .................................................................. 7

*Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83 (Tex. App.—El Paso 2012, no pet.) ................... 13

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) .......... 14

*Hearne v. Riversource Life Ins. Co.*, 670 S.W.3d 360
   (Tex. App.—Texarkana 2023, pet. denied) ....................................................................... 16

*Holloway v. Skinner*, 898 S.W.2d 793 (Tex. 1995) ................................................................. 7

*In re Stinson Petroleum Co., Inc.*, No. 09-51663-NPO, 2011 WL 1398477
   (Bankr. S.D. Miss. Apr. 12, 2011) .................................................................................... 11

*In re Today's Destiny, Inc.*, 388 B.R. 737 (Bankr. S.D. Tex. 2008) ........................................... 9

*Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296 (11th Cir. 2020) .......................................... 15

*JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387
   (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ............................................................ 13

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565 (1942) ........................................ 13

*Matter of Coutee*, 984 F.2d 138 (5th Cir. 1993) ............................................................... 15, 16

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239 (5th Cir. 2020) .... 11, 14

*Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392 (5th Cir. 2013) .............................................. 7

*NationsBank, N.A. v. Dilling*, 922 S.W.2d 950 (Tex. 1996) .................................................... 8

*Newsome v. Charter Bank Colonial*, 940 S.W.2d 157
   (Tex. App—Houston [14th Dist.] 1996, writ denied) .......................................................... 16

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ........................................................ 5

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854 (Tex. 1968) ... 10

*Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856 (Tex. App.—El Paso 2021, no pet.) ... 14

*Thurman v. Med. Transportation Mgmt., Inc.*, 982 F.3d 953 (5th Cir. 2020) .............................. 6

*United States v. Frydenlund*, 990 F.2d 822 (5th Cir. 1993) .................................................... 11

*Warfield v. Byron*, 436 F.3d 551 (5th Cir. 2006) .................................................................. 6

*Williams v. United States*, 458 U.S. 279 (1982) ................................................................... 11

*Williams v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997) .................................................. 6

**Statutes**

Tex. Bus. & Comm. Code § 3.115(a)....................................................................................... 3

Tex. Bus. & Comm. Code § 3.115(b) ...................................................................................... 3

Tex. Bus. & Comm. Code § 4.104(a)(11).................................................................................. 3

Tex. Bus. & Comm. Code § 4.104(a)(5) ................................................................................... 4

Tex. Bus. & Comm. Code § 4.201(a) .................................................................................... 4, 5

Tex. Bus. & Comm. Code § 4.202 ......................................................................................... 14

Tex. Bus. & Comm. Code § 4.214 ........................................................................................... 4

Tex. Bus. & Comm. Code § 4.215 ........................................................................................... 4

Tex. Bus. & Comm. Code § 4.406 ......................................................................................... 14

**Rules**

Fed. R. Bankr. P. 7009 ......................................................................................................... 1

Fed. R. Bankr. P. 7012 ......................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 5, 6, 17

Fed. R. Civ. P. 9(b) ......................................................................................................... 1, 6

## HTLF'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFF'S ORIGINAL ADVERSARY COMPLAINT

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), made applicable to this Adversary Proceeding by Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure, *First Bank & Trust, a division of UMB Bank n.a., successor by merger to HTLF Bank* ("**HTLF**")[2] hereby submits this brief in support of its motion to dismiss Plaintiff's Original Adversary Complaint (the "**Complaint**") filed by Kent Reis, as Trustee of the Debtors' Bankruptcy Estates (the "**Trustee**") as to HTLF.

## I.    INTRODUCTION

1.    In his Complaint, the Trustee includes detailed allegations regarding the alleged Ponzi scheme and check kiting schemes orchestrated by the Debtors and McClain. But HTLF is not the Debtors or McClain. Nor is HTLF one of their banks or lenders. HTLF was the bank and lender to 2B Farms, one of the Debtors' customers. Even if the Trustee has alleged sufficient facts regarding the actions of McClain, the Debtors, their lender, and their banks, the Trustee must still allege sufficient facts to support his claims against HTLF. For the reasons set forth herein, he has failed to do so. As a result, the Complaint should be dismissed as to HTLF. In the alternative, the Trustee should be granted the opportunity to replead his causes of action if doing so would not be futile.

