HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

SPECIAL COUNSEL TO THE TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| IN RE:<br><br>MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.,<br><br>*Debtors.*[1] | Chapter 7<br><br>CASE NO. 23-20084-swe<br><br>Jointly Administered |
| KENT RIES, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATES OF MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.,<br>*Plaintiff,*<br>v.<br><br>COMMUNITY FINANCIAL SERVICES BANK; HTLF BANK; MECHANICS BANK; and HTLF AGRIFINANCE, LLC,<br>*Defendants.* | ADV. PROC. NO. 25-02005-swe<br><br>Honorable Scott. W. Everett |

## TRUSTEE'S NOTICE OF MOOTNESS AND OBJECTION AND RESPONSE TO
## HTLF'S MOTION TO DISMISS

---

[1] The Debtors in these chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. (Case No. 23-20086-swe).

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................................1

ARGUMENT & AUTHORITIES .........................................................................................................2

    A.    The Trustee's *First Amended Complaint* moots HTLF's Motion. ................................................2

    B.    The Trustee's tort claims are not defeated by the affirmative defense of *in pari delicto*. .............2

    C.    The Trustee sufficiently alleged facts to establish HTLF knew or should have known of the Ponzi and check-kite schemes. ........................................................................................6

    D.    The Trustee adequately pleaded a professional negligence claim against HTLF. .......................8

    E.    The Trustee's fraudulent transfer claims against HTLF are viable. ...........................................8

CONCLUSION .....................................................................................................................................9

## TABLE OF AUTHORITIES

Cases

*Lewis v. Davis*, 199 S.W.2d 146 (Tex. 1947) .................................................................................3

*Reagor-Dykes Motors, LP*, No. 18-50214-RLJ-11, 2020 WL 4939180
   (Bankr. N.D. Tex. Aug. 24, 2020) ..............................................................................................4

*Ultravision Techs., LLC v. Eaton Corp. PLC*, No. 2:19-CV-00290-JRG,
   2019 WL 11250161, at *1 (E.D. Tex. Nov. 8, 2019) ..................................................................2

*In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796
   (Bankr. N.D. Tex. Aug. 14, 2024) ..............................................................................................3

Kent Ries, the Chapter 7 Trustee of the bankruptcy estates of McClain Feed Yard, Inc. ("**MFY**") (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. ("**7M**") (Case No. 23-20086-swe) (the "**Trustee**"), files this notice of mootness and objection to HTLF Bank's ("**HTLF's**") *Motion to Dismiss Plaintiff's Original Adversary Complaint* (ECF No. 23) and *Brief in Support* (ECF No. 24) (collectively, the "**Motion**"), and respectfully requests the Court deny the Motion for the reasons that follow:

## INTRODUCTION

1.     At the heart of this case is a massive, multi-year Ponzi or Ponzi-like scheme perpetrated by the now-deceased Brian McClain ("**McClain**"), the Debtors' former owner. McClain used the Debtors to obtain loans from Rabo and kite checks between its own accounts at Mechanics Bank ("**Mechanics**") and Community Financial Services Bank ("**CFSB**"), as well as the bank accounts of certain investors, like 2B Farms, who banked at HTLF. HTLF, Rabo, Mechanics, and CFSB all perpetuated this scheme despite obvious and glaring red flags and warning signs that fraud was afoot.

2.     While HTLF was not one of the Debtors' banks, it does, however, have the ignominy of being the source of one of the most flagrant red flags of all. HTLF participated in obvious and indisputably improper and shocking conduct for which no explanation other than fraud was plausible. In order to assist McClain in his efforts to kite check and manufacture fictitious funds to meet payments that came due, HTLF employees Shawn Ragland and Rebecca Fernandez, held pre-signed, blank checks from the Debtors, which they would complete at McClain's or the Debtors' directions, deposit into an investor's account, and immediately wire most or all of the same cash right back to the Debtors before the Debtors' bank(s) paid on the checks. Such behavior is far beyond atypical and a clear indication that the transactions are fraudulent.

