Richard A. Illmer
Buffey Klein
**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
t: 214.999.6100
f: 214.999.6170
Rick.Illmer@huschblackwell.com
buffey.klein@huschblackwell.com

Lynn H. Butler
**HUSCH BLACKWELL LLP**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
t: 512.479.9758
f: 512.226.7318
Lynn.Butler@huschblackwell.com

*Counsel for Mechanics Bank*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| IN RE:<br><br>MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.,<br><br>Debtors.[1] | Chapter 7<br><br>CASE NO. 23-20084-swe<br><br>Jointly Administered |
| KENT RIES, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATES OF MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY FINANCIAL SERVICES BANK; HTLF BANK; MECHANICS BANK; and RABO AGRIFINANCE, LLC.,<br><br>Defendants. | ADV. PROC. NO. 25-02005-swe<br><br>Honorable Scott W. Everett |

### MECHANICS BANK'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS TRUSTEE'S SECOND AMENDED ADVERSARY COMPLAINT

---

[1] The Debtors in these chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-SWE), McClain Farms, Inc. (Case No. 23-20085- SWE), and 7M Cattle Feeders, Inc. (Case No. 23-20086-SWE) (collectively referred to herein as "Debtors").

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

I.   Preliminary Statement ........................................................................................ 1

II.  Factual and Procedural Background .................................................................. 2

III. Legal Standard .................................................................................................. 4

IV. Argument ........................................................................................................... 5

    A.   Counts I, III, IV: Knowing Participation in a Breach of Fiduciary Duty, Common-Law Civil Conspiracy, and Professional Negligence ................................. 5

    B.   In Pari Delicto ............................................................................................. 14

    C.   Counts XIV and XV: Preferential Payments and Fraudulent Transfers .................. 14

    D.   Mechanics Bank Did Not Loan Funds to Debtors ...................................... 24

V.  Conclusion ........................................................................................................ 28

HB: 4903-5540-3863.5

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Artho v. Happy State Bank (In re Artho),*
   587 B.R. 866 (Bankr. N.D. Tex. 2018) ...................................................................... 4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................... 1, 4, 7, 18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................... 4, 18

*Bonded Financial Services, Inc. v. European American Bank,*
   838 F.2d  (7th Cir.1988) .................................................................................. 24

*Centennial Bank v. Holmes,*
   717 F. Supp. 3d 542 (N.D. Tex. 2024) ................................................................ 9

*D'Onofrio v. Vacation Pubs., Inc.,*
   888 F.3d 197 (5th Cir. 2018) ............................................................................. 9

*FFE Transp. Servs., Inc. v. Fulgham,*
   154 S.W.3d 84 (Tex.2006) ................................................................................ 11

*Floyd v. Option One Mortgage Corp. (In re Supplement Spot, LLC),*
   409 B.R. 187 (Bankr. S.D. Tex. 2009) ............................................................. 19

*Franklin D. Azar & Associates, P.C. v. Bryant,*
   No. 417CV00418ALMKPJ, 2018 WL 6929339 (E.D. Tex. Nov. 14, 2018) .................... 22, 23

*Gann v. Anheuser-Busch, Inc.,*
   394 S.W.3d 83 (Tex. App.—El Paso 2012, no pet.) ............................................. 10

*GE Capital Comm., Inc. v. Wright & Wright, Inc.,*
   2009 WL 5173954 (N.D. Tex. Dec. 31, 2009) ..................................................... 23

*Grassmueck v. Am.Shorthorn Ass'n,*
   402 F.3d 833 (8th Cir. 2005) ............................................................................ 14

*Hernandez v. Ciba-Geigy Corp.,*
   200 F.R.D. 285 (S.D. Tex. 2001) ....................................................................... 5

*Hill v. Day (In re Today's Destiny, Inc.),*
   388 B.R. 737 (S.D. Tex. 2008) ......................................................................... 14

HB: 4903-5540-3863.5

*I Love Omni, LLC v. Omnitrition International, Inc.*,
No 3:16-CV-2410-G, 2017 WL 1281130 (N.D. Tex. Apr. 6, 2017) ...................................... 13

*In re All Tex. Elec. Contractors, Inc. v. NSPS Metals LLC*,
No. 20-34656, 2022 WL 162786 (Bankr. S.D. Tex. Jan. 18, 2022) ........................................ 16

*In re Baker & Getty Financial Services*, Inc.,
974 F.2d 712 (6th Cir.1992) ................................................................................................... 24

*In re Cano*,
410 B.R. 506 (Bankr. S.D. Tex. 2009) ..................................................................................... 7

*In re Coutee*,
984 F.2d 138 (5th Cir. 1993) ..................................................................................... 22, 23, 24

*In re Dublin Securities, Inc.*,
133 F.3d 377 (6th Cir. 1997) .................................................................................................. 14

*In re IFS Financial Corp.*,
669 F.3d 255 (5th Cir. 2012) .................................................................................................. 23

*In re Rollaguard Sec., LLC*,
591 B.R. 895 (Bankr. S.D. Fla. 2018) .................................................................................... 11

*In re SMTC Mfg. of Tex.*,
421 B.R. 251 (Bankr. W.D. Tex. 2009) .................................................................................. 20

*Kelley v. BMO Harris Bank Nat'l Ass'n*,
115 F.4th 901 (8th Cir. 2024) ................................................................................................ 14

*Krames v. Bohannon Holman, LLC*,
No. 3:06-CV-2370-O, 2009 WL 762205 (N.D. Tex. Mar. 24, 2009) ....................................... 13

*Lawrence v. Bank of Am., N.A.*,
455 Fed. Appx. 904 (11th Cir. 2012) ..................................................................................... 11

*Matter of Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) .................................................................................................. 18

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ................................................................................................... 4

*Meadows v. Hartford Life Ins. Co.*,
492 F.3d 634 (5th Cir. 2007) ............................................................................................... 9, 13

*Melder v. Morris*,
27 F.3d 1097 (5th Cir. 1994) .................................................................................................. 19

HB: 4903-5540-3863.5

*Menotte v. United States* (*In re Custom Contractors, LLC*),
   745 F.3d 1342 (11th Cir. 2014) ........................................................................ 23

*Meoli v. The Huntington Nat'l Bank*,
   848 F.3d 716 (6th Cir. 2017) ............................................................................ 23

*Newsome v. Charter Bank Colonial*,
   940 S.W.2d 157 (Tex. 1996).............................................................................. 22

*Nordberg v. Societe Generale* (*In re Chase & Sanborn Corp.*),
   848 F.2d 1196 (11th Cir. 1988) ........................................................................ 23

*Nwokedi v. Unlimited Restoration Specialists, Inc.*,
   428 S.W.3d 191 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)..................... 19

*Owens v. Comerica Bank*,
   229 S.W.3d 544 (Tex. App.—Dallas 2007, no pet.)............................................. 11

*Perlman v. Wells Fargo Bank, N.A.*,
   559 Fed. Appx. 988 (11th Cir. 2014).................................................................. 11

*Rodriquez v. Love*,
   860 S.W.2d 541 (Tex. Ct. App. 1993) ............................................................... 14

*Rogers v. McDorman*,
   521 F.3d 381 (5th Cir. 2008) ........................................................................... 14

*Rotstain v. Trustmark Nat'l Bank*,
   No. 3:09-CV-2384-N, 2015 WL 13034513 (N.D. Tex. Apr. 21, 2015) .......... 22, 23, 24

*Samsung Electronics America, Inc. v. Yang Kun Chung*,
   No. 3:15-CV-4108-D, 2017 WL 635031 (N.D. Tex. Feb. 16, 2017) ...................... 13

*Sarachek v. Right Place Inc. (Agriprocessors, Inc.)*, Nos. 08-2751, 10-09123,
   2011 WL 4621741, 2011 Bankr. LEXIS 3671 at *15 (Bankr. N.D. Iowa 2011) .......... 16

*Sharpe v. Turley*,
   191 S.W.3d 362 (Tex. Ct. App. 2006) ............................................................... 14

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ............................................................................. 4

*Taunt v. Hurtado (In re Hurtado)*,
   342 F.3d 528 (6th Cir. 2003) ........................................................................... 23

*Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*,
   No. 3:03-CV-2490-N, 2004 WL 3170789 (N.D. Tex. Nov. 15, 2004) ................... 13

iv

*Tilton v. Marshall,*
    925 S.W.2d 672 (Tex.1996) ........................................................................... 13

*Tuchman v. DS Comm'ns Corp.,*
    14 F.3d 1061 (5th Cir. 1994) ................................................................... 4, 19

*U.S. ex rel. Steury v. Cardinal Health, Inc.,*
    625 F.3d 262 (5th Cir. 2010) ........................................................................ 4

*Williams v. WMX Technologies, Inc.,*
    112 F.3d 175 (5th Cir.1997) ................................................................... 4, 19

## Statutes

11 U.S.C. §548(a)(1)(A), (a)(1)(B) .................................................................... 20

Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ. § 24.003(d) .............................................................. 20

Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ. §§ 24.003(a), (b) .................................................... 21

Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 24.006(b) ......................................................... 21, 22

Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ Aɴɴ. § 4.104(a)(10) ............................................... 26

TUFTA § 24.005(a)(2) .................................................................................. 20, 21

TUFTA § 24.006(a) ................................................................................. 20, 21, 22

TUFTA § 24.006(b) ..................................................................................... 21, 22

## Rules

Fᴇᴅ. R. Cɪv. P. 8 ......................................................................................... 13, 25

Fᴇᴅ. R. Cɪv. P. 8(a)(2) ............................................................................... 13, 21

Fᴇᴅ. R. Cɪv. P. 9 ............................................................................................... 25

Fᴇᴅ. R. Cɪv. P. 9(b) ................................................................... 10, 13, 24, 25

Fᴇᴅ. R. Cɪv. P. 12(b)(6) ................................................................................. 10

Fᴇᴅ. R. Cɪv. P. 8(a), 9(b), and 12(b)(6) ................................................ 7, 10, 24

HB: 4903-5540-3863.5

Defendant Mechanics Bank ("Mechanics") respectfully submits this *Brief in Support of its Motion to Dismiss Trustee's Second Amended Adversary Complaint* ("Brief") pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), which are made applicable to this Adversary Proceeding pursuant to Bankruptcy Rule 7012(b).

## I.    PRELIMINARY STATEMENT

2.    *Trustee's Second Amended Adversary Complaint* [EFC No. 48] (the "Complaint" or "SAC") lumps all Defendants together without providing sufficient detail about Mechanics' allegedly wrongful conduct for Mechanics to mount a meaningful defense.  Due process requires more specificity. Even accepting all the Trustee's allegations as true, the Trustee's claims (knowing participation in breach of fiduciary duty, civil conspiracy, professional negligence, preferential payments, and receipt of fraudulent transfers) lack legal merit. Generally, the Trustee seeks to hold Mechanics liable for the conduct of others over whom Mechanics had no duty of supervision or right to control.  Where active participation by Mechanics is alleged, the Complaint is woefully lacking in specific, factual detail to support the claim. Further, because the Trustee stands in the Debtors' shoes, his claims are barred under the *in pari delicto* doctrine. Throughout the Complaint, Trustee offers little more than anecdote and conclusory accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For the reasons outlined in this Brief and in the motions to dismiss filed by Mechanics' co-defendants, the arguments of which are incorporated herein, the Complaint fails and must be dismissed. In sum, nowhere in the Complaint does the Trustee allege specific facts against Mechanics on the claims asserted. Consequently, dismissal with prejudice and without leave to amend is appropriate.

3.    For purposes of this Brief, Mechanics details the Trustee's allegations, as set forth in the Complaint, without admitting or denying such statements. If Mechanics' Motion is denied, in full or in part, Mechanics reserves the right to admit or deny such allegations in its formal answer

1

filed pursuant to Rule 7008 of the Bankruptcy Rules.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

4.    Trustee's claims against Mechanics in this bankruptcy adversary dispute center around certain financial transactions by and between Debtors through their depository accounts at Mechanics.  Mechanics was nothing more than a depository institution; it was a mere conduit for the transactions about which the Trustee complains.

5.    Debtors had three respective depository bank accounts at Mechanics (the "McClain Account(s) or "Debtor(s) Account(s)").[2] The Debtors' Accounts were sweep accounts for Brian McClain's lines of credit with Rabo AgriFinance, LLC ("Rabo"), *i.e.*, the Debtors' Accounts were used to pay down Brian McClain's line of credit with Rabo.[3]  Rabo was a secured lender to the Debtors.[4]

6.    In March 2023, Debtors and Rabo (as the Secured Party) entered into certain Deposit Account Control Agreements ("DACA(s))".[5] It is through these DACAs that Rabo was granted control of the subject McClain Accounts at Mechanics. [6]

7.    On March 14, 2025, Kent Ries, the Chapter 7 Trustee of the bankruptcy estates of McClain Feed Yard, Inc. (Case No. 23-20084-SWE), McClain Farms, Inc. (Case No. 23-20085-SWE), and 7M Cattle Feeders, Inc. (Case No. 23-20086-SWE) (the "Trustee"), filed his *Original*

---

[2] *See* Trustee's Second Amended Complaint ("SAC") at ¶ 12.

[3] *See id.* at ¶ 35.

[4] *See id.* at ¶ 46.

[5] *See id.* at ¶ 73.

[6] *See id.* (stating that the DACAs gave "Rabo ultimate control over the Debtors' Mechanics Bank depository accounts . . . ."). Trustee's Complaint references the DACAs but does not specifically identify what transactions were subject to the DACAs, ¶ 92 ("Rabo purported to have an all encompassing security interest in large swaths of all the Debtors' property, including, by the end, their deposit accounts at Mechanics Bank via the DACA."), ¶ 112 (". . . Rabo compelled Debtors and Mechanics Bank to execute the DACA, giving Rabo its purported lien on Debtors' deposit accounts on March 23, 2023, so it could sweep the accounts and keep the money."), ¶ 147 (alleging that the DACAs "gave Rabo the ability to control Debtors' access to funds, and outflows from Debtors' bank accounts at CFSB and Mechanics.").

*Adversary Complaint* (ECF No. 1; Adv. No. 25-02005) ("Original Complaint").

8.      On June 16, 2025, Trustee filed his *First Amended Adversary Complaint* ("First Amended Complaint") (ECF No. 39; Adv. No. 25-02005).

9.      On July 2, 2025, Trustee filed his *Second Amended Adversary Complaint* (ECF No. 48; Adv. No. 25-02005).

10.     Trustee's Second Amended Complaint is one of—but no longer the latest—in a string of lawsuits filed against Mechanics, who did nothing more than act as a depository institution.[7] The claims made in this panoply of lawsuits read very similarly. Trustee's Second Amended Complaint—like his *Original Adversary Complaint* and *First Amended Complaint*—lacks the necessary clarity to allow Mechanics to ascertain what it allegedly did wrong.

11.     Trustee's SAC did nothing to cure the legal deficiencies from his *First Amended Complaint*. Trustee simply supplemented his original and first amended allegations with redundancy; when it comes to pleading facts, quantity is not a substitute for quality.  In support of his claims against Mechanics, the Trustee includes several unsubstantiated statements that amount to nothing beyond speculation and conjecture. The Court should disregard Trustee's conclusory, and factually deficient, statements which amount to no more than vague inferences of misconduct that are wholly unsupported by plausible facts.

---

[7] *See e.g.*, Exhibit A attached to *Trustee's First Amended Exhibit List for Hearing on Motion to Intervene and Motion to Enforce Automatic Stay* [Adversary No. 24-02007-swe, ECF No.  194], which identifies a *Class Action Complaint and Jury Demand* ("Class Action") filed by Plaintiffs consisting of citizens and residents of Graves County, Kentucky who allege claims against Mechanics and co-defendants Community Financial Services Bank ("CFSB") and Rabo based on a copycat pleading of Trustee's *First Amended Complaint*. The copycat Class Action demonstrates the irresponsible nature of Trustee's (and other claimants') conclusory, non-specific, and unsubstantiated allegations. Rather than "provide meaningful returns to the Debtors' innocent investors and other creditors", *see* Trustee's Second Amended Complaint (Adv. No. 25-02005, ECF Nos. 48, ¶ 5), Trustee's legally and factually deficient Complaint, including its past iterations, has and will continue to invite all manner of allegedly aggrieved parties to assert their own claims against Mechanics and its co-defendants on the same, equally anemic foundation of allegations. Unchecked, these copycat lawsuits will cannibalize the Debtors' estate and syphon off creditors' chance at anything resembling a meaningful recovery.

