ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

SPECIAL COUNSEL TO THE TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| IN RE:<br><br>MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.,<br><br>    *Debtors.*[1] | Chapter 7<br><br>CASE NO. 23-20084-swe<br><br>Jointly Administered |
| KENT RIES, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATES OF MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.,<br>    *Plaintiff,*<br>v.<br><br>COMMUNITY FINANCIAL SERVICES BANK; HTLF BANK; MECHANICS BANK; and RABO AGRIFINANCE, LLC,<br>    *Defendants.* | ADV. PROC. NO. 25-02005-swe<br><br>Honorable Scott. W. Everett |

## TRUSTEE'S OBJECTION AND RESPONSE TO
## MECHANICS BANK'S MOTION TO DISMISS
## TRUSTEE'S SECOND AMENDED ADVERSARY COMPLAINT

---

[1] The Debtors in these chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. (Case No. 23-20086-swe).

# TABLE OF CONTENTS

Table of Contents ..............................................................................................................................i

Table of Authorities........................................................................................................................ii

Introduction......................................................................................................................................1

Argument and Authorities................................................................................................................2

A.    Mechanics cannot properly incorporate and rely on the arguments advanced
      by its co-defendants in moving to dismiss. ..........................................................................2

B.    The Trustee has pleaded legally cognizable and factually plausible claims against
      Mechanics, so dismissal is legally unavailable.....................................................................3

      1)      Mechanics cannot evade the Trustee's plausible knowing participation claim..............3

      2)      The Trustee has pleaded a viable civil conspiracy claim against Mechanics.................5

      3)      Mechanics cannot justify dismissal of the professional negligence claim. ....................9

      4)      The Trustee has pleaded actionable fraudulent transfer and preference claims. ........11

C.    Mechanics' *in pari delicto* argument for dismissal is both premature and
      unavailing.............................................................................................................................21

D.    To the extent repleading may be required, the Trustee is entitled to leave to
      replead..................................................................................................................................22

Conclusion .....................................................................................................................................22

### TABLE OF AUTHORITIES

**Cases**

*Brickely for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beams Systems, LLC, et al.*, 566 B.R. 815, (W.D. Tex. 2017) ...............................................................22

*Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008 (5th Cir. 1992)..............................16

*Caliber Home Loans, Inc. v. Cove*, Civil Action No. 3:22-CV-02298-M, 2025 WL 71983 (N.D. Tex. Jan. 10, 2025) .............................................................................................6

*Centennial Bank v. Holmes*, 717 F. Supp. 3d 542 (N.D. Tex. 2024) ...............................................4

*Di Piazza v. Weather Grp. Television, LLC*, Civil Action No. 5:19-CV-060-C, 2019 WL 8107920 (N.D. Tex. June 3, 2019) ................................................................10, 18, 19

*Heghmann v. Harris*, No. 1:22-CV-627-LY, 2022 WL 22837526 (W.D. Tex. Nov. 7, 2022).................20

*In re Chapman*, 628 B.R. 512 (Bankr. S.D. Tex. 2021) .................................................................16

*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 623 F. Supp. 2d, 798 (S.D. Tex. 2009)........................................................................................................................6

*In re Montgomery*, 983 F.2d 1389 (6th Cir. 1993) ......................................................................17

*In re Reagor-Dykes Motors, LP*, Case No. 18-50214-RLJ-11, Adversary No. 20-05039, 2021 WL 1219537 (Bankr. N.D. Tex. March 30, 2021) ..................................................*passim*

*In re Rollaguard Sec., LLC*, 591 B.R. 895 (Bankr. S.D. Fla. 2018) ...............................................9

*In re Silver State Holdings, Assignee—7901 Boulevard 26 LLC*, Case No. 19-41579-MXM, Adversary No. 19-4043-MXM, 2020 WL 7414434 146 (Bankr. N.D. Tex. Dec. 17, 2020)........................................................................................................................16

*In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796 (Bankr. N.D. Tex. Aug. 14, 2024)...........................................................................................21

*Janvey v. Alguire*, 846 F. Supp. 2d 662 (N.D. Tex. 2011) ...........................................................13

*Kinnie Ma Indiv. Ret. Acct. v. Ascendant Capital, LLC*, No. 1:19-CV-1050-LY, 2021 WL 11963051 (W.D. Tex. Aug. 25, 2021)........................................................................9

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942) ....................................3

*Lewis v. Davis*, 199 S.W.2d 146 (Tex. 1947) ............................................................................21

*Matter of Life Partners Holdings, Inc.*, 926 F.3d 103 (5th Cir. 2019) ...........................................13

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634 (5th Cir. 2007) ..................................................3

*Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988 (11th Cir. 2014) ......................................9

*Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014) ...............................................................................4

*Rogers v. McDorman*, 521 F.3d 381 (5th Cir. 2008).....................................................................22

*Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795 (Tex. App.—San Antonio 2020, pet. denied)........................................................................................................................6

*Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856 (Tex. App.—El Paso 2021, no pet)..................9

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) ......................................22

*VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633 (N.D. Tex. 2020).................................2

*Warfield v. Byron*, 436 F.3d 551 (5th Cir. 2006) ........................................................................13

*Welch v. Regions Bank (In re Mongelluzzi)*, 591 B.R. 480 (Bankr. M.D. Fla. 2018).....................17

*Willow Tree Consulting Grp., LLC, Trustee of TH Liquidating Trust v. Perkins Coie LLP*, No. 05-23-00264-CV, 2024 WL 575263 (Tex. App.—Dallas Feb. 13, 2024, pet. denied)........................................................................................................................6

*Wilson v. Pauling*, 457 F. Supp. 3d 965 (D. Colo. 2020).............................................................2

## Statutes

Tex. Bus. & Com. Code § 24.002(7) ...........................................................................................16

Tex. Bus. & Com. Code § 24.005(a)(2)................................................................................. 16, 17

Tex. Bus. & Com. Code § 24.006(b) .................................................................................... 16, 17

## Rules

Fed. R. Civ. P. 10(c).........................................................................................................................2

Kent Ries, Chapter 7 Trustee of the bankruptcy estates of McClain Feed Yard, Inc. ("**MFY**") (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. ("**7M**") (Case No. 23-20086-swe) (the "**Trustee**"), objects to Mechanics Bank's ("**Mechanics**") *Motion to Dismiss Trustee's Second Amended Adversary Complaint* (ECF No. 66) and *Brief in Support* (ECF No. 67) (collectively, the "**Motion**").  The Trustee asks the Court to deny the Motion and allow the Trustee to proceed to discovery for the below reasons.

## INTRODUCTION

1.      Mechanics was part of co-defendant Rabo AgriFinance, LLC ("**Rabo**") when the Debtors started banking at Mechanics. *See* Adversary No. 25-02005, ECF No, 48 ("Compl.") ¶¶ 12, 47.  Later, Mechanics spun off from Rabo and became the Debtors' main depository bank.  Compl. ¶ 46, 92.  Mechanics used that position to enable Brian McClain's check kiting-fueled Ponzi scheme. Compl. ¶¶ 38–46, 84–91. Instead of ending the Ponzi scheme, Mechanics colluded with Rabo about overdrafts in Debtors' accounts and paid insufficient funds ("NSF") checks at Rabo's behest. Compl. ¶¶ 30, 39–40, 84–91, 96, 126, 148, 154–55.