---

[2] UMB is a national bank chartered and regulated by the Office of the Comptroller of the Currency. UMB is located in Kansas City, Missouri, with its corporate headquarters and principal place of business at 1010 Grand Boulevard, Kansas City, Missouri. Heartland Financial USA, Inc. was a bank holding company whose wholly owned subsidiary was HTLF Bank, successor to First Bank & Trust. UMB Bank, n.a., acquired HTLF Bank via merger on January 31, 2025. HTLF Bank is now operating as UMB Bank, n.a., and First Bank & Trust is now operating as a division of UMB Bank, n.a. UMB Bank n.a. is a wholly-owned subsidiary of UMB Financial Corporation, a publicly traded corporation. There is no publicly held corporation that holds 10% or more of UMB Financial Corporation stock.

## II.    <u>BACKGROUND FACTS</u>

### A.  The Trustee's Factual Allegations

2.      The Trustee's allegations against HTLF center around banking transactions involving (1) Debtors, (2) Mechanics Bank—the Debtors' bank, (3) 2B Farms—one of the Debtors' investors, and (4) HTLF—2B Farms' bank. [Doc. 1, ¶¶65-68]. The Trustee's essential factual allegations concerning HTLF's actions are:

    a.  That HTLF was the bank and lender for 2B Farms. [Doc. 1 ¶65]

    b.  That, based on cattle sales statements at the direction of the Debtors, 2B Farms, and/or Terry Robinson, HTLF employees would complete McClain checks by filling in the amount of 2B Farm's share of cattle proceeds and deposit such checks in 2B Farms' account. [Doc. 1 ¶¶ 65, 161].

    c.  That HTLF gave 2B Farms a provisional credit for the checks prior to funds arriving from the Debtors' accounts at Mechanics Bank. [Doc. 1 ¶ 65].

    d.  That HTLF allowed 2B Farms to use the provisional credit to send wire transfers to the Debtors' Mechanics Bank account. [Doc. 1 ¶ 65].

3.      Outside of the 2B Farms transactions described in the preceding paragraph, the complaint does not allege that HTLF had any other interactions with McClain, the Debtors, or the other Defendants.

### B.  The Trustee misstates the legal effect of the underlying banking transactions.

4.      In addition to describing the facts of these transactions, the Trustee makes conclusions about the legal effect or illegitimacy of the banking actions. [Doc. 1 ¶ 66]. Even taking the Trustee's allegations of the facts of these transactions as true, the Trustee's legal conclusions are inconsistent with applicable law and cannot support his causes of action against HTLF.

#### i.   HTLF was authorized by the Debtors and 2B Farms to complete the checks at issue.

5.      The making of a check is governed by Article 3 of the Uniform Commercial Code, adopted in Texas in Chapter 3 of the Texas Business and Commerce Code. The pre-signed checks

at issue were "incomplete instruments," defined as "a signed writing, whether or not issued by the signer, the contents of which show at the time of signing that it is incomplete but that the signer intended it to be completed by the addition of words or numbers." Tex. Bus. & Comm. Code § 3.115(a). If such an instrument is completed with authorization, it can be enforced "according to its terms as augmented by completion." *Id*. at § 3.115(b).

6.    Here, the Trustee affirmatively asserts that the checks were completed according to a "cattle statement" from the Debtors and that such actions were taken "at the direction of the Debtors, 2B Farms, and/or Terry Robinson." [Doc. 1 ¶¶ 65, 161]. Indeed, no party has alleged in any of the pending adversary proceedings that HTLF was not authorized to complete the checks. As a result, the completion of the checks was not an illegitimate action as alleged by the Trustee.

**ii.    Granting Provisional Settlement Credits is a normal and regular banking activity.**

7.    The Trustee baldly asserts that "there was no legitimate mechanism" to grant credit on the checks that were deposited prior to funds arriving from the Debtors' account at Mechanics Bank. [Doc. 1, ¶67]. But contrary to the Trustee's assertions, granting an immediate settlement credit on an uncleared check is a legitimate and regular banking activity.