3.     Nevertheless, HTLF argues that it did nothing wrong, at least not to the Debtors, and so it should not be held to account, and seeks to dismiss the Trustee's claims against it for its blatant and obvious participation in McClain's fraudulent schemes. It is HTLF's motion and the arguments therein that should be dismissed for lacking merit; not the Trustee's complaint. HTLF's Motion should

therefore be denied both because it is mooted by the Trustee's Second Amended Complaint and because it fails on the merits.

## ARGUMENT & AUTHORITIES

### A. The Trustee's *First Amended Complaint* moots HTLF's Motion.

4. The Court should deny HTLF's Motion because it was mooted when the Trustee filed his *First Amended Complaint* and again when the Trustee filed his *Second Amended Complaint*, in accordance with Federal Rules of Civil Procedure 12 and 15, as well as the parties' agreement and the Court's Order (ECF No. 38). Generally, where an amended complaint does not incorporate the prior complaint, the amended complaint moots any motions to dismiss that were pending prior to the amended filing. *See, e.g.*, *Ultravision Techs., LLC v. Eaton Corp. PLC*, No. 2:19-CV-00290-JRG, 2019 WL 11250161, at *1 (E.D. Tex. Nov. 8, 2019) (collecting Fifth Circuit and other authorities).

5. Here, the Trustee has significantly amended the complaint to address the alleged deficiencies HTLF raised in its Motion, which moots the Motion not only as a matter of law, but also on the merits.

6. Nevertheless, should the Court find the Motion not to be mooted, the Court should still deny it because the Trustee's claims against HTLF—for knowing participation or aiding and abetting McClain's breaches of fiduciary duties, civil conspiracy, breach of fiduciary duty, professional negligence, and money had and received—as well as the Trustee's Chapter 5 bankruptcy claims, are plausible and viable under controlling Texas law. The Court need not, and should not at this time, address the arguments below. However, even if the Court were to consider the merits of the Motion, it should still be denied.

### B. The Trustee's tort claims are not defeated by the affirmative defense of *in pari delicto*.

7. As an initial matter, HTLF's argument that the Trustee lacks standing to bring his tort claims against HTLF should fail because the Debtors, via McClain, were participants in the alleged Ponzi and check-kite schemes along with HTLF. Mot. at 7-10. HTLF appears to be asserting a

distorted *in pari delicto* defense, arguing not only that the Trustee cannot sue for the damage caused by activities in which the Debtors participated, *i.e.*, the traditional application of the doctrine in *in pari delicto*, but also goes one step further and infers that because the Debtors participated in the fraud, they could not have been injured by it. And because it is the Debtors' creditors who would be the only remaining injured parties, HTLF argues the Trustee does not have standing to assert his claims; only the creditors do. *Id.* But HTLF's latter inference has no basis in law, and the traditional application of HTLF's assertion of the affirmative defense of *in pari delicto* does not warrant the dismissal of the Trustee's claims at this stage of the case.

8. In prior briefing, including his responses to CFSB's and Rabo's motions to dismiss, the Trustee has explained why it would be inappropriate to dismiss the Trustee's claims based on the *in pari delicto* defense at this stage of the case under Texas law,[2] and the Trustee incorporates those arguments by reference. In short, under Texas law, "even when parties are *in pari delicto*, an exception to the doctrine will sometimes be applied if public policy or the equities demand it." *Id.* at 21. This is because the defense of *in pari delicto* is not for the benefit of HTLF or another joint wrongdoer but rather for the public's benefit. *Id.* (citing *Lewis v. Davis*, 199 S.W.2d 146, 151 (1947)). In *Lewis*, the Texas Supreme Court explained the need to, in each unique case, weigh the policy against a court assisting a wrongdoer against the policy against permitting unjust enrichment of one party (here HTLF) at the expense of another (here the Debtors and their creditors). *Lewis*, 199 S.W.2d at 151. The answer to that question "depends on the peculiar facts and equities of the case." *Id.* "In other words, a policy analysis must occur on a case-by-case basis." *In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796, at *21 (Bankr. N.D. Tex. Aug. 14, 2024).