### III.    <u>LEGAL STANDARD</u>

12.    To meet Fed. R. Civ. P. 8(a) and survive a motion to dismiss under Fed. R. Civ. P.

12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at

678. The Court need not "accept as true conclusory allegations or unwarranted deductions of fact."

*Tuchman v. DS Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). A key inquiry in determining

the sufficiency of a claim is plausibility:

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw a reasonable inference that the defendant is liable for the
> misconduct alleged. . . The plausibility standard is not akin to a 'probability
> requirement,' but it asks for more than a sheer possibility that a defendant has acted
> unlawfully.

*Id.* (emphasis added) (quoting *Twombly*, 550 U.S. at 556); *see generally McCauley v. City of*

*Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011) ("The required level of factual specificity rises

with the complexity of the claim.") (citing *Swanson v. Citibank, N.A.,* 614 F.3d 400, 405 (7th

Cir. 2010)).

13.    Claims of fraud must also satisfy the heightened pleading requirements of Fed. R.

Civ. P. 9(b), which require pleading "with particularity the circumstances constituting fraud."

"Rule 9(b) requires at a minimum, that a plaintiff set forth the who, what, when, where, and how

of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 266 (5th Cir.

2010); *Artho v. Happy State Bank (In re Artho),* 587 B.R. 866, 879 (Bankr. N.D. Tex. 2018). In

the Fifth Circuit, pleading fraud with particularity requires "time, place and contents of the false

representations, as well as the identity of the person making the misrepresentation and what [the

person] obtained thereby." *Williams v. WMX Technologies, Inc*., 112 F.3d 175, 177 (5th Cir.1997).

Rule 9(b) is intended to ensure that the defendant can effectively respond to the plaintiff's

4

allegations, prevents the filing of baseless complaints, and protects defendants from unfounded allegations of wrongdoing that might injure their reputations. *See Hernandez v. Ciba-Geigy Corp.*, 200 F.R.D. 285, 290 (S.D. Tex. 2001).

## IV.    ARGUMENT

### A.    Counts I, III, IV: Knowing Participation in a Breach of Fiduciary Duty, Common-Law Civil Conspiracy, and Professional Negligence

14.    The Complaint broadly describes an alleged Ponzi scheme undertaken by Brian McClain ("McClain") and the Debtors without pleading legally sufficient detail to provide Mechanics fair notice of the claims against it and *the grounds upon which those claims rest*. The Complaint does not, for example, provide factual content that would permit Mechanics to understand when the Ponzi scheme was underway, what businesses were implicated in the Ponzi, who the victims of the Ponzi included, what payments were actually received by Debtors in furtherance of the Ponzi (as distinguishable from those that were not), *and what specific actions Mechanics allegedly undertook in furtherance of the Ponzi*. To add to the confusion, the Trustee acknowledges that the Debtors were involved in multiple "legitimate businesses" and concedes that Debtors were party to at least *some* "legitimate transactions" (*see e.g.*, Compl. at ¶¶ 15-19, 41, 88), but he does not differentiate between transactions, or even what type of transactions, were in furtherance of the Ponzi and which transactions were "legitimate". Nor does he indicate how Mechanics should have been able to tell the difference. There are simply no plausible facts asserted to show that Mechanics knew or even should have known that such a "scheme" was underway. The Trustee alleges in conclusory fashion that Mechanics participated in a civil conspiracy with McClain and the other co-defendants to perpetrate the Ponzi scheme, but fails to plead facts which identify the who, what, where, when, or how Mechanics acted unlawfully.

15.    The Trustee asserts at least three claims that seem to be based on a theory that

Mechanics actively and knowingly facilitated the Ponzi scheme. (SAC, Counts I, III & IV). In support of his claims in Count I, the Trustee alleges "Defendants knew about McClain's fiduciary relationship with Debtors because Defendants dealt directly with McClain in his capacity as a director, officer, or employee of Debtors".[8] The Trustee alleges that Mechanics and Rabo "used their control over Debtors' bank accounts" to help McClain satisfy investor claims for payment on Partnership Agreements with McClain.[9] Trustee then proceeds to describe the conduct of *Rabo, McClain, and the Debtors*—not Mechanics Bank—but concludes implausibly that "Rabo, [sic] and Mechanics loaned Debtors any account [sic] to perpetuate McClain's Ponzi scheme."[10] Trustee nakedly imputes to Mechanics, without a legally plausible basis, the alleged conduct of Rabo, McClain, and the Debtors—a tactic repeatedly employed in the *Original Complaint* and made worse in the *Second Amended Complaint*.[11]

16.    The Court should disregard Trustee's imputative allegations against Mechanics because mere conclusions unsupported by facts do not support a legally plausible claim that Mechanics knew of or participated in McClain's purported Ponzi scheme, check kiting scheme, or fraud.

17.    Furthermore, the Court should not give credence to Trustee's allegations of conversations between Mechanics' COO and Trustee regarding McClain's alleged kiting scheme or fraudulent operations because Trustee has failed to plead plausible facts that demonstrate more

---

[8] SAC at ¶ 122.
[9] *Id.* at ¶ 126.
[10] *Id.*
[11] *Compare id.* at ¶ 46 ("***McClain also took advantage of the Debtors' three accounts at Mechanics . . . to manufacture float via $2 billion in intercompany transfers over five years and conceal his fraud in the volume of chaotic transactions***.") (emphasis added) *with* ¶ 84 ("CFSB and Mechanics, which housed the Debtors' depository accounts by virtue of its acquisition of Rabobank, N.A., similarly acted to perpetuate McClain's Ponzi scheme by permitting Debtors to run billions of dollars in transactions . . . between their accounts at both institutions.").

than mere conclusory speculation of Mechanics' purported knowledge of the same. [12]    Trustee's

allegations contain glaring omissions that do not satisfy the plausibility standard nor Rule 9(b)'s

heighten pleading standard for fraud allegations because he omits, *e.g.*, how the communications

were conveyed (verbally or in writing), when the alleged conversation(s) occurred, what the

subject(s) of the conversation(s) were, who initiated the communications, and he conspicuously

leaves out what Trustee said to Mechanics' COO to prompt his alleged responses and *why* the

communications were initiated in the first place.

18.    Without these details, Trustee's selective manipulation of snippets of an alleged

conversation or conversations are misleading, fail to provide sufficient factual enhancement to his

claims, and fail to bring his allegations from conceivable to plausible. Trustee's allegation that

Mechanics knew or should have known of McClain's kiting scheme is speculative, based on

inference, and fails to satisfy Rule 9(b)'s heightened pleading standard or even Rule 8's because a

complaint that tenders naked assertions devoid of factual support does not satisfy the plausibility

standard, which "asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (citations omitted); *see also In re Cano*, 410 B.R. 506, 522 (Bankr. S.D.

Tex. 2009) (". . . where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]—that the pleader is

entitled to relief.'") (quoting *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).    In fact,

Trustee alleges on one hand that Mechanics knew of McClain's fraud but on the other he

contradicts himself, alleging that McClain **took advantage of Mechanics and concealed his**

---

[12] *See generally* SAC, at ¶¶ 84-87 (". . .  Mechanics Bank 'knew it was in the middle of a check kiting operation' with CFSB, HTLF, and Rabo.).

*fraud*.[13]

19.    Furthermore, Trustee's allegations regarding control over Debtors' accounts are inconsistent and overwhelmingly describe conduct improperly imputed to Mechanics. The Complaint almost exclusively describes Mechanics' alleged "control" over the Debtors' Accounts in the context of *other Defendants' conduct*.[14] Yet, the Complaint couples Mechanics with the other Defendants in a conspicuous attempt to mask Trustee's lack of factual support for its claims against Mechanics. The Complaint fails to describe any conduct exercised by Mechanics that would constitute control over the Debtor's Accounts beyond that inherent to a depository institution.