2.      Worse, for years, Mechanics: (a) sat idle at Rabo's behest while Mechanics observed McClain process more than $2 billion of seemingly purposeless and highly suspicious intercompany transfers through the Debtors' Mechanics accounts (Compl. ¶¶ 34, 39–40, 42–46, 56, 77, 86, 88); (b) honored NSF checks and granted discretionary provisional account credits while an obvious check kite was afoot in Debtor accounts (Compl. ¶¶ 30, 39–45, 80, 126, 154); (c) participated in Rabo's pet project by carrying multimillion-dollar overdrafts in the Debtors' accounts as if nothing was amiss (Compl. ¶¶ 30, 39–45, 126); and (d) allowed Debtors to dig themselves into a massive debt hole as a cash-poor business that was oddly making a huge amount of quick, guaranteed cash profits that were too good to be true (Compl. ¶¶ 46, 86).

3.      Now that the Trustee is holding Mechanics accountable for its misconduct, Mechanics wants the Court to absolve it of all wrongdoing by dismissing the Trustee's claims against Mechanics. In doing so, Mechanics asks the Court to subscribe to a fiction where Mechanics was just an innocent

bank that offered normal depository services to Debtors.  Mot. ¶¶ 10, 19, 20, 31 (claiming Mechanics "did nothing more than act as a depository institution").  Through that fiction, Mechanics claims to have seen, known, said, and done nothing.  So, reasons Mechanics, it is liable for nothing.  Wrong. The Trustee has alleged legally cognizable and factually plausible claims against Mechanics for its perpetuation of McClain's check kiting-fueled Ponzi scheme.  Dismissal is also unwarranted because the Trustee is entitled to discovery from Mechanics.

### ARGUMENT AND AUTHORITIES

4.      The arguments in Mechanics' Motion are not a model of clarity.  As best as the Trustee can tell, Mechanics seeks dismissal because, in its view: (a) the Trustee did not plead adequate facts to state plausible claims against Mechanics (Mot. ¶¶ 14–36 (common-law tort claims), 38–77 (federal and state fraudulent and preferential transfer claims)); and (b) the Trustee's claims against Mechanics are barred by the *in pari delicto* affirmative defense (Mot. ¶ 37).  Those points must be rejected as factually and legally unpersuasive on the following grounds.

**A.      Mechanics cannot properly incorporate and rely on the arguments advanced by its co-defendants in moving to dismiss.**

5.      At the outset, Mechanics attempts to drastically expand the scope of its Motion by incorporating the arguments made by co-defendants Community Financial Services Bank ("**CFSB**"), HTLF Bank ("**HTLF**"), and Rabo.  *See* Mot. ¶ 2.

6.      But courts disfavor such incorporation of other motions to dismiss because it allows defendants to avoid their fulsome briefing obligations in moving to dismiss.  *E.g.*, *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 649 (N.D. Tex. 2020) (rejecting a one-sentence incorporation of another party's motion to dismiss); *see also Wilson v. Pauling*, 457 F. Supp. 3d 965, 978 n.2 (D. Colo. 2020) ("Fed. R. Civ. P. 10(c) provides only that a statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  No authority extends Rule 10(c) to incorporation of a party's prior motion into a later motion, or the incorporation of another party's motion into one's own motion." (citation omitted)).

7.     Even assuming Mechanics' incorporation of its co-defendants' motions to dismiss is proper, the Trustee equally incorporates by reference his responses to those motions, which explain why no claim should be dismissed. Because the motions to dismiss filed by CFSB, HTLF, and Rabo are unpersuasive and must be denied, the same fate must befall Mechanics' reliance on those motions in urging dismissal of the Trustee's meritorious claims.

**B.     The Trustee has pleaded legally cognizable and factually plausible claims against Mechanics, so dismissal is legally unavailable.**

8.     As pleaded, the Trustee's live complaint asserts three traditional common-law tort claims against Mechanics: (a) knowing participation in breach of fiduciary duties; (b) civil conspiracy; and (c) professional negligence. The Trustee's live complaint also lodges federal and state fraudulent transfer claims against Mechanics. Because those claims are legally cognizable and factually plausible, the Court should allow the Trustee to pass the motion to dismiss stage and obtain fact discovery from Mechanics Bank about its liability. Mechanics' quibbling with the content of the Trustee's factual allegations only reinforces the truism that no factual allegation is specific enough to satisfy a defendant who files a motion to dismiss. *E.g.*, Mot. ¶¶ 14–20.

**1)     Mechanics cannot evade the Trustee's plausible knowing participation claim.**

9.     Mechanics begins the crux of its "insufficient factual allegations" argument by claiming failure properly to plead a knowing participation in breach of fiduciary duty claim. *See* Mot. ¶¶ 21–24. That point is belied by the Trustee's live complaint.

10.     "Under Texas law, 'where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (quoting *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942)). "To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Id.*

11.     As set out below, the Trustee's live complaint alleged facts sufficient to support each element of his knowing participation in breach of fiduciary duty claim against Mechanics—and labels those factual allegations by reference to the corresponding claim element.  Dismissal is unwarranted in light of the Trustee's careful and thorough pleadings.

12.     **The existence of a fiduciary relationship.**  McClain indisputably was a director, officer, and employee of the Debtors, so McClain owed fiduciary duties of loyalty, care, and obedience to Debtors.  *See* Compl. ¶¶ 120–21 (citing *Ritchie v. Rupe*, 443 S.W.3d 856, 858 (Tex. 2014) ("Directors, or those acting as directors, owe a fiduciary duty to the corporation in their directorial actions, and this duty includes the dedication of their uncorrupted business judgment for the sole benefit of the corporation."); *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 569–70 (N.D. Tex. 2024) (explaining that the "fiduciary status" of corporate directors and officers "gives rise to three broad duties; the duty of due care, loyalty, and obedience," and "employees owe a fiduciary duty to their employer to act primarily for their employer's benefit" (cleaned up)).

13.     **Knowledge of the fiduciary relationship.**  Mechanics unquestionably knew about McClain's fiduciary relationship with the Debtors because Mechanics dealt directly with McClain in his capacity as a director, officer, and employee of the Debtors.  Compl. ¶ 122; *see* Compl. ¶¶ 46, 77, 84, 96, 104, 112, 126, 137, 147, 154, 163.  For example, McClain housed the Debtors' main depository accounts at Mechanics.  Compl. ¶¶ 12–13, 84, 96, 111.

14.     **Mechanics' awareness of its participation in McClain's breach of his fiduciary relationship with Debtors.**  The live complaint is replete with allegations that Mechanics was aware of its participation in McClain's breach of his fiduciary duties to Debtors.  In particular, the Trustee alleges Mechanics' COO admitted to the Trustee that: "Mechanics . . . knew it was in the middle of a check kiting operation."  Compl. ¶¶ 85–87, 104.  Worse, Mechanics actively facilitated McClain's check kiting-fueled Ponzi scheme by: (a) using its control over Debtors' accounts to make on-the-spot payments to investors who presented claims for payment from McClain; (b) papering over massive and pervasive overdrafts in Debtors' accounts at Mechanics by consulting and coordinating with Rabo to obtain repayment; (c) loaning Debtors any amount necessary to keep money flowing through

McClain's Ponzi scheme by forgiving overdrafts; (d) allowing McClain to move hundreds of millions of dollars through Debtors' accounts at Mechanics Bank on a monthly basis through highly suspicious intercompany transfers; and (e) deliberately ignoring massive red flags generated by Mechanics' automated internal check kiting reports designed to detect Ponzi-like fraud. *See* Compl. ¶¶ 42–46, 77, 91, 100, 104, 126.