8.    In the UCC, the process of paying or receiving payment on a check is "settling" the check. "'Settle' means to pay in cash, by clearing-house settlement, in a charge or credit or by remittance, or otherwise as agreed. A settlement may be either provisional or final." Tex. Bus. & Comm. Code § 4.104(a)(11). The ordinary practice of backs is to make a provisional settlement on checks as they are presented, as stated in the official comments to the UCC:

> Under current bank practice, in a major portion of cases banks make provisional settlement for items when they are first received and then await subsequent determination of whether the item will be finally paid. This is the principal characteristic of what are referred to in banking parlance as "cash items." Statistically, this practice of

> settling provisionally first and then awaiting final payment is
> justified because the vast majority of such cash items are finally
> paid, with the result that in this great preponderance of cases it
> becomes unnecessary for the banks making the provisional
> settlements to make any further entries.

Tex. Bus. & Comm. Code § 4.214, comment 1 (Tex. UCC) (Vernon) 2021). Such provisional

settlements normally become final settlement through the passage of time or final payment. Tex.

Bus. & Comm. Code § 4.215.

### iii. Provisional Settlement Credits do not constitute a loan to the maker of the check.

9.      The Trustee alleges that HTLF effectively loaned money to Debtors as a "Shadow

Lender" by (1) granting immediate credit on Debtors' checks deposited into 2B Farms' account,

and (2) sending payments to Debtors out of 2B Farms' account prior to the checks clearing. [Doc.

1, ¶66]. Neither of these transactions can be characterized as a loan to Debtors.

10.     As a matter of law, granting immediate credit on an uncleared check is not a loan

to the maker of the check. In the context of a check being deposited, a bank's "Customer" is "the

person having an account with a bank or for whom a bank has agreed to collect items…." Tex.

Bus. & Comm. Code § 4.104(a)(5). HTLF's customer was 2B Farms, not the Debtors.

11.     In collecting the checks, HTLF was acting as the agent of its customer, 2B Farms

and did not become a creditor of Debtors:

> Unless a contrary intent clearly appears and before the time that a
> settlement given by a collecting bank for an item is or becomes final,
> the bank, with respect to the item, is an agent or sub-agent of the
> owner of the item and any settlement given for the item is
> provisional.

Tex. Bus. & Comm. Code § 4.201(a). As noted in the official comments, this provision confirms

that (unless stated otherwise) a bank is merely an agent of the owner as opposed to taking

ownership of the check itself. *Id*. at comment 1 (Tex. UCC) (Vernon) 2021). The relationship

remains an agency relationship "regardless of the form of indorsement or lack of indorsement and even though credit given for the item is subject to immediate withdrawal as of right or is in fact withdrawn…." *Id*. at § 4.201(a).

12.     Nor was HTLF making a loan to Debtors when it completed the wire transfers from 2B Farms' account to Debtors' account at Mechanics Bank. The transaction was between Debtors and 2B Farms, not Debtors and HTLF. When the checks were dishonored, HTLF's recourse was to withdraw the provisional settlement credit from 2B Farms:

> If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item that is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer….

Tex. Bus. & Comm. Code § 4.201(a) Sec. 4.214(a). In contrast, 2B Farms' recourse (which it has pursued) is to assert claims against Debtors for damages in the amount of the wires. As a result, there is no factual or legal basis for the Trustee to claim that the provisional credits or the wires were a loan to Debtors.[3]

## III.    <u>STANDARD OF REVIEW</u>

13.     Rule 12(b)(6) governs dismissals for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The question before the Court in considering a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) is whether a plaintiff has pled a plausible and legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

---

[3] The Trustee's entire "Shadow Lender" theory is essentially predicated on disregarding the existence of 2B Farms and pretending that HTLF was dealing with the Debtors instead. But the Trustee cannot unilaterally, without any support or legal process, consolidate 2B Farms and the Debtors.

14.    In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and determine whether those facts, and the reasonable inferences from those facts, would entitle a plaintiff to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007). Even where the facts are adequately pleaded, "a complaint may be dismissed if it clearly lacks merit—for example, where there is 'an absence of law to support a claim of the sort made.'" *Thurman v. Med. Transportation Mgmt., Inc.*, 982 F.3d 953, 955–56 (5th Cir. 2020).

15.    Allegations of fraud are subject to the higher pleading standard of Rule 9(b). "At a minimum, Rule 9(b) requires that the plaintiff specify the particulars of "time, place, and contents of the false representations." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997). "Put simply, Rule 9(b) requires the who, what, when, where, and how [of the alleged fraud] to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003).