9. There is often involved in reaching a decision as to granting or withholding relief, the question whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of another. The solution of the question depends upon the peculiar facts and equities of the case, and the answer usually given is that which it is thought will

---

[2] The HTLF branch involved in the alleged facts is located in Texas, and as HTLF does not assert any state's laws apply other than Texas's, the Trustee's arguments are based on Texas law.

better serve public policy. In other words, a policy analysis must occur on a case-by-case basis." *Id.* at *27. Such an analysis is not well-suited, if it can be performed at all, at the motion to dismiss stage given that it is highly dependent on the particular facts of each case. *In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ-11, 2020 WL 4939180, at *13 (Bankr. N.D. Tex. Aug. 24, 2020) (explaining that dismissal of claims because of an affirmative defense at the motion to dismiss state is only appropriate in the rare case when it is established conclusively from the face of the complaint and rejecting the availability of the defense as grounds for dismissal under Rule 12(b)); *see also In re Vantage*, 2024 WL 3842796, at *28 (finding the defense to be so "intensely factual" that it was inappropriate to resolve *even at summary judgment* because the facts were in dispute); *see also* Mot. at ¶¶ 88-89 (citing a long list of Texas federal district court cases finding *in pari delicto* ill-suited for resolution on a Rule 12(b) motion).

10. Moreover, in considering only the undisputed facts at the summary judgment stage, the bankruptcy court in *In re Vantage* found that even if the wrongdoer's acts are imputed to the debtor-company, the defense would still not bar recovery because the Trustee "is an innocent party seeking recovery from the" defendants "that will benefit innocent creditors," and there was no evidence the Trustee's recovery would benefit the actual wrongdoer. *Id.* at *28. As such, the court there "easily conclude[d] . . . that barring the [t]rustee's tort claims . . . based on *in pari delicto* . . . would **not** outweigh the overall policy of not inflicting additional harm on the innocent victims of the . . . scheme." *Id.* The bankruptcy court in *In re Vantage* even went as far as to recommend granting summary judgment in the trustee's favor on the *in pari delicto* defense even though the trustee had not moved for summary judgment on that defense. *Id.* The conclusion should be no different here, where the Trustee's recovery will in no way benefit McClain or his personal probate estate, and where the *in pari delicto* defense would further harm innocent creditors by cutting off the Trustee's possible avenues for recovering and distributing estate assets. Accordingly, even if the Court were to reach the merits of *in pari delicto* under Texas law, it should still deny HTLF's Motion.

11. Nor does HTLF's novel, distorted *in pari delicto* argument withstand scrutiny. HTLF argues that the Trustee's alleged damages for the tort claims "consist of the amount of Debtors' liability to the victims of the Ponzi scheme, not independent business losses," Mot. at 8, and that since

the Trustee alleges McClain and HTLF worked together to perpetrate the Ponzi scheme, HTLF is at best jointly liable to creditors, and not liable to the Debtors, Mot. at 9. HTLF's argument completely distorts reality and has no legal basis.

12. First, the very same policy considerations under Texas law that exclude a trustee from being subject to the *in pari delicto* defense based on the past acts of the debtor would also counsel against extending the defense to suggest that it somehow affirmatively defeats the possibility that, as a former joint wrongdoer, a debtor could not even suffer injury. That is not the reason or basis for the rule; rather, the rule is intended to prevent the courts from intervening to help a wrongful actor. It does not stand for the proposition that participants in wrongdoing cannot themselves be injured thereby.

13. Second, the Debtors did indeed suffer direct injuries from HTLF's actions in extending and expanding McClain's ability to kite checks and access more liquidity, fictitious or otherwise, with which to sustain the Ponzi-scheme and incur still more unpayable debts. The mere suggestion the Debtors were not injured when they have petitioned for bankruptcy in the face of over $120 million in creditor claims against their destitute estates is ludicrous. Indeed, under HTLF's logic, a debtor could not, in most circumstances at least, recover for fraudulent transfers of the estate's property since the debtor would have been the one to transfer it. As this Court well knows, however, debtors seeking to avoid fraudulent transfers is one of the most well recognized rights a debtor possesses. HTLF's logic is flawed.

14. The Debtors were indisputably injured by the perpetuation of McClain's schemes. They are holding a $120 million or more bill they cannot even begin to repay. They are insolvent and will be at best empty shells of their former corporate selves at the end of the case. There can be no greater injury to a corporate entity other than dissolution itself. And the Trustee has standing to bring claims against HTLF and others who have helped put the Debtors in the fatally injured state in which they now, albeit only temporarily, still exist. The Trustee's tort claims are therefore plausible and should not be dismissed.