20.    Trustee's Complaint has a fatal deficiency of factual support because it fails to give Mechanics notice of the specific misconduct Trustee charges against Mechanics or how Mechanics

---

[13] *See* SAC, at ¶ 46 ("McClain also took advantage of the Debtors' three accounts at Mechanics . . . to manufacture float via $2 billion in intercompany transfers over five years and conceal his fraud in the volume of chaotic transactions.").

[14] *Compare id.* at ¶ 73 (". . . Rabo entered into a Deposit Account Control Agreement ("DACA") with Mechanics Bank and Debtors, ***giving Rabo ultimate control over the Debtors' Mechanics Bank depository accounts. . . . Rabo then seized Debtors' cattle and swept the funds from the Debtors' Mechanics bank accounts. . . .***") (emphasis added) *and* ¶ 92 (". . . ***Rabo purported to have an all encompassing security interest in large swaths of all the Debtors' property, including, by the end, their deposit accounts at Mechanics Bank via the DACA. . . . Debtors were reliant on Rabo's loans to extend their existence as outwardly viable entities [and] Rabo was able to leverage the Debtors to do what Rabo wanted. . . .***") (emphasis added) *and* ¶ 93 ("***Rabo's domination of the Debtors was made indisputably manifest when it forced McClain out of his own companies and installed its own, handpicked chief restructuring officer in his place.***") (emphasis added) *and* ¶ 112 ("***Rabo compelled Debtors and Mechanics Bank to execute the DACA, giving Rabo its purported lien on Debtors' deposit accounts on March 23, 2023, so it could sweep the accounts and keep the money.***") *and* ¶126 ("When Debtors' accounts would go into overdraft, Mechanics consulted and coordinated with Rabo to obtain repayment, often through Rabo's further extensions of credit. In other instances, where McClain admittedly 'lost track' of his cash position and substantially overdrew the Debtors' Mechanic accounts even more so than typical, ***Rabo would lead the discussion on how to move the Debtors' cash and incoming receivables around to address any exigent issues. Rabo would relax its internal controls, policies, and procedures, and approve extensions and increases to the credit faculties despite clear warnings and red flags that Debtors were unable to afford the debt.***") (emphasis added) *and* ¶ 132 ("Lawson [who was part of Rabo's client relationship management team for McClain and Debtors] even admitted in his deposition that Rabo was controlling Debtors and McClain") *with* ¶ 126 ("Mechanics and Rabo used their control over Debtors' bank accounts to make on-the spot payments to investors who presented claims for payment on Partnership Agreements with McClain.").

could have been responsible for the acts of Rabo, Debtors, or McClain. The Trustee has similarly

failed to explain *why* Mechanics would participate in McClain's fraud or how Mechanics

benefitted from the same. To be sure, Trustee alleges that "Mechanics was motivated by its desire

to be the last bank with a chair when the music stopped, so it perpetuated the scheme despite all

indications it should not do so, so that the music would never end[,]" but that allegation is so void

of an intelligible meaning and factual support that it renders itself meaningless.[15] Trustee cannot

satisfy his burden because Mechanics did nothing more than act as a depository institution.

### i.    Count I: Knowing Participation in a Breach of Fiduciary Duty

21.    The Trustee has failed to sufficiently plead a claim for knowing participation in

breach of fiduciary duty because the Trustee has failed to allege facts to support essential elements

of that claim. "To state a knowing-participation claim, a plaintiff must show: "(1) the existence of

a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the

third party was aware that it was participating in the breach of a fiduciary relationship." *Centennial

Bank v. Holmes*, 717 F. Supp. 3d 542, 572 (N.D. Tex. 2024) (citing *D'Onofrio v. Vacation Pubs.,

Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (quoting *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634,

639 (5th Cir. 2007)).

22.    Here, the Trustee's Complaint is not accompanied by facts to plausibly allege a

fiduciary relationship with McClain, that Mechanics Bank knew of any alleged fiduciary

relationship between Debtors and McClain, or that Mechanics Bank was aware of any alleged

participation in breach of the same. Trustee's sole allegation regarding Defendants' alleged

knowledge—without delineating the bases of *each* Defendants' purported knowledge—is that

"Defendants knew about McClain's fiduciary relationship with Debtors because Defendants dealt

---

[15] *See id.* at ¶ 86.

directly with McClain in his capacity as a director, officer, or employee of Debtors."[16] However, that single, conclusory statement fails to adequately plead the basis upon which Trustee alleges that each Defendant had knowledge of McClain's alleged fiduciary status with Debtors.

23.    The Trustee's Complaint does not allege facts that identify any specific breach of duty that is being claimed and whether the breach of that duty would be known to Mechanics to give it notice of the purported trust status of any specifically complained of proceeds, or how Mechanics knew that it was participating in the alleged breach of such a fiduciary relationship.

24.    The Trustee's Complaint does not plausibly plead facts sufficient to give Mechanics fair notice of the grounds upon which he alleges Mechanics knew of the fiduciary relationship between Debtors and McClain or that Mechanics knowingly participated in McClain's breach thereof. Dismissal of this cause of action is appropriate.

### ii.    Count IV: Professional Negligence

25.    Trustee's Count IV alleging professional negligence by Mechanics is particularly specious. To state a claim for negligence generally, "a plaintiff must be able to prove three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach." *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App.—El Paso 2012, no pet.).

26.    Here, Trustee alleges that "CFSB and Mechanics Bank breached their duty of ordinary care to Debtors by engaging in cash and check kiting activity where CFSB and Mechanics Bank used their control over Debtors' accounts to make on-the-spot payments to investors demanding payment under fraudulent Partnership Agreements."[17] As explained *supra* and *infra*, Mechanics did not control the Debtors' Accounts and the same is evident on the face of the

---

[16] *See id.* at ¶ 122.
[17] *Id.* at ¶ 163.

HB: 4903-5540-3863.5

Complaint.[18] To the extent Trustee's professional negligence claim is dependent upon Mechanics' alleged control of the Debtors' Accounts, the Court should dismiss Trustee's claim outright.

27.     Trustee further alleges that "Defendants breached their duty of ordinary care by ignoring known and obvious red flags and acting to expand the Debtors' suspect operations."[19] In short, Trustee alleges that Mechanics did not monitor the Debtors' bank account activity to discover McClain's fraud, but Trustee's allegations are reliant on a duty that does not exist under Texas law. "Whether a duty exists is a question of law for the court." *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.) (citation omitted). "The Texas Supreme Court has refused to create a standard of care or duty based upon internal policies, and the failure to follow such policies does not give rise to a cause of action in favor of customers or others." *Id.* (citing *FFE Transp. Servs., Inc. v. Fulgham,* 154 S.W.3d 84, 92 (Tex.2006)).

28.     It is incumbent upon Trustee to plead that Mechanics had a duty that it failed to satisfy, but Trustee does not plead sufficient facts to establish even on the face of his Complaint that Mechanics had any duty to investigate or act upon legally undefined and amorphous "red flags." *See generally In re Rollaguard Sec., LLC*, 591 B.R. 895, 925 (Bankr. S.D. Fla. 2018) (". . . '[R]ed flags' or mere suspicions are insufficient to trigger any obligation by the Defendant banks to investigate.") (citing *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 907 (11th Cir. 2012) (citations omitted); *see also Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 993 (11th Cir. 2014) (". . . [M]erely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly*.").

29.     The Trustee has not plead adequate facts to support a claim that Mechanics breached any specific duty derived under common law, statute, or by agreement. Vague allegations

---

[18] *See supra* at note 14; *see also infra* §§ E(iii)-(iv).
[19] SAC at ¶ 167.

that Mechanics ignored red flags—a term with no legally discernible meaning in this context—are insufficient. To the extent Trustee invokes the UCC to assert that Mechanics has violated a statutory duty, he has failed to identify any provision with enough specificity to give Mechanics fair notice of it as a basis upon which Trustee's negligence claim is founded. To the extent Trustee invokes any account agreement to assert that Mechanics has breached a contractual duty, he has failed to identify any provision or language in such agreement with requisite specificity to give Mechanics fair notice of it as a basis upon which Trustee's negligence claim is founded.