15.    Clearly, the Trustee's factual allegations are more than sufficient to alert Mechanics to the basis for its liability in connection with the Trustee's knowing participation in breach of fiduciary duty claim against Mechanics. The Court should reject Mechanics' efforts to escape accountability for its misconduct through dismissal of a meritorious claim.

### 2)    The Trustee has pleaded a viable civil conspiracy claim against Mechanics.

16.    Mechanics initially attacks the Trustee's civil conspiracy claim through a narrative that the Trustee failed to produce "**evidence**" of a check-kiting or Ponzi scheme and, even assuming a check-kiting scheme existed, Mechanics is an innocent "**victim**." Mot. ¶ 31. Mechanics is wrong on both counts. First, any discussion about "evidence" is misplaced at the motion to dismiss stage—during which the sole focus is the allegations in the complaint. Second, the Trustee's live complaint clearly explains why Mechanics cannot claim to be a "victim" of McClain's Ponzi scheme. "When Debtors' accounts would go into overdraft, Mechanics consulted and coordinated with Rabo to obtain repayment, often through Rabo's further extensions of credit." Compl. ¶¶ 126, 154–55, 164. And, despite Mechanics' suggestions otherwise, the Trustee's live complaint sets out, in painstaking detail, how McClain operated his check kiting-fueled Ponzi scheme with Mechanics' help. *See, e.g.,* Compl. ¶¶ 19–35, 84–87. Those factual allegations offer the "requisite specificity" for testing by Mechanics during discovery and trial on the merits. *Cf.* Mot. ¶ 31. No matter how hard Mechanics tries, it cannot wish away its liability to the Debtors' bankruptcy estate by promoting a counterfactual theory that Mechanics is merely an "innocent depository bank."

17.    Wish-casting aside, Mechanics complains that the Trustee failed to plead an underlying tort capable of supporting a civil conspiracy claim. Mot. ¶¶ 33–34. Mechanics contemporaneously

suggests the Trustee's civil conspiracy claim is based on an insufficiently pleaded fraud claim. Mot. ¶¶ 33–34. Mechanics is wrong. As set out earlier, the Trustee pleaded a legally cognizable and factually plausible knowing participation in breach of fiduciary duty claim against Mechanics and co-defendants CFSB, HTLF, and Rabo. That knowing participation claim supplies the underlying tort necessary for the Trustee's civil conspiracy claim. *E.g.*, *Willow Tree Consulting Grp., LLC, Trustee of TH Liquidating Trust v. Perkins Coie LLP*, No. 05-23-00264-CV, 2024 WL 575263, at *6 (Tex. App.—Dallas Feb. 13, 2024, pet. denied) (explaining that knowing participation in breach of a fiduciary duty can serve as the underlying tort for a civil conspiracy claim); *see also Caliber Home Loans, Inc. v. Cove*, Civil Action No. 3:22-CV-02298-M, 2025 WL 71983, at *17 n.23 (N.D. Tex. Jan. 10, 2025) (same); *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 811–12 (Tex. App.—San Antonio 2020, pet. denied) (same). Mechanics' "no-underlying-tort" argument therefore must fail.

18.     Mechanics concludes its challenge to the Trustee's civil conspiracy claim by insisting the Trustee did not plead the requisite meeting of the minds. Mot. ¶¶ 32, 34–36. That reasoning by Mechanics misapplies Texas civil conspiracy law.

19.     Crucially, the agreement or meeting of the minds necessary for civil conspiracy liability "need not be formal; rather, the understanding may be tacit; and it is not essential that each conspirator have knowledge of the details of the conspiracy; inferences of concerted action may be drawn from participation in the transactions." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 623 F. Supp. 2d, 798, 808–09 (S.D. Tex. 2009). And "it is not necessary for each conspirator to have entered into the unlawful agreement at its inception." *Id.*

20.     Texas law further states that "the fact that a conspirator is not present at, or does not participate in, all of the conspiratorial activities does not, by itself, exonerate him." *Id.* "A changing cast of characters does nothing to lessen the fact of one conspiracy. Once the existence of a common scheme of conspiracy is shown, slight evidence is all that is required to connect a particular defendant with the conspiracy" that is at issue in the litigation. *Id.*

21.     Consistent with that law, the Trustee alleged eleven separate overt acts by Mechanics and its co-defendants that, taken together, support an inference that Mechanics and its co-defendants

had the requisite conspiratorial meeting of the minds. And, contrary to Mechanics' grievance about group pleading, the Trustee specifically alleged which co-defendant engaged in each overt act from which a meeting of the minds is inferred. *See* Compl. ¶¶ 153–54:

- ***First,*** McClain housed all of Debtors' bank accounts at CFSB and Mechanics and used Rabo as a lending facility for Debtors' operations.

- ***Second,*** Rabo lent Debtors $70 million to facilitate "growth" of McClain's Ponzi scheme, including, in part, to pay off Debtors' loans from Mechanics and its co-defendants, including CFSB.

- ***Third,*** despite repeated and extended overdrafts in the millions of dollars, CFSB, HTLF, and Mechanics continued to honor the Debtors' insufficient funds ("NSF") checks and transactions, both as payor and payee, when their ordinary policies and procedures counseled otherwise.

- ***Fourth,*** Rabo, via its credit facilities, and CFSB and Mechanics, via automatic fulfillment of NSF of checks despite pervasive overdrafts, enabled the Ponzi scheme by lending Debtors money to cover overdrafts on Debtors' accounts at CFSB and Mechanics. Rabo insured CFSB and Mechanics' loans against Debtor overdrafts by lending Debtors the money they needed to cover some CFSB and Mechanics overdrafts (Compl. ¶¶ 86, 126).

- ***Fifth,*** CFSB and Mechanics readily accepted deposits for new Partnership Agreements when they knew such funds were the new investments required to prop up the Ponzi scheme.

- ***Sixth,*** HTLF controlled pre-signed blank checks drawn on Debtors' accounts at CFSB and Mechanics, which HTLF would complete and deposit without proper endorsement on Debtors' behalf (instead of demanding, as a prudent bank would, that Debtors provide completed checks or wire the funds).

- ***Seventh,*** HTLF, through Debtors' accounts at CFSB and Mechanics, created float for the Debtors by immediately crediting the corresponding customer's

account for a check deposited by HTLF, then returning the funds to Debtors through outgoing wire transfers. Many examples of those circular transfers are found in CFSB and Mechanics' records of the Debtors' accounts.

- *Eighth,* in the days and weeks before the Petition Date, Rabo and Mechanics initiated transfers from the Debtors' deposits to CFSB to zero out Debtors' accounts at CFSB.

- *Ninth,* mere days before Rabo forced McClain out of business and installed its hand-picked replacement atop the Debtors, Mechanics signed Deposit Account Control Agreements that gave Rabo full control over Debtors' funds and outflows from Debtors' accounts at Mechanics.