## IV.    **ARGUMENT**

### A.    **The Trustee lacks standing to assert the victims' damage claims directly against HTLF.**

16.    The Trustee has alleged that Debtors' operations constituted a massive Ponzi scheme. [Doc. 1 ¶ 1].[4] The victims of the Ponzi scheme have asserted claims against the Debtors'

---

[4] Because there were at least some actual cattle involved, it is unclear as to whether and to what extent the Trustee can support his allegations that Debtors' operation constituted a Ponzi scheme. Importantly, the Ponzi scheme presumption arises because a traditional Ponzi scheme is insolvent from its inception. *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006). But even if it was a Ponzi scheme at its collapse, the Debtors' operation may not have been fraudulent from its inception. HTLF does not concede that the Debtors' operation was a Ponzi scheme but will refer to it as such for purposes of its Motion to Dismiss.

estate for over $100 million. [Doc. 1 ¶¶ 93-96].[5] In Counts I and III, the Trustee alleges that Defendants conspired to accomplish the Ponzi scheme and participated in its execution and seeks to hold Defendants liable for the damages owed by Debtors to the victims. [Doc. 1 ¶¶ 97-110, 120-32]. HTLF rejects the Trustee's allegations of its involvement. But if HTLF was involved, the Trustee's remedy is to seek contribution, not assert direct claims.

17.     Rather than assert a contribution claim, the Trustee has sought to artfully plead direct claims against HTLF. The Trustee seeks to create a distinction between McClain as an individual and the Debtors, arguing that McClain—not the Debtors—operated the Ponzi scheme. [*See, e.g.,* Doc. 1 ¶¶ 106, 125]. Based on this distinction, the Trustee argues that Debtors were injured by Defendants and McClain in the Ponzi scheme. [Doc. 1 ¶¶ 119, 132]. But this argument fails as a matter of law.

### i.    The Debtors were parties to the Ponzi scheme.

18.     The Trustee cannot divorce McClain's actions from those of the Debtors. "As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). A corporate agent's actions are imputed to the company unless he was acting solely for his own purposes. *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 403 (5th Cir. 2013)("Even an agent's mixed motives— benefitting himself and the corporation—are insufficient."). For purposes of a conspiracy, a corporate agent's actions are deemed to be the actions of the corporation itself unless such actions were taken in a different capacity. *Fojtik v. First Nat. Bank of Beeville*, 752 S.W.2d 669, 673 (Tex. App.—Corpus Christi 1988, writ denied)("Hence, it is conceivable that Chesnut, if he had in fact

---

[5] The actual amount of liability is yet to be determined and is at issue in Adversary No. 25-02003-swe.

conspired with the bank, did so in his capacity not as a corporate agent but as an independent equipment dealer.").

19.    Here, McClain's and the Debtors' purposes in operating the alleged Ponzi scheme were aligned. McClain owned the Debtors and controlled them as a director, officer, and agent. [Doc. 1 ¶¶ 2, 100]. Like in *F.D.I.C. v. Ernst & Young*, McClain served himself by serving the Debtors and his actions are therefore attributable to the Debtors:

> "In the present case, Woods acted on the corporation's behalf because by serving Western, he served himself, Western's sole owner. As the sole owner, Woods' fraudulent activities on Western's behalf benefitted himself and injured outsiders to Western—i.e. depositors and creditors. Accordingly, under *Greenstein,* Woods acted on Western's behalf, and, therefore, his knowledge is imputable to Western."

*F.D.I.C. v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992). While the Trustee alleges that McClain received a personal benefit through the Debtors, he does not allege that McClain was acting in some other capacity or entirely on his own behalf. Indeed, the Trustee specifically alleges that Defendants dealt with McClain in his corporate capacity. [Doc. 1 ¶ 102].

20.    Further, the Trustee's alleged damages consist of the amount of Debtors' liability to the victims of the Ponzi scheme, not independent business losses. [Doc. 1 ¶¶ 107, 132]. Debtors are only liable for such damages if McClain was acting on behalf of the Debtors in perpetrating the fraud. *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 952 (Tex. 1996). The Trustee cannot then turn around and argue that McClain's actions were his own independent actions for purposes of his claims against Defendants. The Trustee cannot allege that Debtors are liable for the Ponzi scheme without admitting that the Debtors were participants in the Ponzi scheme.