### C. The Trustee sufficiently alleged facts to establish HTLF knew or should have known of the Ponzi and check-kite schemes.

15. HTLF next argues that the Trustee's claims for knowing participation in McClain's breach of fiduciary duties to the Debtors, and for conspiring with McClain and Defendants to perpetuate the schemes should be dismissed because the Trustee did not allege facts showing HTLF knew of the schemes. Mot. at 10-13. Rather, argues HTLF, its only alleged involvement was in relation to its involvement in making and receiving payments from and to one of the Debtors' investors, 2B Farms. Mot. at 10. And depositing checks and initiating wire transfers, which was the scope of the HTLF's actions, were just "neutral, not inherently fraudulent" banking activities.

16. But HTLF's arguments are again inconsistent with reality. The Trustee alleges (and no one denies) that HTLF's employees were serving as agents for the Debtors, and in possession of blank, pre-signed checks of the Debtors, with whom HTLF did not have a banking relationship. There is nothing "neutral" about such an irregular arrangement. Worse, the Ragland/Fernandez pre-signed checks portion of the check kite scheme was evidently and inherently fraudulent.

17. In a typical, legitimate arrangement, a business that owes a creditor money will pay the creditor via wire transfer of immediately available funds or deliver a check, cash, or other tender. That is not what happened here. Here, the need for HTLF to possess checks so McClain could make near instantaneous deposits into 2B Farms' account irritably indicates that the Debtors' accounts did not actually have the transferred cash on hand, or otherwise, the Debtors would simply have wired the money and not risked its solvency by handing blank checks to unaffiliated persons. Or, McClain could have mailed or hand-delivered a check, etc. The only reason for HTLF to possess the checks and use them in the manner it did is because the Debtors needed to access fictitious "float," or funds, to pay 2B Farms with money the Debtors did not have. These transactions were all the more suspect given that the money seemed to be moving back and forth for new purpose, as in most cases, once the pre-signed, blank checks were completed and deposited by HTLF, the same amount, or very close to it, was transferred back to the Debtors the same or next day. If it was a legitimate arrangement, the

Debtors would have simply kept the investors' "profits" for the next investment rather than send it on a circular journey to the same ultimate end.

18.  HTLF inescapably knew or should have known that fraud was afoot from this fact alone. But this highly irregular arrangement must also be considered against the backdrop of the purported investment scheme—guaranteed, easy profits that were too good to be true. HTLF, as a sophisticated financial firm, should have known that the Debtors' purported business was in fact too good to be true. But HTLF, like its other codefendants, prioritized its easy profits over everyone else, and chose to participate in the scheme instead of stopping it.

19.  HTLF further argues that it is not plausible that it chose to partake in the check kite because it would be exposed to the risk of being the unlucky bank stuck with a dishonored check. Mot. at 11-12. It asserts that it would all the more so not have done so, as it was the only bank granting provisional credits for checks, and so only it would have been at risk. These arguments also fail. As to the latter assertion, that Mechanics and CFSB did not grant provisional credit to the Debtors for deposited checks is unfounded. That alleged fact is not in the complaint because it is not true. Moreover, HTLF was profiting from these transactions, as 2B farms was borrowing money from HTLF, and thus paying interest on that money to HTLF, to invest in the Debtors. The only conceivable reason a banker would serve in such an irregular role is because it was profitable to do so.

20.  HTLF's activities greatly transcended arm's length banking activities.  Such activities were egregious, incredulous and inherently fraudulent. HTLF cannot plausibly argue it was merely engaged in typical, legitimate banking activities while holding the Debtors' blank, pre-signed checks and engaging in a payment procedure that has no legitimate explanation other than to create float through kiting checks.