30.    Trustee's Complaint fails to plead facts necessary to sustain recovery, nor has he pleaded facts from which an inference may fairly be drawn under the relevant theory asserted. As a result, the Court should dismiss Trustee's professional negligence claim.

### iii.    Count III: Civil Conspiracy

31.    The Trustee makes claims generally against Mechanics, a depository bank that was not a lender to the Debtors, of facilitating the alleged Ponzi scheme through cash and check kiting activity. This check kiting allegation is made without acknowledging that the depository banks are generally the victim of a check kiting enterprise. In fact, the Trustee does not allege who, if anyone, was left holding dishonored checks because of the alleged check kite by Debtors. Without such facts being alleged there is simply no evidence of an actual check kiting scheme or any harm to the Debtors. The Trustee's check kiting theories and analysis are without the requisite specificity to even be tested by Mechanics. There is simply nothing in these conclusory statements that supports the Trustee's claims of fraud or the existence of a Ponzi scheme.

32.    Certainly, there is no support provided in the allegations made by the Trustee that Mechanics Bank conspired with the other co-defendants and Debtors to perpetrate the Ponzi scheme. In fact, there is no assertion in the Trustee's Complaint that Mechanics had access to any information outside of the Debtors' bank transactions from which it would have reason to believe

12

that a Ponzi scheme existed.

33.     In Texas, "civil conspiracy is a derivative tort. If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails." *Meadows v. Hartford Life Ins. Co.,* 492 F.3d 634, 640 (5th Cir. 2007)(citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996)); *Krames v. Bohannon Holman, LLC,* No. 3:06-CV-2370-O, 2009 WL 762205, at *9 (N.D. Tex. Mar. 24, 2009)("Plaintiffs' failure to state a claim for fraud, which is the offense underlying their conspiracy claim, necessitates that Plaintiffs' conspiracy claim should similarly be dismissed.").

34.     The Trustee's failure to plead fraud is, on its own, fatal to the claim of civil conspiracy. *See Krames,* 2009 WL 762205, at *9. Furthermore, a claim for civil conspiracy must plead a "meeting of the minds"—that is "a preconceived plan or a time and place at which [the defendants] had a meeting of the minds regarding the object of the conspiracy." *I Love Omni, LLC v. Omnitrition International, Inc.*, No 3:16-CV-2410-G, 2017 WL 1281130, at *3 (N.D. Tex. Apr. 6, 2017) (quoting *Samsung Electronics America, Inc. v. Yang Kun Chung*, No. 3:15-CV-4108-D, 2017 WL 635031, at *13 (N.D. Tex. Feb. 16, 2017).

35.     Here, the Trustee has not alleged any facts that would show a meeting of the minds between Mechanics and the other codefendants to achieve some fraudulent object, much less any interactions sufficient to even plausibly suggest the meeting of the minds required for a claim of conspiracy.

36.     Furthermore, to the extent Trustee attempts to lump Mechanics in with Rabo or the other depository institutions, such group pleading will not suffice. *See Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*, No. 3:03-CV-2490-N, 2004 WL 3170789, at *1 (N.D. Tex. Nov. 15, 2004) ("General allegations, which lump all defendants together failing to segregate the alleged

wrongdoing of one from those of another cannot meet the requirements of Rule 9(b)")(brackets, internal quotation marks, and citations omitted). Dismissal of the conspiracy claim is warranted.

### B.    In Pari Delicto

37.    Under Texas law, the doctrine of *in pari delicto*, also known as the "unlawful act rule," provides that "no action may be predicated upon an admittedly unlawful act of the party asserting it." *Rodriquez v. Love*, 860 S.W.2d 541, 544 (Tex. Ct. App. 1993); *see also Sharpe v. Turley*, 191 S.W.3d 362, 366 (Tex. Ct. App. 2006) ("Courts have interpreted this defense to mean that if the illegal act is inextricably intertwined with the claim and the alleged damages would not have occurred but for the illegal act, the plaintiff is not entitled to recover as a matter of law."); *Hill v. Day (In re Today's Destiny, Inc.)*, 388 B.R. 737, 748 (S.D. Tex. 2008). Here, the Trustee has repeatedly and consistently alleged and acknowledged that the Debtors and McClain operated the fraudulent Ponzi scheme. (*See generally* Compl.) As most recently stated by the Eighth Circuit in *Kelley v. BMO Harris Bank Nat'l Ass'n*, 115 F.4th 901, 904 (8th Cir. 2024), "The equitable defense of in pari delicto embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Kelley, 115* F.4th at 901, 904 (8th Cir. 2024) (citing *Grassmueck v. Am.Shorthorn Ass'n,* 402 F.3d 833, 837 (8th Cir. 2005)); *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (discussing same legal standard); *In re Dublin Securities, Inc.*, 133 F.3d 377, 380 (6th Cir. 1997) (same). The *Kelley* decision is the most recent example of a Circuit Court vacating a jury verdict rendered in favor of a bankruptcy trustee for a bank's alleged aiding and abetting a debtor's Ponzi scheme. *Kelley*, 115 F.4th at 904. Because the Trustee is standing in the shoes of the Debtors here, these allegations and admissions dictate dismissal of Plaintiff's claims under the doctrine of *in pari delicto*.

### C.    Counts XIV and XV: Preferential Payments and Fraudulent Transfers

38.    When Trustee's conclusory claims are disregarded, the Trustee's Complaint fails

14

to allege any conduct by Mechanics that would permit the Court to draw a reasonable inference that Mechanics acted unlawfully or to establish facial plausibility to support Counts XIV and XV.

39.     The Trustee's Complaint fails to provide sufficient factual detail and clarity to meet the Federal Rule of Civil Procedure Rule 8(a)(2)'s pleading standard requiring a short and plain statement of the claim. FED. R. CIV. P. 8(a)(2). Trustee's allegations regarding alleged overdrafts are confusing, unclear, and ambiguous. With regard to each transaction, it is unclear (1) who is the transferor, (2) who is the transferee, (3) what was transferred, (4) what was received, and (5) the financial condition of the debtor/transferor at the time of *each* transaction. The Complaint as plead requires that the Court make unjustified inferential leaps regarding the alleged overdrafts and the status of the accounts without accounting for the details of the specific transactions in dispute. There are only generalized statements that any "overdraft" within 90 days would equate to a preferential payment to Mechanics.

40.     Mechanics is entitled to know, it must know, the factual basis for Trustee's claims and his position on each element of each cause of action for each transaction to provide an informed response and to develop a meaningful defense. However, Mechanics is precluded from evaluating Trustee's preference and fraudulent transfer causes of action because the Trustee's Complaint fails to delineate the most basic elemental facts upon which *each* alleged transfer is grounded. To satisfy his pleading burden, the Trustee must allege facts sufficient to give Mechanics Bank notice of, for example, who is the transferor, who is the transferee, what value was exchanged, what was the financial condition of the debtor at the time of each alleged transfer, or whether any alleged transfer was made to an "insider." The Trustee's Complaint fails to clarify these foundational questions in a discernable way because it commingles transactions without detailing the basis upon which each disputed transaction is grounded. These claims should be

dismissed based on these deficiencies alone.

41.    As a result, the Court should dismiss Counts XIV and XV for failure to state a claim for relief that is plausible on the face of the Trustee's Complaint.

42.    Additionally, Trustee failed to adequately plead facts that, if true, would establish a fraudulent transfer claim.  "Under § 548(a)(1)(B), to state a claim for fraudulent transfer Plaintiff must demonstrate that: (1) a transfer was made of the Debtor's property; (2) the transfer was made within two years of the Petition Date; (3) the Debtor received less than reasonably equivalent value in exchange for such transfer; and (4) the Debtor was insolvent at the time of such transfer, or became insolvent as a result of such transfer or obligation." *In re All Tex. Elec. Contractors, Inc. v. NSPS Metals LLC*, No. 20-34656, 2022 WL 162786, at *6 (Bankr. S.D. Tex. Jan. 18, 2022).