- *Tenth,* Rabo extracted purported releases and waivers from the Debtors in amended forbearance agreements signed mere days before the Petition Date.

- *Eleventh,* McClain, at Rabo's direction, hired an external CPA firm to prepare quarterly and annual consolidated financials to give Debtors' business a veneer of legitimacy. But the preamble to each financial statement reflected material deviations from generally accepted accounting principles ("**GAAP**") and neither CFSB nor its co-defendants scrutinized those financials, as would be expected of a competent depository bank.

22.　　The requisite conspiratorial meeting of the minds can be further inferred from the Trustee's allegation about the vanishing small possibility that the overt acts undertaken by Mechanics and its co-defendants were mere coincidence. Compl. ¶ 153. The likelier explanation is that four sophisticated commercial banks saw an opportunity to profit from McClain's misconduct and tacitly or overtly cooperated to achieve that objective. Compl. ¶153.

23.　　In sum, dismissal is not warranted because the Trustee's live complaint contains factual content sufficient to allege a plausible meeting of the minds by Mechanics and its co-defendants.

**3)    Mechanics cannot justify dismissal of the professional negligence claim.**

24.    Apart from civil conspiracy, Mechanics urges dismissal of the Trustee's "particularly specious" professional negligence claim. Mot. ¶ 25. Unfortunately for Mechanics, the Truste's factual allegations about professional negligence are particularized to the point where the Trustee indisputably is entitled to survive dismissal and proceed to discovery.

25.    Negligence "consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately caused by the breach of that duty." *Kinnie Ma Indiv. Ret. Acct. v. Ascendant Capital, LLC*, No. 1:19-CV-1050-LY, 2021 WL 11963051, at *5 (W.D. Tex. Aug. 25, 2021). And the Trustee properly alleged all three elements of his professional negligence claim against Mechanics as follows.

26.    **Existence of a legal duty.** As the Debtors' depository bank, *see* Compl. ¶¶ 12–13, 73, 84, 96, 111, 162, Mechanics owed a duty of ordinary care to the Debtors at all relevant times. "The Uniform Commercial Code (the UCC) . . . regulates a bank's relationship with its Texas customers, and imposes a duty of ordinary care on a bank with regard to various situations, such as" bank deposits and collections, fund transfers, and negotiable instruments. *Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856, 873 n.5 (Tex. App.—El Paso 2021, no pet). Mechanics' citations to extra-jurisdictional cases about whether Florida law imposes on banks a duty to investigate red flags are entirely irrelevant because Florida law has zero application here. *See* Mot. ¶ 28 (citing *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) (analyzing claims under Florida law); *In re Rollaguard Sec., LLC*, 591 B.R. 895, 925 (Bankr. S.D. Fla. 2018) (same)).

27.    **Breach by Mechanics.** The Trustee's live complaint alleges Mechanics breached its duty of ordinary care to Debtors by: (a) "engaging in cash and check kiting activity where CFSB and Mechanics . . . used their control over Debtors' accounts to make on-the-spot payments to investors demanding payment under fraudulent Partnership Agreements" with McClain (*see, e.g.,* Compl. ¶ 163); (b) "allowing hundreds of millions of dollars to be transferred between the Debtors' bank accounts at CFSB and Mechanics Bank on a monthly basis with no apparent, legitimate purpose—a basic red flag for fraudulent activity" (Compl. ¶ 166); (c) tolerating "massive and pervasive overdrafts on Debtors'

bank accounts at CFSB and Mechanics . . . for the duration of McClain's long-running Ponzi scheme"
(Compl. ¶ 166); (d) consulting and coordinating with Rabo to cover overdrafts on Debtors' accounts
at Mechanics, thereby making Mechanics whole for the missing funds (Compl. ¶ 126); and (e) blithely
ignoring countless automated internal check kiting and suspicious activity reports alerting Mechanics
to McClain's fraud on a daily basis (Compl. ¶¶ 77, 91, 100, 104).  Mechanics cannot seriously quibble
with those specific, particularized allegations by the Trustee.  Because the Trustee's currently pleaded
allegations of breach are not dependent on internal policies, the Court has no reason to even entertain
Mechanics' argument that no duty exists in relation to internal bank policies.  *See* Mot. ¶ 27.  Dismissal
is legally unavailable on that plainly irrelevant ground.

28.     Perhaps sensing the futility of its attempt to parse the Trustee's factual allegations of
breach, Mechanics tries to litigate the fact-intensive question of whether it actually controlled Debtors'
depository accounts.  Mot. ¶¶ 26, 47.  Such factual analysis is improper at the motion to dismiss stage,
where the Court must accept as true the Trustee's well-pleaded allegation that Mechanics controlled
depository accounts owned by the Debtors.  *See Di Piazza v. Weather Grp. Television, LLC*, Civil Action
No. 5:19-CV-060-C, 2019 WL 8107920, at *1 (N.D. Tex. June 3, 2019) (emphasizing that, at the
motion to dismiss stage, "[t]he court must accept all factual allegations in a complaint as true and draw
all reasonable inferences in the plaintiff's favor").

29.     **Proximate causation and damages.**  Mechanics makes no argument that the Trustee
did not sufficiently allege proximate causation or damages.  Nor could Mechanics advance any such
contention.  The Trustee specifically alleged that, by "continuing to extend credit in the form of both
dollars and a fictitious float, [Mechanics] directly and proximately damaged Debtors by enabling them
to incur nearly $200 million in debt . . . .  At the outset, [Mechanics] should have foreseen that [its]
unlawful actions would cause Debtors and their other creditors to lose untold sums of money, with
losses increasing with each passing day."  Compl. ¶ 167.

30.     Despite Mechanics' spurious suggestions to the contrary, the Trustee has alleged a
legally cognizable and factually plausible professional negligence claim against Mechanics.  The Court
should thus allow the Trustee to proceed with that claim.

**4)    The Trustee has pleaded actionable fraudulent transfer and preference claims.**

31.    Setting aside the Trustee's traditional common-law tort claims, Mechanics also seeks dismissal of the Trustee's federal and state fraudulent transfer and preference claims. Mot. ¶¶ 38–77. Again, Mechanics' briefing is difficult to follow—especially its discussion of the fraudulent transfer and preference claims. Mechanics seemingly makes three discrete arguments for dismissal of the instant claims. *First,* Mechanics makes a commingled argument that the Trustee's federal fraudulent transfer and preference claims are not legally viable—and the Trustee did not plead adequate facts for each element of those claims. Mot. ¶¶ 38–49. *Second,* Mechanics insists that the Trustee failed properly to supply factual allegations on each element of his Texas Uniform Fraudulent Transfer ("**TUFTA**") claims. Mot. ¶¶ 50–64. *Third,* Mechanics makes two fact-intensive arguments that Mechanics is not liable on the Trustee's fraudulent transfer and preference claims: (a) Mechanics is not a "transferee" because it did not control the Debtors' accounts; and (b) Mechanics never loaned Debtors money because ledger balance overdrafts are not "true" overdrafts. Mot. ¶¶ 65–77. All three arguments must be discarded for the below reasons.

a.    **The Trustee can proceed with his cognizable Bankruptcy Code claims.**

32.    Mechanics begins its attack on the Trustee's federal fraudulent transfer and preference claims by insisting the Trustee did not plead certain particulars of the transfers at issue: the identity of the transferor and transferee, what was transferred and received, and the financial condition of the Debtors at the time of each transaction at issue. *See* Mot. ¶¶ 39–40, 46–47. The impetus of Mechanics' reasoning is that it cannot be held liable for fraudulent transfer or preferential payments because it is an innocent depository bank. *E.g.,* Mot. ¶ 47. Not so.