21.    As a result, at least with respect to the operation of the Ponzi scheme, McClain's actions were the Debtors' actions as a matter of law. Therefore, if Defendants did in fact participate

in the Ponzi scheme, then they were joint participants with Debtors—not just McClain as an individual.

### ii.   The Trustee cannot assert direct claims based on the same torts and damages for which Debtors are liable.

22.     If the Debtors and Defendants joined together to operate a Ponzi scheme, then Debtors and Defendants would be jointly liable to the victims to the extent provided for under state law. The remedy among jointly liable parties is to seek contribution from one another, such as via Chapter 33 of the Texas Civil Practice and Remedies Code.. *See, e.g., In re Today's Destiny, Inc.,* 388 B.R. 737, 753 (Bankr. S.D. Tex. 2008) (applying Chapter 33 in bankruptcy context). To the extent the Trustee wishes to assert a contribution action, he should specifically plead such a claim at the appropriate time.

23.     Absent some separate basis for liability (such as contractual indemnity) the Trustee cannot assert a direct claim against HTLF for the Debtors' own liability to third parties. *See FG Holdings, Inc. v. London Am. Risk Specialists, Inc.*, No. 09-05-522 CV, 2007 WL 4341408, at *7 (Tex. App.—Beaumont Dec. 13, 2007, pet. denied).

24.     The Trustee fails to allege such a direct claim in Count I. While the alleged breach of fiduciary duty is purportedly a separate tort, no separate tortious activity or damages are alleged. Rather, the alleged participation was in the underlying Ponzi scheme. [Doc. 1 ¶ 108]. The alleged damage is Debtors' liability for the underlying Ponzi scheme. [Doc. 1 ¶ 107]. The Trustee has not alleged participation in a separate injury inflicted by McClain on Debtors.  As a result, Count I should be dismissed.

25.     Similarly, the Trustee fails to allege a direct claim in Count III. A conspiracy is not a cause of action itself, but rather allows vicarious liability for an underlying tort committed during the conspiracy. *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). The

only underlying tort alleged is fraud, which was inflicted on the victims of the Ponzi scheme. [Doc. 1 ¶ 130]. And the only damages alleged from such fraud are the damages suffered by the victims. [Doc. 1 ¶ 132]. As a result, Count III should be either dismissed..

**B.**     **The Trustee fails to allege sufficient facts to support claims that require actual knowledge of the Ponzi scheme.**

26.     Counts I and III for knowing participation and for conspiracy depend on HTLF having actual knowledge that Debtors were operating a Ponzi scheme. For knowing participation, the Trustee alleges that HTLF knowingly participated in McClain's breach of fiduciary duty by knowingly participating in the Ponzi scheme. [Doc. 1 ¶¶ 106, 108]. And a conspiracy claim necessarily requires knowledge of the object to be accomplished. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968).

27.     In both his claims for knowing participation and conspiracy, the Trustee alleges that "Defendants knew that they were participating in McClain's breach of fiduciary duties to Debtors" and that "McClain and Defendants had a meeting of the minds on the object of operating a fraudulent Ponzi scheme." [Doc. 1 ¶¶ 108, 130]. To survive a motion to dismiss, the Trustee is required to allege facts that make such knowledge and intent plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

**i.**     **The Trustee's allegation that HTLF knowingly defrauded itself in a check kite is not plausible.**

28.     The Trustee's only allegations regarding HTLF's knowledge and intent relates to HTLF's participation in the 2B Farms transactions. As discussed previously, the actual banking actions undertaken by HTLF were neutral, not inherently fraudulent. *See* § II.B. As a result, allegations that HTLF participated in such transactions are not sufficient to allege fraudulent intent

on the part of HTLF. *See Twombly*, 550 U.S. at 555 (allegations of neutral parallel conduct were not sufficient to allege an underlying agreement that would make such conduct unlawful).