21.  It its last grasp to defeat the tort claims, HTLF argues that even if it knew it was participating in a check kite, it did not know of the Ponzi scheme. But the Trustee's claims against HTLF are all plausible and viable if based on HTLF's participation in an illegal check kite scheme alone. Nevertheless, HTLF knew or should have known that a fraud of the scale suggested by the $2 billion in intracompany transfers was harming one or more of the random parties that all the sudden

started writing millions of dollars in checks to the Debtors. With HTLF's knowledge of the purported investment schemes, and its first-hand participation in the most irregular of banking arrangements, HTLF knew or should have known it was furthering McClain's fraud, which would be likely to, and did, injure the Debtors' creditors. HTLF is not from a bygone era. It is a sophisticated bank with dedicated anti-fraud training and monitoring programs. HTLF cannot claim ignorance or feign naivete now that the profits have stopped.

### D. The Trustee adequately pleaded a professional negligence claim against HTLF.

22.     HTLF next challenges the viability of the Trustee's professional negligence claim, asserting that HTLF did not owe a duty of care to the Debtors. Mot. at 13-15. As the new allegations contained in the Second Amended Complaint assert new facts and theories that give rise to HTLF's duty of care, HTLF's argument that it cannot be liable for negligence since it had no duty of care is truly moot. Indeed, the Second Amended Complaint describes how Ragland and Fernandez served as agents of the Debtors, and the Debtors placed great trust in HTLF by turning over full control of its finances to it in the form of a book of pre-signed, blank checks. As the Debtors' agent, HTLF owed a duty of care to the Debtors. And as a party in a position of great trust with the Debtors, HTLF also owes fiduciary duties to the Debtors. As the Trustee has alleged a duty, breach of that duty, and damages caused thereby, his professional negligence claim is plausible and should not be dismissed.

### E. The Trustee's fraudulent transfer claims against HTLF are viable.

23.     Finally, HTLF seeks dismissal of the Trustee's fraudulent transfer claims on the basis that the Trustee failed to allege the Debtors transferred any funds to HTLF. Mot. at 15-17. Rather, HTLF asserts that the Trustee has alleged transfers from the Debtors to HTLF's customers 2B Farms and/or the Robinsons, and HTLF did not exercise sufficient control over the funds in these investors' accounts to be considered a transferee.

24.     While HTLF's argument may have merit in the typical banking scenario, where legitimate transfers or checks are deposited into customer accounts by the customer or payer, HTLF's argument fails under the circumstances of this case. HTLF correctly cites to Fifth Circuit precedent

requiring a party to have dominion and control over the funds to be considered a transferee, Mot. at 16, but HTLF incorrectly asserts it did not exercise such dominion and control over the funds. Here, HTLF was intentionally and actively involved in the scheme and the flow of funds. HTLF held a stack of pre-signed checks from the Debtors' deposit accounts and routinely filled in and deposited the Debtors' checks into the HTLF accounts for 2B Farms and/or the Robinsons so HTLF could immediately apply the funds to HTLF's loan balances with its customers. By exercising control over the flow of the Debtors' funds to its investor-customers (and departing so clearly from typical, arms-length banking practices), and/or applying those funds to reduce its loan balances with its customers, HTLF exercised sufficient control over the transfers to such an extent that it may plausibly be held accountable for those transfers for purposes of Rule 12(b).

25.     Accordingly, the Trustee's claims against HTLF are sufficiently pleaded and supported by sufficient factual allegations to proceed past HTLF's arguments for dismissal. The Court should therefore deny HTLF's Motion.

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that the Court:

- Deny HTLF's Motion as moot; or, alternatively,
- Deny HTLF's Motion on the merits in its entirety; or, alternatively, grant the Trustee leave to amend the complaint to address any sustained deficiencies; and
- Grant such other and further relief to which the Trustee is legally or equitably entitled.

Respectfully submitted,

*/s/ Alan Dabdoub*
Alan Dabdoub
State Bar No. 24056836
adabdoub@lynnllp.com
Steven G. Gersten
State Bar No. 24087579
sgersten@lynnllp.com
Farsheed Fozouni
State Bar No. 24097705
ffozouni@lynnllp.com
Campbell Sode
State Nar No. 24134507
csode@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:     214-981-3800
Facsimile:      214-981-3839

*/s/ Hudson M. Jobe*
Hudson M. Jobe
Texas Bar No. 24041189
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
(214) 807-0563
hjobe@jobelawpllc.com
**SPECIAL COUNSEL TO THE TRUSTEE**