43.    To survive a 12(b)(6) motion to dismiss, Trustee's Complaint "must do more than summarily state there was 'less than a reasonably equivalent value in exchange.'" *In re All Tex. Elec. Contractors, Inc.*, No. 20-34656, 2022 WL 162786 at *7 (quoting *Sarachek v. Right Place Inc. (Agriprocessors, Inc.)*, Nos. 08-2751, 10-09123, 2011 WL 4621741 at *5, 2011 Bankr. LEXIS 3671 at *15 (Bankr. N.D. Iowa 2011)). But here the Trustee's Complaint does not even do that. Trustee does not bother to address any of the elements of his fraudulent transfer claims.

44.    For each of the disputed transactions, Trustee fails to identify who is the transferor, what was transferred, or what was received in exchange for the alleged transfer. The foregoing details are necessary for Mechanics to understand what it allegedly did wrong, provide a substantive answer, propound efficient and meaningful discovery, and present a meaningful defense. By way of example, the Trustee's Complaint fails to allege what was received, if anything, by Debtors in exchange for the allegedly fraudulent transfers, nor does it explain how receipt of the same constitutes less than reasonable equivalent value.

16

45.     When Trustee's conclusory allegations are disregarded, the Complaint fails to allege any conduct by Mechanics that would permit the Court to draw a reasonable inference that Mechanics acted unlawfully or to establish facial plausibility to support Trustee's fraudulent transfer claims pursuant to the Bankruptcy Code or the Texas Uniform Fraudulent Transfers Act ("TUFTA").

> ### i.    Trustee's fraudulent transfer allegations are so ambiguous that they fail to state a claim.

46.     Trustee's fraudulent transfer are confusing, unclear, and ambiguous because Trustee fails to identify (1) who is the transferor, (2) who is the transferee, (3) what was transferred, (4) what was received, and (5) the financial condition of the debtor/transferor at the time of the transaction.[20] Trustee's failure to identify the foregoing *for each disputed transaction* necessarily precludes Mechanics from developing a meaningful defense or propounding efficient and targeted discovery for this cause of action.

47.     Mechanics further asserts that Trustee's fraudulent transfer claims must fail as a matter of law because Mechanics cannot be the transferee of any funds in the Debtors' Accounts because Mechanics was simply Debtors' depository institution and a mere conduit for the transactions that flowed through those accounts. As explained *infra*, Mechanics did not possess or otherwise exercise dominion or control over the Debtors' Accounts because Mechanics had no legal authority to stop the principal of the Debtors' Account(s)—McClain, or Rabo by virtue of the DACAs—from disposing of the Debtors' Account funds as they saw fit.[21]

48.     Mechanics is entitled to know, it must know, the factual basis for Debtors' claims and his position on each element of each cause of action for each transaction to provide an

---

[20] *See* SAC, ¶¶ 218-23.
[21] *See also infra* §§ E(iii)-(iv)

informed response and to develop a meaningful defense. The Complaint is factually insufficient and does not provide Mechanics fair notice of the claims asserted against it.

49.    By way of example, Mechanics is precluded from evaluating Trustee's TUFTA causes of action because the Complaint fails to delineate (nor does it even attempt to plead) the most basic elemental facts upon which *each alleged transfer* is grounded. To satisfy his pleading burden, Trustee must  allege facts sufficient to give Mechanics notice of, for example, who is the transferor, who is the transferee, what value was exchanged, what was the financial condition of the debtor at the time of each alleged transfer, or whether any alleged transfer was made to an "insider."[22] The Complaint fails to address these foundational pleading requirements for Trustee's TUFTA claims. These claims should be dismissed based on these deficiencies alone.

  **ii. Trustee failed to plead sufficient facts to support his fraudulent transfer claims under §§ 24.005(a)(1), (a)(2)(A), and (a)(2)(B); 24.006(a); and 24.006(b) of TUFTA.**

### TUFTA Actual Fraud---§ 24.005(a)(1)

50.    As to § 24.005(a)(1), Rule 9 is applicable through Bankruptcy Rule 7009. Pursuant to Rule 9(b), when a party alleges fraud, it "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To satisfy Rule 8(a), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).

51.    To assert a claim under § 24.005(a)(1), Trustee must plead facts to support "the elements of an actual fraudulent transfer under TUFTA []: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors." *Matter of Life Partners Holdings, Inc.*, 926 F.3d

---

[22] The Complaint does not even recite the elements of Trustee's fraudulent transfer claims under the Bankruptcy Code or TUFTA, nor does it identify under which specific provisions of TUFTA Trustee's claims are asserted. *See* SAC., ¶¶ 218-23.

103, 117 (5th Cir. 2019) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d

191, 204–05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)).

52.     The fourth element of §24.005(a)(1) is founded on actual fraud; it requires Trustee

to prove the fraudulent transfers occurred with actual intent to hinder, delay, or defraud the

transferor/debtor's creditors. To prove an actual intent to defraud creditors, Trustee must prove an

actual intent to defeat or delay the rights of creditors. *Floyd v. Option One Mortgage Corp. (In re*

*Supplement Spot, LLC),* 409 B.R. 187, 204 (Bankr. S.D. Tex. 2009). However, to the extent

Trustee seeks to hold Mechanics liable for such, the Complaint fails to set forth sufficient facts to

(1) support an inference of an actual intent to defraud the Debtors' creditors (or that Mechanics,

with fraudulent intent, assisted Debtors in the same), (2) identify the transferor and transferee for

each of the disputed transactions[23], or (3) identify the who, what, where, when, or why underlying

its claim of actual fraudulent intent, as required by Rule 9. *See, e.g.*, *Williams v. WMX Techs.*, 112

F.3d 175, 177 (5th Cir. 1997) (explaining that pleading fraud with particularity in the Fifth Circuit

requires the pleader to identify the time, place, and contents of an allegedly false representation,

including the identity of the person making the misrepresentation and what that party obtain as a

result) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *Melder v.*

*Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994). The Complaint fails to establish actual fraudulent

intent.

53.     Furthermore, the Complaint is factually insufficient to satisfy the Rule 9(b)

standard because it does not allege the who, what, where, when, or why regarding conduct by

Mechanics that is allegedly wrongful. The Complaint also fails to satisfy the Rule 8 standard

because it only asserts "mere conclusory statements do not establish facial plausibility." *Spicer*

---

[23] Again, the Complaint fails to identify the specific transferor(s) and/or transferee(s) for any specific
transaction subject to Trustee's fraudulent transfer claims.

HB: 4903-5540-3863.5

F.3d at 365. Indeed, Trustee does not even recite the elements of 11 U.S.C. §548(a)(1)(A), (a)(1)(B) or Sections 24.005 and .0006 of TUFTA.[24]

54.    Therefore, Trustee's fraudulent transfer claim under §24.005(a)(1) of TUFTA must be dismissed.

## TUFTA Constructive Fraud §§ 24.005(a)(2), 24.006(a)

55.    Trustee's constructive fraud claims pursuant to TUFTA should be dismissed because the Complaint does not plead facts which satisfy the elements of constructive fraud under TUFTA §§ 24.005(a)(2) or 24.006(a).

56.    To establish constructive fraud, a party must prove the following elements *for each transaction* under § 24.005(a)(2) of TUFTA: 1) the transaction constituted a transfer; 2) the debtor received less than reasonably equivalent value in exchange for the transfer; and 3) one of the following: (i) the debtor was insolvent at the time of the transfer or as a result of the transfer; (ii) the debtor was left with unreasonably small capital after the transfer; or (iii) at the time of the transfer debtor intended to incur debts beyond its ability to pay. *In re SMTC Mfg. of Tex.*, 421 B.R. 251, 316 (Bankr. W.D. Tex. 2009).