33.    The fact that Mechanics focuses on transfer particulars demonstrates a fundamental misunderstanding of the facts underlying the Trustee's fraudulent transfer and preference claims. Put simply, the Trustee's position, as alleged in his live complaint, is that the Debtors did not actually have enough money to pay McClain's investors, necessarily making the Debtors insolvent at all times. *See* Compl. ¶¶ 41, 53, 215. So the Debtors constantly moved hundreds of millions of dollars of their own money between their CFSB and Mechanics accounts to manufacture the float (*i.e.,* phantom money)

needed to pay investors.  Compl. ¶¶ 39–45, 212, 220.  That reliance on float left the Debtors' CFSB and Mechanics accounts perpetually overdrawn by millions of dollars.  Compl. ¶¶ 30, 39–45, 77, 86–87, 97, 106–07, 126, 154, 166, 212, 220.  Those overdrafts on Debtors' accounts at Mechanics were often covered by huge intercompany transfers of Debtors' funds from CFSB or subsequent direct deposits by Debtors.  Compl. ¶¶ 39–45, 86–87, 126, 154, 166, 212, 220.  Upon receipt, Mechanics applied those Debtor funds to Debtors' overdraft balances at Mechanics, thus satisfying antecedent debts owed by Debtors to Mechanics (the overdrafts functioned as loans by Mechanics to Debtors).  So the transfer particulars at issue are clear from the Trustee's live complaint:  although the Debtors were insolvent at all times, they transferred Debtor funds to Mechanics to pay off or satisfy debts, *i.e.,* Mechanics' outstanding overdraft "loans" to Debtors.

34.      Besides, any "deposits into a debtor's bank account that are used by the bank to cover overdrafts are transfers that may be avoided as" fraudulent transfers and preferential payments under the Bankruptcy Code.  *Reagor Auto Mall Ltd. v. FirstCapital Bank of Tex., N.A. (In re Reagor-Dykes Motors, LP)*, Case No. 18-50214-RLJ-11, Adversary No. 20-05002, 2020 WL 4939180, at *4 (Bankr. N.D. Tex. Aug. 24, 2020) (citation omitted).  That is precisely what the Trustee alleges happened here.  Directly applicable caselaw contradicts and negates Mechanics' overarching argument that it cannot be held liable for fraudulent transfers or preferential payments because it was an "innocent" depository bank that merely housed the Debtors' depository accounts.

35.      Aware its arguments about the crux of the Trustee's fraudulent transfer and preference claims are futile, Mechanics changes tack and urges that the Trustee must—but did not—plead the particulars of *every* fraudulent or preferential transfer at issue.  *E.g.,* Mot. ¶¶ 39, 40, 44, 46, 49.  But the Trustee is not subject to any such requirement.  *See In re Reagor-Dykes Motors, LP*, Case No. 18-50214-RLJ-11, Adversary No. 20-05039, 2021 WL 1219537, at *9 (Bankr. N.D. Tex. March 30, 2021) ("The Fifth Circuit has stated that for Rule 8, a plaintiff does not need to explicitly include every element of the plaintiff's prima facie case; the elements of the cause of action can be present by implication. While application of alleged facts to each element in each cause of action would benefit the defendant, such precise application is not necessarily required under the law." (collecting cases)).

36.     In any case, Mechanics can begin and end its search for information about specific fraudulent and preferential transfers in the Trustee's live complaint.  *E.g.*, Compl. ¶¶ 45, 213 (citing and incorporating Exhibit D), 219 (citing and incorporating Exhibit F).  Paragraphs 45 and 219 of the Trustee's live complaint, in conjunction with Exhibit F to that complaint, detail specific intercompany and other transfers that subject Mechanics to fraudulent transfer liability.  Paragraph 213 and Exhibit D of the Trustee's live complaint similarly itemize transfers made to Mechanics during the ninety-day preference period.  Read together, those parts of the Trustee's live complaint plainly supply Mechanics with sufficient detail about specific transfers on which the Trustee may rely in prosecuting fraudulent transfer—and preference—claims against Mechanics.

37.     Moving on from specific transfers, Mechanics' last element-centric dismissal of the Trustee's federal fraudulent transfer and preference claims involves Mechanics taking the Trustee to task for a "paucity" of factual allegations that Mechanics did not give Debtors reasonably equivalent value for the transfers now at issue.  *See* Mot. ¶¶ 42–44.

38.     The problem for Mechanics is that no such allegations are required in this case because it involves a massive check kiting-fueled Ponzi or Ponzi-like scheme, which is exhaustively detailed in the Trustee's live complaint.  *E.g.,* Compl. ¶¶ 19–115.  Settled Fifth Circuit law explains that, although allegations about reasonably equivalent value can be part of a fraudulent transfer and preference claim, "such allegations are not required here because the check-kiting scheme was a 'fraudulent Ponzi-like scheme' and any transfer in furtherance of such scheme 'does not confer reasonably equivalent value as a matter of law.'"  *Reagor-Dykes*, 2021 WL 1219537, at *9 (quoting *Matter of Life Partners Holdings, Inc.,* 926 F.3d 103, 121 (5th Cir. 2019)).  Equally, "in cases involving a Ponzi or Ponzi-like scheme, a plaintiff 'may establish fraudulent intent by showing that the . . . enterprise operated as a Ponzi scheme' without proving which of the entities involved in the scheme was the transferor." *Life Partners*, 926 F.3d at 119 (quoting *Janvey v. Alguire*, 846 F. Supp. 2d 662, 672 (N.D. Tex. 2011) and citing *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006)).  Mechanics' arguments about reasonably equivalent value do not justify dismissal of Trustee claims because the presence of a Ponzi or Ponzi-like scheme makes reasonably equivalent value essentially irrelevant.  *Id.*

39.     In sum, the Trustee has, beyond peradventure, alleged facts sufficient to support each element of his fraudulent transfer and preference claims.  *First,* the Trustee alleged that Mechanics received transfers of funds belonging to the Debtors to cover persistent million-dollar overdrafts in the Debtors' accounts at Mechanics.  *See* Compl. ¶¶ 39–45, 86–87, 126, 154, 166, 212, 220.  *Second,* many of those overdraft-covering transfers occurred within two years (fraudulent transfer) or ninety days (preferential payments) of Debtors' Petition Date.  *See* Compl. ¶¶ 45, 213 & Ex. D, 219 & Ex. F.  *Third,* this case involved a massive check kiting-fueled Ponzi scheme that made the Debtors insolvent at all times.  *See* Compl. ¶¶ 41, 53, 215.  *Fourth,* the existence of that Ponzi scheme renders irrelevant reasonably equivalent value.  The Trustee is therefore entitled to proceed against Mechanics.  *Cf.* Mot. ¶ 42 (reciting elements of fraudulent transfer claims).