29.     The Trustee alleges that such transactions were used to accomplish a fraudulent check kite. However, to the extent there was fraudulent intent behind the transactions, HTLF was the victim, not the perpetrator, of such fraud. As discussed previously, provisional settlement credits are a regular banking activity. *See* § II.B.ii. A check-kite involves a party **intentionally** taking advantage of these provisional settlement credits to artificially inflate account balances. *See, e.g.*, *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 241 (5th Cir. 2020); *United States v. Frydenlund*, 990 F.2d 822, 824 (5th Cir. 1993); *In re Stinson Petroleum Co., Inc.*, No. 09-51663-NPO, 2011 WL 1398477, at *2 (Bankr. S.D. Miss. Apr. 12, 2011).[6]

30.     In a traditional check kite, checks are circulated between two or more banks. *Id*. Each bank grants a provisional credit based on incoming checks and uses that credit to settle outgoing checks. *Id*. This results in artificially inflated bank account balances during the processing period. *Id*. In most cases, the excess balance is then used to cover other expenses or is otherwise withdrawn, resulting in a net negative balance among the banks. *Id*.[7]

---

[6] "[A] check-kiting scheme begins when a check kiter opens an account at Bank A with a small deposit. The check kiter then writes a check on his account at Bank A for a large sum of money, such as $50,000, and uses that check to open an account at Bank B. At the time of the deposit, the account at Bank A does not have sufficient funds to cover the large check, but Bank B is unaware of this fact because of the 'float' time, that is, the delay between the time the check kiter deposited the $50,000 check and the time Bank A must pay or return it for insufficient funds or for some other reason. Bank B extends provisional credit to the check kiter, allowing the check kiter to write a $50,000 check on the account at Bank B and to present it to Bank A for payment. Likewise, Bank A extends provisional credit to the check kiter and pays the $50,000 check when Bank B presents it to Bank A for payment. By repeating the above scheme, a check kiter enjoys the use of an artificially inflated account balance, so long as he is able to keep the deposited checks 'floating' in the collection process." *Stinson*., at *2, *citing Williams v. United States*, 458 U.S. 279, 281 n. 2 (1982)

[7] Theoretically, if no money were removed from the kite before it was allowed to collapse, no funds would be permanently lost. However, the Fifth Circuit has held that "[t]he bare act of check kiting defrauds the bank by temporarily placing the bank's funds at the disposal of the account holder." *United States v. Frydenlund*, 990 F.2d 822, 824 (5th Cir. 1993)

31.     The 2B Farms transactions were not a traditional check kite because only one bank—HTLF—was granting a provisional settlement credit. [Doc. 1 ¶65(d)]. The wires that 2B Farms sent from HTLF to the Debtors' account at Mechanics Bank did not result in a provisional credit at Mechanics Bank. Therefore, these transactions only resulted in an inflated account balance in 2B Farms' account at HTLF. To the extent there was a check kite, HTLF was therefore the "kite-ee" and not the "kite-or."

32.     It is simply not plausible that HTLF knew that it was being defrauded in a check kite but continued to participate in and allow the transactions to continue. Nor does the Trustee allege any facts of how HTLF might know that the Debtors' accounts at Mechanics Bank were insufficient to pay the checks on which credit was given. As a result, the Trustee's conclusory allegation that HTLF knew that the 2B Farms transactions were fraudulent cannot satisfy the plausibility standard in *Twombly* and cannot support Counts I or III.

### ii. Knowledge of and participation in a check kite is not knowledge of and participation in a Ponzi scheme.

33.     Alternatively, even if HTLF knew that it was participating in a check kite (which it did not), that is not the same thing as knowing there was a broader Ponzi scheme. When a conspiracy involves multiple stages or aspects, conspirators must agree to the object of the conspiracy on which liability is based. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017)(conspiracy to commit theft was distinct from conspiracy to cover-up theft). Therefore, the Trustee must plausibly allege knowledge of the Ponzi scheme, not merely knowledge of the check kite to survive a motion to dismiss.