57.    To prevail under § 24.006(a) of TUFTA, a party must prove the following elements *for each transaction*: 1) the transaction constituted a transfer; 2) the debtor received less than reasonably equivalent value in exchange for the transfer; and the debtor was insolvent at the time of the transfer or as a result of the transfer. *See id.*

58.    Reasonably equivalent value means "a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM. CODE. § 24.003(d). The debtor's receipt of less than reasonably equivalent value is

---

[24] *See* SAC, ¶ 218-23.

an essential element of TUFTA §§ 24.005(a)(2) and 24.006(a).

59.     Here, Trustee failed to sufficiently plead facts which would support the element of reasonably equivalent value. Specifically, Trustee failed to plead facts necessary to sustain recovery because the Complaint fails to unambiguously identify, *for each of the disputed transactions*, who is the transferor/debtor and what was received in exchange for the alleged transfer.

60.     Consequently, the Complaint fails to set forth facts which establish the elements of a fraudulent transfer claim under §§ 24.005(a)(2) or 24.006(a) of TUFTA, and the claims must be dismissed.

### TUFTA Constructive Fraud § 24.006(b)

61.     To prove a claim under § 24.006(b) of TUFTA, Trustee must prove 1) a transfer made by a debtor which is fraudulent as to a creditor whose claim arose before the transfer was made; 2) the transfer was made to an insider for an antecedent debt; 3) the debtor was insolvent at that time; and 4) the insider had reasonable cause to believe that the debtor was insolvent. *See* TEX. BUS. & COM. CODE § 24.006(b).

62.     Under TUFTA, "Insider" means "(A) if the debtor is an individual: (i) a relative of the debtor or of a general partner of the debtor; (ii) a partnership in which the debtor is a general partner; (iii) a general partner in a partnership described in Subparagraph (ii) of this paragraph; or (iv) a corporation of which the debtor is a director, officer, or person in control; . . .  (C) if the debtor is a partnership: (i) a general partner in the debtor; (ii) a relative of a general partner in, a general partner of, or a person in control of the debtor; (iii) another partnership in which the debtor is a general partner; (iv) a general partner in a partnership described in Subparagraph (iii) of this paragraph; or (v) a person in control of the debtor." TEX. BUS. & COM. CODE. §§ 24.003(a), (b).

63.     Here, Trustee failed to plead facts to plausibly show a transfer to an insider for an

21

antecedent debt. To the extent this claim is dependent on Trustee's allegations that Mechanics controlled the Debtors or the Debtors' Accounts, the Court should dismiss this cause of action outright.[25] Trustee further failed to plead facts necessary to sustain recovery because the Complaint fails to unambiguously identify, *for each of the disputed transactions*, who is the transferor/debtor or who is the alleged insider.

64.     To survive a 12(b)(6) motion to dismiss, a § 24.006(a) TUFTA claim must be plead more thoroughly than the conclusory allegations in the Complaint. Because the Complaint fails to set forth facts which establish the elements of a fraudulent transfer claim under § 24.006(b) of TUFTA, it must be dismissed.

### iii.    Mechanics Bank is Not a Transferee.

65.     The Fifth Circuit has held that with regards to the Bankruptcy Code's fraudulent transfer provision, in order to be considered a "transferee" an entity must have "dominion or control" over the disputed assets.[26] *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2015 WL 13034513, at *5 (N.D. Tex. Apr. 21, 2015) (citing *In re Coutee*, 984 F.2d 138, 141 (5th Cir. 1993)). "To determine legal dominion or control, courts apply a factor test, asking whether the party has complete legal title, unfettered discretion to pay his own creditors, and the lack of any agreement restricting access to or use of the funds." *Franklin D. Azar & Associates, P.C. v. Bryant*, No. 417CV00418ALMKPJ, 2018 WL 6929339, at *5 (E.D. Tex. Nov. 14, 2018), report and recommendation adopted, No. 417CV00418ALMKPJ, 2019 WL 181004 (E.D. Tex. Jan. 12, 2019). A recipient does not have dominion or control over assets if it, for instance, holds the assets

---

[25] *See supra* at note 14; *see also infra* §§ E(iii)-(iv).

[26] The Texas Supreme Court has extended the "dominion or control" test to TUFTA claims. *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2015 WL 13034513, at *5 (N.D. Tex. Apr. 21, 2015) (citing *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 165–66 (Tex. 1996)). Accordingly, failure to establish dominion and control under the Bankruptcy Code's fraudulent transfer provision equates to failure to establish the same under TUFTA.

"only for the purpose of fulfilling an instruction to make the funds available to someone else."
*Rotstain*, No. 3:09-CV-2384-N, 2015 WL 13034513 at *5 (citing *In re Coutee*, 984 F.2d at 141).

66.    "Actual control over funds in an account is the predominant factor in determining
the account's ownership." *Bryant,* No. 417CV00418ALMKPJ, 2018 WL 6929339 at *5 ((citing *In
re IFS Financial Corp.*, 669 F.3d 255, 262–63 (5th Cir. 2012)). "[M]ere deposits into a bank
account [do not] rise to the level of dominion and control." *Id*. at *5 (citing *GE Capital Comm.,
Inc. v. Wright & Wright, Inc.*, 2009 WL 5173954, at *6 (N.D. Tex. Dec. 31, 2009)).

67.    The Court in *Meoli* explained that the distinction between "mere possession" and
"ownership" is to ensure that a "'party is not to be considered an initial transferee if it is merely an
agent who has no legal authority to stop the principal from doing what he or she likes with the
funds at issue.'" *Meoli v. The Huntington Nat'l Bank*, 848 F.3d 716, 725 (6th Cir. 2017) (quoting
*Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 534 (6th Cir. 2003)). There, the court reasoned
that when a bank receives money for the purpose of depositing it into a customer's account, "'the
bank never has actual control of the funds and is not a section 550 initial transferee.'" *Id*. (quoting
*Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1200 (11th Cir.
1988). The *Meoli* court further addressed the specific nature of a depository bank and explained
that "'when a bank receives funds in the form of a deposit ... the bank [is not] liable as an initial
transferee in spite of the significant control it exercises over the funds." *Id*. (quoting *Menotte v.
United States (In re Custom Contractors, LLC)*, 745 F.3d 1342, 1350 (11th Cir. 2014).

### iv.    Mechanics Bank Did Not Control the McClain Accounts.

68.    The Fifth Circuit in *Matter of Coutee* concluded that "[d]ominion or control means
legal dominion or control" and the fact that the party accused of accepting a fraudulent transfer
"could have violated its fiduciary obligation to the [Debtor] by taking the money out of the trust
account and spending it as it pleased would make no difference in the analysis." *Matter of Coutee*,

984 F.2d at 138, n. 4; *See, e.g., In re Baker & Getty Financial Services*, Inc., 974 F.2d 712 (6th Cir.1992) (holding that agent was not initial transferee even though he could have "violated his [principal's] instructions and taken the cash to a racetrack or a jewelry store").

69.    The *Matter of Coutee* Court further explained that under the dominion and control test, "a party that receives a transfer directly from the debtor will not be considered the initial transferee unless that party gains actual dominion or control over the funds," noting that where this is not the case, the intermediary party is referred to as a mere conduit. *Matter of Coutee*, 984 F.2d at 141 & n.3 (citing *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 893 (7th Cir. 1988)).

70.    Here, the DACAs and Rabo's explicit dominion and control of the Debtors' accounts thereunder, among other things, establish that Mechanics Bank did not control the Debtor accounts at the time of the complained of transactions.[27] *See* U.C.C § 9104(a)(2) ("A secured party has control of a deposit account if . . . the debtor, secured party, and bank have agreed in a signed record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor."). Because Mechanics did not exercise legal dominion and control over the Debtors' Accounts, it cannot be a transferee, the Trustee cannot recover from Mechanics pursuant to his fraudulent transfer claims, and therefore his fraudulent transfer claims must fail. *Rotstain*, No. 3:09-CV-2384-N, 2015 WL 13034513 at \*5 (finding that an entity must have dominion and control over the disputed assets to be considered a transferee) (citing *In re Coutee*, 984 F.2d at 141).

**D.    Mechanics Bank Did Not Loan Funds to Debtors**

71.    The Complaint frequently claims without corroborating details that Mechanics

---

[27] *See supra* at note 14.