### b.     The Trustee is entitled to prosecute his legally viable TUFTA claims.

40.     After debating the Trustee's Bankruptcy Code claims, Mechanics turns its attention to the Trustee's TUFTA claims.  *See* Mot. ¶¶ 50–64.  That section of Mechanics' brief largely recites legal standards and elements of TUFTA claims with no corresponding argument.  Mechanics cannot secure dismissal simply by parroting the pleading standards set by Federal Rules of Civil Procedure 8 and 9 absent meaningful analysis to guide the Court.  On the merits, Mechanics' discernible TUFTA-centric arguments fare no better and must be denied.

### i.     Adequate transfer particulars are alleged in the live complaint.

41.     Mechanics intersperses its TUFTA arguments with recycled versions of its argument that the Trustee's Bankruptcy Code claims fail because the Trustee did not sufficiently plead certain transfer particulars for every single transfer at issue, *i.e.,* the identity of the transferor and transferee.  *Compare* Mot. ¶¶ 39–40, 44, 46, 48 (making argument as against Bankruptcy Code claims) *with* Mot. ¶¶ 49, 52 & n.23, 56–57, 59, 63 (offering same argument on TUFTA claims).  Those recycled arguments must be rejected on the grounds discussed in Paragraphs 32–36 of this Objection.  The Trustee's live complaint adequately alleges the transfer particulars desired by Mechanics and identifies many specific disputed Debtor transactions for Mechanics' benefit.

ii.      **TUFTA actual fraudulent transfer is sufficiently alleged here.**

42.      Shifting gears from transfer particulars, Mechanics requests dismissal of the Trustee's
TUFTA actual fraudulent transfer claim under the premise that the Trustee did not adequately allege
fraudulent intent harbored by Mechanics.  Mot. ¶ 52.

43.      But Mechanics misunderstands the nature of the Trustee's TUFTA actual fraudulent
transfer claim and the factual content required to survive a Rule 12(b)(6) motion.  It bears repeating
that the Trustee's TUFTA actual fraudulent transfer claim stems from Mechanics' knowing facilitation
of McClain's multi-billion-dollar check kiting-fueled Ponzi scheme.  Compl. ¶¶ 19–115; *see also* Compl.
¶¶ 84–87, 103–04 (detailing Mechanics' participation).  For TUFTA actual fraudulent transfer claims,
factual allegations of a check kiting and Ponzi scheme obviate the need for "allegations of the Debtors'
intent to hinder, delay, or defraud creditors."  *In re Reagor-Dykes Motors, LP*, 2021 WL 1219537, at *10.
That is because "such allegations are not required in this instance where the check-kiting [and Ponzi]
scheme allows the Court to infer fraudulent intent."  *Id.*  The Trustee's live complaint indisputably
offers adequate facts from which the Court can infer the fraudulent intent needed to support a TUFTA
actual fraudulent transfer claim against Mechanics.

iii.      **TUFTA constructive fraudulent transfer is plausibly pleaded.**

44.      Mechanics begins its TUFTA constructive fraudulent transfer argument by, once
again, claiming dismissal is required for lack of allegations that the Debtors did not receive reasonably
equivalent value from their overdraft-covering transfers to Mechanics.  *Compare* Mot. ¶¶ 42–43 *with*
Mot. ¶ 59.  Here, the Trustee reminds Mechanics that his TUFTA constructive fraudulent transfer
claim is the product of McClain's check kiting-fueled Ponzi scheme.  Compl. ¶¶ 19–115; *see also* Compl.
¶¶ 84–87, 103–04 (detailing Mechanics' participation).  To be sure, allegations about reasonably
equivalent value can be part of a TUFTA constructive fraudulent transfer claim.  But "such allegations
are not required here because the check-kiting scheme was a fraudulent Ponzi-like scheme and any
transfer in furtherance of such scheme does not confer reasonably equivalent value as a matter of
law."  *In re Reagor-Dykes*, 2021 WL 1219537, at *9 (internal citations omitted).

45.  After making a failed "reasonably equivalent value" argument targeted at the Trustee's constructive fraudulent transfer claims under both TUFTA Sections 24.005(a)(2)  and 24.006(b) , *see* Mot. ¶¶ 55–60, Mechanics focuses on the latter statute, *see* Mot. ¶¶ 61–64.  Upon zooming in on the Trustee's Section 24.006(b) claim, Mechanics urges dismissal because, in its view, the Trustee did not allege transfers to "insiders" in satisfaction of antecedent debts.  *See* Mot. ¶ 63.  But the Trustee's live complaint plausibly alleges both facts, preventing dismissal.

46.  **Insiders.**  As Mechanics notes, TUFTA prescribes a defined list of statutory "insiders" for Section 24.006(b) claims.  *See* Tex. Bus. & Com. Code § 24.002(7); *see also* Mot. ¶ 62.  But Mechanics elides the full definition of TUFTA insiders.  That defined term also includes "non-statutory insiders . . . born when a transferee has a 'sufficiently close' relationship with a debtor, which may be based on control or influence over the debtor, such that any dealings between the debtor and the transferee are not at arm's length."  *In re Silver State Holdings, Assignee—7901 Boulevard 26 LLC*, Case No. 19-41579-MXM, Adversary No. 19-4043-MXM, 2020 WL 7414434, at * 26 n. 146 (Bankr. N.D. Tex. Dec. 17, 2020) (quoting *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1011 (5th Cir. 1992)); *accord In re Chapman*, 628 B.R. 512, 528 (Bankr. S.D. Tex. 2021).

47.  The Trustee's live complaint is replete with well-pleaded factual allegations that the Debtors' relationship with Mechanics was so close that transactions between those parties were not conducted at arm's length.  Compl. ¶¶ 84–87, 103–04.  For starters, the Trustee alleged that Mechanics controlled the Debtors' bank accounts through a Deposit Account Control Agreement with Rabo, and other means.  *See* Compl. ¶¶ 73, 126, 154, 163.  The Trustee has also alleged that Mechanics used its "control over Debtors' accounts to make on-the-spot payments to investors demanding payment under fraudulent Partnership Agreements."  Compl. ¶ 163.  More importantly, the Trustee has alleged that Mechanics had so much control over Debtors' accounts that it "began withholding funds from its remittances to CFSB and HTLF as part of McClain's kiting scheme such that Mechanics housed $1.4 million of Debtors' funds when Debtors filed for bankruptcy.  Mechanics did not put that $1.4 million into Debtors' accounts."  Compl. ¶ 87.  Those facts yield a plausible inference that Mechanics qualifies as a non-statutory insider of all three Debtors.

48.     **Antecedent debts.**  As explained in Paragraph 33 of this Objection, the Debtors'

constant, pervasive multimillion-dollar overdrafts at their Mechanics accounts were antecedent debts

often covered by transfers from Debtors' accounts at CFSB or direct deposits by the Debtors.  Put

simply, those overdraft balances functioned as loans from Mechanics to Debtors that Debtors had to

pay back in full.  So all Debtor transfers from CFSB and direct deposits in satisfaction of overdrafts

at Mechanics paid off the Debtors' antecedent debts.  And federal "[c]ourts have held that deposits

into a debtor's bank account that are used by the bank to cover overdrafts are transfers" actionable

under applicable fraudulent transfer statutes like TUFTA.  *In re Reagor-Dykes*, 2020 WL 4939180, at *4

(citing, *inter alia*, *Welch v. Regions Bank (In re Mongelluzzi)*, 591 B.R. 480, 494 (Bankr. M.D. Fla. 2018) and

*In re Montgomery*, 983 F.2d 1389, 1394 (6th Cir. 1993)).