34.     Further, knowing participation in a breach of fiduciary duty does not extend to actions beyond the scope of the participation—rather, "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary

and is liable as such." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 574, 160 S.W.2d 509, 514 (1942). The participation must aid in the commission of the underlying breach of duty at issue. *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 413 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

35.     The Trustee fails to allege that HTLF had knowledge of the facts that made Debtors' operation a Ponzi scheme. As alleged by the Trustee, McClain's operation was a Ponzi scheme because he was misrepresenting the use of investor funds, the number of cattle on hand, and the source of alleged profits to investors and because he was using investor funds to repay other investors. [Doc. 1 ¶¶ 29-30]. The Trustee does not allege that HTLF had knowledge of the Debtors' finances or bank accounts. Nor does the Trustee allege knowledge of how many cattle Debtors owned or claimed to own. Nor does the Trustee allege knowledge that the Debtors were using investor funds to repay other investors. Unlike in his allegations against other parties, the Trustee does not allege how HTLF might have obtained knowledge of these facts. Nor does the Trustee allege that HTLF participated in any transactions beyond those involving 2B Farms.

36.     As a result, even if the Trustee has plausibly alleged that HTLF had knowledge of and participated in the check kite through the 2B Farms transactions, such an allegation is insufficient to support claims beyond such transactions. Without such support, Counts I and III should be dismissed as to HTLF.

## C.     The Trustee Fails to state a claim for Professional Negligence

37.     The elements of negligence are (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach." *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App.—El Paso 2012, no pet.). A cause of action for professional negligence requires the same elements be established. *Great Plains Tr. Co. v. Morgan Stanley Dean*

*Witter & Co.,* 313 F.3d 305, 314 (5th Cir. 2002). As a matter of law and based on the Trustee's allegations, HTLF did not owe the Debtors any duty of care on which a negligence action can be based.[8]

38.     The Trustee fails to allege sufficient facts to support his legal conclusion that HTLF owed Debtors a duty as its customers. The Trustee does not allege that Debtors had any bank accounts at HTLF. The Trustee does not allege the Debtors had any actual loans from HTLF. And the Trustee's "shadow lender" theory fails as a matter of law because, as discussed previously, the provisional credits were not loans to Debtors. *See* § II.B.iii. And "in the absence of a fiduciary or confidential relationship, a bank owes no duty to a person with whom the bank has not dealt and otherwise has no relationship." *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 248 (5th Cir. 2020). The Trustee has not alleged a fiduciary or confidential relationship or facts that would support such a finding. As a result, there is no basis to find a duty of care, an essential element of the Trustee's negligence claim, between HTLF and Debtors.

39.     While the UCC does impose certain duties on banks in performing banking activities for their customers, the UCC does not create a general duty of ordinary care. Rather, as noted in the cases relied on by the Trustee, the UCC imposes a duty of ordinary care in specific situations. *Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856, 873 n.5 (Tex. App.—El Paso 2021, no pet.). For example, Section 4.202 of the Texas Business and Commerce Code requires ordinary care with respect to timeliness of processing items.  And under Section 4.406, if a customer would be precluded from asserting an unauthorized signature or alteration, the loss can still be allocated if the bank also failed to use ordinary care in paying the item. As noted previously,

---

[8] The Trustee may argue that HTLF owed a duty to not commit fraud by engaging in a Ponzi scheme. But such activity would be a tort committed against the victims of the Ponzi scheme, not against Debtors. As addressed previously, Debtors can seek contribution, but cannot assert a direct claim for torts inflicted on the victims. *See* § II.A.

HTLF's banking actions alleged by the Trustee did not violate the UCC. See § II.B. And the Trustee

has failed to identify any UCC provisions under which HTLF would owe a general duty of care to

the Debtors.

40.    Because the Trustee has failed to allege facts supporting the existence of a duty that

HTLF owed to Debtors, the Trustee's professional negligence claim should be dismissed as to

HTLF.

**D.      The Trustee fails to allege that HTLF received transfers from Debtors.**

41.    In Count XIII, asserting fraudulent transfers, the Trustee explicitly asserts that the

transfers at issue were made to 2B Farms and Terry "Bo" Robinson. [Doc. 1 ¶¶ 161-62]. But the

Trustee argues that "[g]iven HTLF's active participation and control over the Debtors' funds,

HTLF should be considered a transferee and/or beneficiary of the fraudulent transfers." [Doc. 1¶

161]. As a matter of law, the facts alleged by the Trustee are insufficient to constitute HTLF having

control over the funds.