HB: 4903-5540-3863.5

*loaned* Debtors funds, but Mechanics was not the Debtors' lender, ***and it did not extend credit to***

***Debtors***. Trustee's preference and fraudulent transfer claims are premised on the false allegation

that Mechanics extended credit to Debtors (*i.e.*, paid overdrafts resulting from insufficient funds

and settled on the covered item with subsequent deposits), but Trustee does not allege any plausible

facts to support his foundational allegation, without which his claims cannot survive, because there

are no such facts. Trustee's allegations are grounded upon fiction. The Complaint alleges:

- "[I]t is clear the Debtors repaid investors with other investors' funds, as well as from the proceeds of credit extensions granted by Rabo, in the traditional sense of a loan or line of credit, and Mechanics or CFSB, ***in the form of the payment of insufficient funds checks*** that left the Debtors' accounts in a near perpetual state of negative overdraft balances." Trustee's Second Am. Compl., at ¶ 30 (emphasis added).

- "The Debtors' cash activity constituted a Ponzi scheme because McClain was repaying investors with fictitious profits, ***extensions of credit from Rabo, Mechanics, and CFSB***, and 'floats' from the check kiting scheme." *Id.* at ¶ 38 (emphasis added).

- "McClain used funds from new investors and ***further extensions of credit by HTLF, CFSB, and Mechanics Bank (when they honored NSF checks)*** as well as Rabo (via extended credit facilities) to pay off old investors." *Id.* at ¶ 123 (emphasis added).

- "***Rabo, [sic] and Mechanics loaned Debtors any account [sic] to perpetuate McClain's Ponzi scheme***." *Id.* at ¶ 126 (emphasis added).

- ". . . ***CFSB, Mechanics, and HTLF continued to honor the Debtors' NSF checks*** . . . ." *Id.* at ¶ 154 (emphasis added).

- ". . . ***Rabo, via its credit facilities, and CFSB and Mechanics, both via their payment of NSF checks and continued automatic crediting of checks despite repeated prior overdrafts, lent Debtors any fund shortfalls caused by overdrafts on Debtors' bank accounts at CFSB and Mechanics to perpetuate the fraudulent Ponzi scheme***." *Id.* at ¶ 154 (emphasis added).

- "***Exhibit F hereto details the relevant Debtor entity, account number, date, day of week, and dollar amount of daily overdrafts of the Debtors' accounts with Mechanics. Each overdraft constituted a loan to the Debtors that was subsequently repaid by future, additional deposits by the Debtors***." *Id.* at ¶ 220 (emphasis added).

72.     The foregoing excerpts demonstrate the conclusory and unsupported nature of

Trustee's claim that Mechanics "loaned" money to Debtors through the payment, or honoring, of

insufficient funds checks and extensions of credit. Exhibits D and F to the Complaint depict crudely structured data points that fail to provide sufficient detail to give Mechanics notice of the bases of each purported transaction. The confusion inherent to Exhibit D and to a substantially greater degree Exhibit F is, in part, because the exhibits commingle years of Debtors' transactions without delineating what Debtor account is at issue; who the parties to *each* underlying transaction are; what conduct by Mechanics, if any, resulted in an alleged loan to any Debtor (*i.e.*, through the payment of insufficient funds checks or an extension of credit, as alleged by Trustee without identify any specific item subject to his claims); whether any alleged overdraft was subsequently covered by subsequent deposits; by whom the overdraft was covered; or *when* it was covered. Trustee misleadingly injects Mechanics into Debtors' account activity without regard for the nature of *each specific transaction* that is the subject of Trustee's claims. Without more, Exhibits D and F do not provide Mechanics fair notice of the basis upon which *each* of Trustee's fraudulent transfer claims (or any other claims derived from the transactions in Exhibits D and F) are grounded.

### i.    A ledger balance overdraft is not a transfer

73.    A ledger balance overdraft is incurred in a depositor's account when it has insufficient funds to cover an item presented for payment on the day it is presented. The Texas Business and Commerce Code affords banks a "midnight deadline" to determine what action to take on an item presented for payment (*i.e.*, whether to honor or dishonor the item).[28] If a subsequent deposit is made before the midnight deadline on the next banking day after the item is presented, the bank must pay the item, and the end result is that no true overdraft was incurred.

---

[28] Tex. Bus. & Com. Code Ann. § 4.104(a)(10) ("'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later.").

HB: 4903-5540-3863.5

Where no subsequent deposit is made to cover the presented item, a bank may still honor or otherwise settle (pay) the presented item and create a true overdraft. A bank may also dishonor the item, which would not create an overdraft as long as the bank dishonored the items presented for payment prior to the midnight deadline.  A covering deposit that cures a ledger balance overdraft prior to the expiration of the bank's midnight deadline does not constitute payment upon an existing debt (or loan) owed by the depositor to the bank and therefore does not constitute a transfer.

74.    Here, Trustee has failed to plead his preference and fraudulent transfer claims with sufficient detail to allow Mechanics to evaluate whether the transactions reflected in Exhibits D and F allege ledger balance overdrafts, for which Trustee cannot sustain a claim because such do not constitute transfers or payments of an antecedent debt, or whether it alleges "true" overdrafts that may or may not constitute transfers depending on whether (and to what extent) provisional credit may have been given subject to a security interest in the uncollected funds. The Complaint fails to detail with particularity the transactions that are the subject of Trustee's preference and fraudulent transfer claims.

75.    The significance of the Complaint's deficiencies is magnified by Trustee's allegations that "[e]ach overdraft with CFSB and Mechanics Bank [exhibited in Exhibit D] created a debt of the Debtors that was subsequently repaid by covered funds . . . . [and] [e]ach overdraft [on Exhibit F] constituted a loan to the Debtors that was subsequently repaid by future, additional deposits[.]"[29] Trustee must provide Mechanics sufficient detail to evaluate whether the transactions at issue even constitute transfers, but Trustee's allegation that Mechanics *loaned* Debtors funds are so commingled, convoluted, and deficient that Mechanics is precluded from

---

[29] SAC, at ¶¶ 212, 220.

doing so. These ambiguities in Trustee's Complaint are unsurprising, however, considering Trustee likely knows that if he pleads the requite level of detail, he risks revealing that the alleged overdrafts reflected in Exhibits D and F do not constitute transfers as a matter of law.

76.     As explained *supra*, to satisfy Rule 9(b), Trustee's allegations of fraudulent conduct must be plead with particularity, which means identifying the actual details of the alleged fraudulent conduct. Here, Exhibits D and F do nothing remotely close to that, despite claiming to depict more than $55 million and $176 million in alleged preferential payments and fraudulent transfers, respectively. Trustee seems to have summarily concluded that all purported overdrafts over the life of Debtors' banking relationship with Mechanics constitute loans, without regard for whether each transaction even constitutes a transfer. Rule 9 requires more from Trustee to satisfy its heightened pleading standard.

77.     The Second Amended Complaint is Trustee's *third* attempt at pleading a legally sufficient Complaint, and he has failed to do so. Therefore, the Court should dismiss Counts XIV and XV of Trustee's Second Amended Complaint with prejudice.

## V.      CONCLUSION

Mechanics Bank respectfully requests that this Court enter the attached Order, dismissing the Complaint in its entirety with prejudice and grant it such other and further relief to which it is justly entitled.

Dated: July 24, 2025.                    Respectfully submitted,


                                         */s/ Buffey E. Klein*                    
                                         Richard A. Illmer
                                         State Bar No. 10388350
                                         Husch Blackwell LLP
                                         1900 N. Pearl Street, Suite 1800
                                         Dallas, Texas 75201
                                         (214) 999-6100

(214) 999-6170 (fax)
rick.illmer@huschblackwell.com

Buffey E. Klein
State Bar No. 24032515
Husch Blackwell LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 (fax)
buffey.klein@huschblackwell.com


Lynn Hamilton Butler
State Bar No. 03527350
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com

**COUNSEL FOR MECHANICS BANK**

29

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2025, a true and correct copy of the foregoing was served upon all counsel of record pursuant to the Federal Rules of Bankruptcy Procedure.

*/s/ Buffey E. Klein*
Buffey E. Klein

30