49.     Because no element of a TUFTA Section 24.006(b) claim is missing from the Trustee's

live complaint, that claim against Mechanics cannot now be dismissed.  The Trustee's TUFTA Section

24.005(a)(2) claim likewise must proceed to fact discovery.

### c.     Fact-intensive issues do not entitle Mechanics to dismissal of claims.

50.     Unsatisfied with the foregoing arguments against the Trustee's Bankruptcy Code and

TUFTA claims, Mechanics seeks dismissal on two highly fact-intensive grounds.  ***First***, Mechanics

claims it is not a "transferee" because it did not exercise dominion or control over Debtor accounts.

*See* Mot. ¶¶ 65–70.  ***Second***, Mechanics insists it did not loan Debtors money because ledger balance

overdrafts are not actionable transfers.  *See* Mot. ¶¶ 73–77.  The Trustee addresses those arguments,

both of which must be rejected outright, in turn below.

51.     **Transferee, dominion, and control.**  The essential premise of Mechanics' argument

about dominion, control, and transferee status is that it cannot be held liable for fraudulent transfer

because it is an innocent depository bank that was a mere conduit of funds.  *See* Mot. ¶¶ 67 (describing

depository banks), 69 (involving "mere conduit" theory).  The fundamental problem for Mechanics is

that its "mere-conduit argument is an affirmative defense that is not appropriately considered on a

motion to dismiss."  *In re Reagor-Dykes*, 2020 WL 4939180, at *4 (collecting cases).  At any rate, the

Trustee's live complaint explains that Mechanics acted as anything but an innocent depository bank when it made the conscious and affirmative decision to begin "withholding funds from its remittances to CFSB and HTLF as part of the McClain kiting scheme such that Mechanics housed $1.4 million of Debtors' funds when Debtors filed for bankruptcy. Mechanics did not put that $1.4 million into Debtors' accounts." Compl. ¶ 87. Finally, the question of whether Mechanics is a transferee under a "dominion and control" theory is a highly fact-specific inquiry that must be reserved for the ultimate fact-finder, not a court ruling on a motion to dismiss.

52. **Loans and ledger balance overdrafts.** Much like its co-defendant CFSB, Mechanics claims it faces no fraudulent transfer liability to the Trustee because the overdrafts in its accounts were not actually loans to the Debtors. *See* Mot. ¶¶ 71–74.

53. In so arguing, Mechanics quibbles with the Trustee's allegations of overdrafts on the Debtors' accounts at Mechanics under the theory that no true overdrafts occurred because all covering deposits purportedly were made at Mechanics before midnight on the next banking day after initial check presentment. Mot. ¶¶ 73–76. Here, Mechanics is attempting to litigate which of the overdrafts are—and are not—debt repayments based on the tracing of various funds through Debtor accounts. Mechanics is also suggesting, *again*, that, if the Trustee does not specifically describe all of the various daily transactions and negative balances (that span hundreds or thousands of pages of bank statements in Mechanics' possession), the Trustee has failed sufficiently to inform Mechanics about the basis of his federal and TUFTA fraudulent transfer claims.

54. But Paragraphs 211–13, 215, 220–21, and Exhibits D and F of the Trustee's complaint allege actionable overdrafts on Debtors' accounts at Mechanics. Aware that those allegations are more than sufficient to survive dismissal, Mechanics confuses the issues by disputing that those overdrafts constitute avoidable debt repayment—a matter for trial, not 12(b)(6) motions. For present purposes, the Court can reasonably infer that multi-day overdrafts exist among the $176.2 million in overdrafts alleged by the Trustee, which is sufficient to allow the Trustee to pass the motion to dismiss stage to discovery and merits determination. *See Di Piazza*, 2019 WL 8107920, at *1 ("The court must accept all factual allegations in a complaint as true and draw all reasonable inferences in the plaintiff's favor.

[] A claim is facially plausible when it asserts facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This determination is context-specific and requires the court to draw upon its own experience and common sense." (citations omitted)). Surely Mechanics must accept the logic of the Trustee's deduction that, among $176.2 million in overdrafts, there exist at least some multiple-day overdrafts. *Id.*

55. The strength of that deduction is reinforced by Exhibits D and F to the Trustee's live complaint, which reflect many instances where the Debtors' Mechanics accounts were overdrawn on consecutive days, *i.e.*: (1) March 13–16, 2018; (2) March 19–23, 2018; (3) March 26–30, 2018; (4) April 2–6, 2018; (5) April 9–13, 2018; (6) July 26–27, 2018; (7) November 1–2, 2018; (8) February 4–5, 2019; (9) February 13–14, 2019; (10) December 16–20, 2019; (11) December 23–25, 2019; (12) January 30–31, 2020; (13) April 13–14, 2020; (13) December 21–22, 2020; (14) December 24–25, 2020; (15) April 1–2, 2021; (16) September 8–9, 2021; (17) September 13–14, 2021; (18) September 23–24, 2021; (19) October 6–8, 2021; (20) November 24–25, 2021; (21) December 9–10, 2021; (22) December 15–16, 2021; (23) December 28–31, 2021; (24) January 13–14, 2022; (25) February 1–3, 2022; (26) March 1–2, 2022; (27) June 6–7, 2022; (28) June 23–24, 2022; (29) September 6–7, 2022; (30) October 19–20, 2022; (31) November 14–15, 2022; (32) November 21–22, 2022; (33) December 1–2, 2022; (34) March 2–3, 2023; (35) March 8–9, 2023; (36) March 21–23, 2023; and (37) April 10–14, 2023. Those thirty-seven specific instances of consecutive-day overdrafts on Debtors' accounts at Mechanics sufficiently allege multiple-day overdrafts that would incur interest—and are necessarily actionable as fraudulent transfers. *See In re Reagor-Dykes*, 2020 WL 4939180, at *4–*5 ("The complaint alleges that the Reagor-Dykes' bank accounts at First Capital had multi-day overdrafts that were being charged interest. This scenario, when viewed in the light most favorable to Reagor-Dykes, pleads a transfer as defined under the Bankruptcy Code."). And it is undisputed that "deposits into a debtor's bank account that are used by the bank to cover overdrafts are transfers that may be avoided" as fraudulent transfers or preferences under applicable federal and Texas law. Given the detail in the live complaint, Mechanics has no argument that the Trustee did not plead his fraudulent transfer claims with enough specificity to allow Mechanics to mount an effective defense.

56.     To escape the gravity of the Trustee's allegations, Mechanics is now trying to engage in a fact-intensive adjudication of whether the actionable overdrafts alleged by the Trustee constitute "true" overdrafts.  *See* Mot. ¶¶ 73–76.  That highly factual inquiry is inappropriate at the motion to dismiss stage because the existence of true overdrafts on the Debtors' accounts at Mechanics will be subject to different (and likely disputed) interpretations of evidence gleaned from voluminous banking records in Mechanics' possession (putting Mechanics on notice of the nature of the Trustee's claims), and expert testimony about Debtors' and Mechanics' banking practices.  Further development of the factual record is necessary to determine whether or not Mechanics has any fraudulent transfer liability.