42.    In determining whether a party has received a transfer, the Fifth Circuit has adopted

the "dominion or control test." *Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993). "Under this

test, a party that receives a transfer directly from the debtor will not be considered the initial

transferee unless that party gains actual dominion or control over the funds." *Id. quoting Bonded

Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir.1988).[9] Such

---

[9] Some Courts have found a party can be a transferee without control, but that the lack of control operates as an equitable defense. *See, e.g., Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020). However, in *Bonded*, on which the Fifth Circuit relied, the Seventh Circuit rejected this argument:

> "We are aware that some courts say that an agent (or a bank in a case like ours) is an 'initial transferee' but that courts may excuse the transferee from repaying using equitable powers. … This is misleading. 'Transferee' is not a self-defining term; it must mean something different from 'possessor' or 'holder' or 'agent'. To treat 'transferee' as 'anyone who touches the money' and then to escape the absurd results that follow is to introduce useless steps; we slice these off with Occam's Razor and leave a more functional rule."

control exists where a party has the right to put the money to its own uses and do whatever it wants with the money. *Id.* Texas state courts have applied the control test, as adopted by the Fifth Circuit, to TUFTA actions. *Hearne v. Riversource Life Ins. Co.*, 670 S.W.3d 360, 368 (Tex. App.—Texarkana 2023, pet. denied); *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 165 (Tex. App—Houston [14th Dist.] 1996, writ denied).

43.     The Trustee alleges that HTLF completed and deposited Debtors' pre-signed checks at the direction of the Debtors, 2B Farms, and/or Terry Robinson. [Doc. 1 ¶ 161]. Such actions do not constitute control over the Debtors' funds because Debtors retained control over the funds until the checks finally cleared. *Barnhill v. Johnson*, 503 U.S. 393, 401, 112 S. Ct. 1386, 1391, 118 L. Ed. 2d 39 (1992) ("until the moment of honor the debtor retains full control over disposition of the account and the account remains subject to a variety of actions by third parties."). As a matter of law, control over the Debtors' checks is not control over the Debtors' funds.

44.     The Trustee alleges that the funds were deposited in the bank accounts of 2B Farms or Terry Robinson held at HTLF and served as part of his borrowing base. [Doc. 1 ¶ 161]. However, the Trustee does not allege that HTLF took dominion or control of the funds from 2B Farms. In *Bonded*, the 7th Circuit held that a bank became a transferee when it applied the account balance to reduce its loan. *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988). The Trustee does not allege that HTLF improved its position by completing and depositing the pre-signed checks at Debtors' direction; rather, the Trustee alleges only that 2B Farms wired the funds it received back to the Debtors.

---

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988). Citing *Bonded*, the Fifth Circuit adopted the approach that control was part of definition of a transferee. *Matter of Coutee*, 984 F.2d at 140-41. Therefore, the "dominion or control test" is part of the element of transfer to be established by the Trustee and not an affirmative defense in this Circuit.

45.     As a matter of law, the facts alleged by the Trustee are insufficient to establish that HTLF had dominion or control over the Debtors' funds. As a result, the Trustee has failed to allege that HTLF received any transfer and fails to state a claim for fraudulent transfers. Count XIII should therefore be dismissed.

## CONCLUSION

Defendant HTLF respectfully requests that, pursuant to Federal Rule of Civil Procedure 12(b)(6) this Court dismiss the Trustee's Original Adversary Complaint to the extent requested herein and grant all other relief to which HTLF might show itself justly entitled.

Dated this 23rd day of May 2025.

Respectfully submitted,

**LOVELL ISERN & FARABOUGH, LLP**
John H. Lovell, SBN 12609300
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Phone: (806) 373-1515
Fax:    (806) 379-7176
Email:  john@lovell-law.net

**MULLIN HOARD & BROWN, L.L.P.**
Matthew S. Merriott, SBN 24100846
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086
Email:  mmerriott@mhba.com

By:___/s/ *Matthew S. Merriott*_____
Matthew S. Merriott

*Attorneys for HTLF Bank, as Successor to
First Bank & Trust*


## CERTIFICATE OF SERVICE

I hereby certify that, on this 23rd day of May 2025, I electronically filed the foregoing document with the Northern District of Texas through its filing system through and that a true and correct copy was served on the parties listed through the electronic case filing system by email as registered with the electronic case filing system:

/s/ *Matthew S. Merriott*_____
Matthew S. Merriott