57.     In conclusion, dismissal is unavailable here because the Court must accept as true the Trustee's as-pleaded allegations about overdrafts on the Debtors' Mechanics accounts.  Compl. ¶ 220 ("Exhibit F . . . details the relevant Debtor entity, account number, date, day of the week, and dollar amount of daily overdrafts of the Debtors' accounts with Mechanics.  Each overdraft constituted a loan to the Debtors that was subsequently repaid by future, additional deposits by the Debtors.  The overdrafts to Mechanics repaid by the Debtors totals $176,204,076.19."); *Heghmann v. Harris*, No. 1:22-CV-627-LY, 2022 WL 22837526, at *1 (W.D. Tex. Nov. 7, 2022) ("In deciding a 12(b)(6) motion, a court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." (collecting Fifth Circuit precedent about the motion to dismiss standard)).

58.     Because neither of Mechanics' fact-intensive arguments (transferee status based on dominion and control of Debtors' accounts; and the existence of true overdrafts on Debtors' accounts at Mechanics) are properly presented at the motion to dismiss stage, the Court should ignore those contentions and allow the Trustee to pursue fact discovery on his federal and state fraudulent transfer claims.  The fruits of that discovery will inform whether Mechanics faces fraudulent transfer liability to the Trustee—and help the parties value the damages Mechanics must pay to the Trustee to make Debtors' innocent creditors whole for their losses.

**C.      Mechanics' _in pari delicto_ argument for dismissal is both premature and unavailing.**

59.      Mechanics, like its co-defendants, seeks dismissal on _in pari delicto_ grounds.  Mot. ¶ 37.

But affirmative defenses—including _in pari delicto_—are generally not ripe for resolution at the motion

to dismiss stage.  _See, e.g., In re Reagor-Dykes_, 2020 WL 4939180, at *13 ("Like the mere-conduit defense,

_in pari delicto_ is an affirmative defense.  Although dismissal under Rule 12(b)(6) may be appropriate

based on a successful affirmative defense, that defense must appear on the face of the complaint.  In

the usual case, a court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense

because it rarely appears on the face of the complaint.  <u>Specifically, as defined in Texas courts, the</u>

<u>applicability of in pari delicto in any specific circumstance depends on the facts and</u>

<u>circumstances and considerations of public policy.  These facts cannot be decided on a</u>

<u>motion to dismiss</u>.  Here, _in pari delicto_ does not arise from the face of the complaint; it requires a

fact-intensive inquiry on its applicability." (emphasis added, cleaned up)); _accord Lewis v. Davis_, 199

S.W.2d 146, 151 (Tex. 1947); _In re Vantage Benefits Administrators, Inc._, No. 18-31351-SGJ-7, 2024 WL

3842796, at *21, *27 (Bankr. N.D. Tex. Aug. 14, 2024) (noting that _in pari delicto_ is so fact-heavy that

it cannot be decided on summary judgment).

60.      Moreover, in considering only undisputed facts at the summary judgment stage, the _In

re Vantage_ court found that even if the wrongdoer's acts were imputed to the debtor-company, the

defense would still not bar recovery because the Trustee "is an innocent party seeking recovery from"

defendants for the benefit of innocent creditors, and there was no evidence that the Trustee's recovery

would benefit the actual wrongdoer.  _Id._ at *28.  So barring the [t]rustee's tort claims . . . based on _in

pari delicto_ . . . would **not** outweigh the overall policy of not inflicting additional harm on the innocent

victims of the . . . scheme."  _Id._  The _In re Vantage_ court even went as far as to recommend granting

summary judgment in the trustee's favor on the _in pari delicto_ defense even though the trustee had not

moved for summary judgment on that defense.  _Id._  The analysis and conclusion should be no different

here, where the Trustee's recovery will in no way benefit McClain or his personal estate, and where

the _in pari delicto_ defense would further harm innocent creditors by narrowing the Trustee's avenues

for recovery and equitable distribution of estate assets.

61.     Because *in pari delicto* is governed by state law, *see Brickely for CryptoMetrics, Inc. Creditors'*
*Trust v. ScanTech Identification Beams Systems, LLC, et al.*, 566 B.R. 815, (W.D. Tex. 2017) ("The doctrine
of *in pari delicto* is an issue of substance governed by state law."), Mechanics' reliance on out-of-circuit
cases that apply non-Texas versions of the *in pari delicto* doctrine are irrelevant and do not displace the
Trustee's claims against Mechanics.  *See* Mot. ¶ 37.  Notably, the solitary Fifth Circuit case cited by
Mechanics, *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008), does not support Mechanics.  The
*Rogers* court explained, in relevant part, that the availability of the *in pari delicto* affirmative defense was
a fact question for the jury.  *Id.* at 391–95.  Mechanics has accordingly failed to identify any basis for
dismissal of Trustee claims on *in pari delicto* grounds.

**D.     To the extent repleading may be required, the Trustee is entitled to leave to replead.**

62.     Finally, Mechanics urges the Court to deny the Trustee leave to replead by dismissing
his claims against Mechanics with prejudice.  Mot. ¶ 77.

63.     But denial of leave to amend at such an early stage of the case is "rare" and warranted
only in cases of undue delay, bad faith or dilatory motive, undue prejudice, or futility.  *See Test Masters*
*Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 576 n.8 (5th Cir. 2005).  And Mechanics does not state with any
degree of specificity the "rare circumstance" it believes to exist in this case.  At best, Mechanics seems
to suggest undue prejudice because it would be forced to incur legal expenses to respond to a third
amended complaint by again moving to dismiss.  That alone cannot possibly be undue prejudice.  If
that were true, denial of leave to amend would be customary, not "rare."  Mechanics has accordingly
failed to identify a single legitimate reason to deny the Trustee leave to amend if the Court concludes
that the Trustee must replead his live complaint.  *See id.*

<u>C<small>ONCLUSION</small></u>

For the foregoing reasons, the Trustee respectfully requests that the Court:

- Deny Mechanics' Motion in its entirety, or grant the Trustee leave to amend
  his live complaint to address any deficiencies; and

- Grant all other relief to which the Trustee is justly entitled.

Respectfully submitted,

*/s/ Alan Dabdoub*
Alan Dabdoub
State Bar No. 24056836
adabdoub@lynnllp.com
Campbell Sode
State Nar No. 24134507
csode@lynnllp.com
Farsheed Fozouni
State Bar No. 24097705
ffozouni@lynnllp.com
Steven G. Gersten
State Bar No. 24087579
sgersten@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:      214-981-3800
Facsimile:      214-981-3839

*/s/ Hudson M. Jobe*
Hudson M. Jobe
Texas Bar No. 24041189
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
(214) 807-0563
hjobe@jobelawpllc.com

**SPECIAL COUNSEL TO THE TRUSTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 14, 2025, a true and correct copy of the foregoing was served via the Court's ECF system on all parties that have appeared and requested notice via the Court's ECF system.

*/s/ Alan Dabdoub*
Alan Dabdoub