| | |
|---|---|
| Aaron M. Kaufman (Texas Bar No. 24060067) <br> Amber M. Carson (Texas Bar No. 24075610) <br> **GRAY REED** <br> 1601 Elm Street, Suite 4600 <br> Dallas, TX 75201 <br> Telephone: (214) 954-4135 <br> Facsimile: (214) 953-1332 <br> Email: akaufman@grayreed.com <br> acarson@grayreed.com | Keith J. Larson (admitted *pro hac vice*) <br> **MORGAN POTTINGER MCGARVEY** <br> 401 South Fourth Street, Suite 1200 <br> Louisville, KY 40202 <br> Telephone: (502) 560-6758 <br> Facsimile: (502) 585-3498 <br> Email: kjl@mpmfirm.com |

*Counsel to Community Financial Services Bank*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| MCCLAIN FEED YARD, INC., *et al.*,[1] | § | Case No. 23-20084-SWE |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| KENT REIS, | § | |
| *Chapter 7 Trustee for the Bankruptcy Estates of McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc.*, | § | |
| Plaintiff, | § | Adv. Proc. No. 25-02005-SWE |
| | § | |
| v. | § | |
| | § | |
| COMMUNITY FINANCIAL SERVICES BANK, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**COMMUNITY FINANCIAL SERVICES BANK'S**
**REPLY TO TRUSTEE'S OBJECTION AND IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**
**UNDER RULE 7012 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

---

[1] The Debtors in these jointly administered chapter 7 cases, along with their case numbers, are: McClain Feed Yards, Inc. (Case No. 23-20084-SWE); McClain Farms, Inc. (Case No. 23-20085-SWE); and 7M Cattle Feeders, Inc. (Case No. 23-20086-SWE).

4899-1753-7119

Community Financial Services Bank (the "Movant" or "CFSB") files this reply (this "Reply") in response to the objection [Adv. Pro. Docket No. 79] (the "Objection") filed by Plaintiff Kent Reis, chapter 7 trustee in the above-referenced chapter 7 cases (the "Trustee") and in support of CFSB's motion to dismiss [Adv. Pro. Docket No. 56] and supporting brief [Adv. Pro. Docket No. 57] (the "Brief" and, together with the underlying motion to dismiss, the "Motion"),[2] and respectfully represents the following:

A.  **The Only Alleged Overt Acts Relate to CFSB's Processing of Checks and Deposits.**

1.  Much of the Objection attempts to recharacterize the Trustee's allegations against CFSB. Once the Court strips away rhetoric and hyperbole, what remains in the Complaint are allegations that CFSB mismanaged the Debtors' depositary accounts with CFSB—specifically, that CFSB failed to dishonor checks and reject deposits that CFSB should have known were part of the Debtors' elaborate check-kiting and Ponzi schemes.[3]

2.  CFSB rejects these allegations, but, even accepting them as true under Rule 12(b)(6), based on the limited allegations made against CFSB, the Court can conclude that the Trustee's sole legal recourse for such alleged conduct is under the UCC and the deposit account

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

[3] The actual allegations made in the Complaint demonstrate a stark difference between CFSB and the other three defendants. On the one hand, the Complaint contains specific statements regarding employees and officers of Rabo, Mechanics, and HTLF, including references to e-mails and prior testimony. But, on the other hand, the Complaint contains no similar statements regarding CFSB, its employees, or officers. *Compare* Complaint ¶¶ 47–61 & 64–73 (detailing Rabo's conduct and coordination with HTLF and Mechanics) *with* Complaint ¶¶ 62–63 (CFSB's secured loan that was paid off in 2021 and other historical relationships with non-debtor McClain family members). The Trustee's allegations that CFSB ignored red flags and suspicious activity reports—spurious as these allegations will prove to be—are mere omissions that fall squarely within the confines of the bank's activities processing checks and deposits through the Debtors' accounts. This conduct is clearly governed by the Uniform Commercial Code (the "UCC") as discussed further below. Even the three paragraphs in the Complaint labeled as "self-help" by CFSB fail to articulate any other overt acts or omissions beyond CFSB's processing of checks and deposits through the Debtors' bank accounts. *See* Complaint ¶¶ 74–76.

2

agreements with CFSB. *See Dean v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 506–08 (Ky. 2014).

    3.     Perhaps most compelling on this point are the alleged "overt acts" taken by CFSB in furtherance of the Trustee's Count III (civil conspiracy):

> 154. To be sure, Defendants' meeting of the minds also manifested through several overt acts. *First*, McClain housed all of Debtors' bank accounts at CFSB and Mechanics and utilized Rabo as a lending facility for Debtors' operations. *Second*, Rabo lent the Debtors $70 million to facilitate "growth" of McClain's fraudulent Ponzi scheme, including, in part, to pay off Debtors' loans with other Defendants. *Third*, despite repeated and extended overdrafts in the millions of dollars, CFSB, Mechanics, and HTLF continued to honor the Debtors' NSF checks, both as payor and payee, when their ordinary policies and procedures (if not the law) demanded otherwise. *Fourth*, Rabo, via its credit facilities, and CFSB and Mechanics, both via their payment of NSF checks and continued automatic crediting of checks despite repeated prior overdrafts, lent Debtors any fund shortfalls caused by overdrafts on Debtors' bank accounts at CFSB and Mechanics to perpetuate the fraudulent Ponzi scheme. *Fifth*, CFSB and Mechanics accepted deposits for new Partnership Agreements when they knew such funds were the "new investments" required to prop up a Ponzi scheme. *Sixth*, HTLF
>
> * * *
>
> could only have illicit motivations. *Eighth*, in another "coincidence," in the days and weeks before the Petition Date, Rabo and Mechanics initiated transfers of the Debtors' deposits to CFSB to zero out Debtors' accounts at CFSB. *Ninth*, in yet another fortune of timing, mere days before forcing McClain out of the business for Rabo's handpicked replacement, and just weeks before Debtors filed

Complaint ¶ 154 (emphasis added). Nothing in the foregoing suggests that CFSB engaged in any conduct beyond its processing of checks and deposits through the Debtors' bank accounts—conduct governed by Articles 3 and 4 of the UCC, as discussed below.

    4.     The Trustee does make conclusory allegations throughout the Complaint regarding his "information and belief" of CFSB's knowledge of the Debtors' fraud and CFSB's potential motivations for allowing the fraud to continue. The Trustee further contends that such knowledge

3

and motivations give rise to causes of action for participation in breaches of fiduciary duty (Count I), civil conspiracy (Count II), and professional negligence (Count IV). But, as discussed in the Brief and highlighted further below, these allegations (which CSFB disputes) are legally insufficient to avoid a conclusion by this Court that Kentucky law applies and that the common law claims asserted against CFSB are preempted by the UCC, as codified in both Kentucky and Texas. The common law claims against CFSB should be dismissed without further leave to amend.

**B.     The UCC Preempts the Trustee's Common Law Claims, as Pled.**

5.      The Trustee objects to CFSB's arguments of preemption of the common law claims (Counts I, III, IV, and V), contending that his common law claims are "outside the funds transfer process." Objection ¶ 13. Noticeably absent from the Objection is any discussion or attempt to distinguish *Dean v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489 (Ky. 2014), discussed at length in CFSB's opening Brief. This omission is understandable, because *Dean* is not only binding authority, but it is also both legally and factually on all fours with the Complaint.

6.      Rather than trying to distinguish *Dean* and its reasoning under Articles 3 and 4 of the UCC, the Trustee turns to a different article of the UCC—Article 4A, which governs wire transfers. According to the Trustee, the common law claims are not preempted because the Complaint includes allegations that go beyond the "funds transfer process," as defined in Article 4A of the UCC.[4] But, in so arguing, the Trustee conflates wire transfers (Article 4A) with the UCC articles applicable to negotiable instruments (Article 3) and bank deposits (Article 4). *Cf.* Objection ¶ 25. The Trustee's attempt to apply Article 4A to CFSB's handling of checks and

---

[4] Under Article 4A, the "funds transfer process" is defined as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Ky. Rev. Stat. § 355.4A-104; Tex. Bus. & Com. Code § 4A.104.

deposits through the Debtors' bank accounts is unsupported by legal authority and inconsistent with the Kentucky Supreme Court's ruling in *Dean*.

7. The phrase "funds transfer" does not even appear in Articles 3 and 4, or anywhere else outside of Article 4A of the UCC, and the Trustee cites no authority for applying the "funds transfer process" to checks, in general, or a "massive check-kiting" scheme, in particular. *See generally* Ky. Rev. Stat. §§ 355.3-101 *et seq.*, 355.4A-102 (Subject Matter). Accordingly, even if the legal propositions articulated in the Objection were correct (and they are not, as explained below), the cases cited therein are inapplicable to the Trustee's allegations here, which are limited to CFSB's handling of checks and deposits, in general, and the alleged participation in the Debtors' check-kiting scheme.

8. Incidentally, the Trustee's attempt to plead around the UCC is the same strategy employed by the plaintiff in *Dean* and rejected by the Kentucky Supreme Court in that case:

> The firm's complaint, however, is cleverly pleaded, asserting that the bank alternately was negligent, aided and abetted (negligently? intentionally?), and was in breach of contract, and generically that the bank's actions allowed diversion of the funds [through check-kiting]. This has obfuscated what should otherwise be obvious: that when an employer authorizes an employee to write checks on its account and tells the bank that the employee is so authorized, the bank does not act wrongly by paying checks written by the employee.

434 S.W.3d at 509. So too here.

9. At bottom, as shown above, the Trustee has alleged the following acts against CFSB in relation to the relevant claims: (a) McClain held bank accounts at CFSB; (b) CFSB honored certain properly presented checks under which the Debtor was payor or payee; (c) CFSB credited the amounts of those checks pursuant to its normal operations; and (d) CFSB accepted deposits made by the Debtor to the Debtor's bank accounts at CFSB. *See* Objection ¶ 154. In other words, CFSB acted in accordance with the law.

5

10. And if there was any wrongdoing by CFSB in relation to these actions, the remedy lies in the "comprehensive allocation scheme for check fraud losses" in the UCC, not in common law. *See Dean*, 434 S.W.3d at 507. As the Supreme Court of Kentucky explained, "[the UCC] should be read broadly to preempt common-law and other non-code causes of action" and "there is a strong policy in favor of treating the UCC as occupying the field and displacing common-law causes of action." *Id.* at 505 (citation omitted).

11. To be clear, CFSB does not argue that UCC displaces *all* common-law claims against *all* banks in *every instance*. On this general point, CFSB agrees with the Trustee. In this case, however, the Trustee has failed to allege any acts or omissions by CFSB beyond processing checks and deposits through the Debtors' accounts. This conduct falls squarely within, and is preempted by, Articles 3 and 4 of the UCC. As such, Counts I, III, IV, and V are preempted by the UCC under both Kentucky and Texas law and should be dismissed.

12. If anything, the cases cited by the Trustee in his Objection only add further support for this proposition. In *3T Oil & Gas Services, LLC v. JPMorgan Chase Bank, N.A.*, the court held that a negligent misrepresentation claim was not preempted by Article 4A because it was made by the bank *after*, and independent of, an improper wire transfer. No. A-18-CV-131-LY, 2018 WL 5018483, at *3 (W.D. Tex. Oct. 16, 2018), *report and recommendation adopted*, No. A-18-CV-131-LY, 2018 WL 6220139 (W.D. Tex. Nov. 1, 2018). After a wire transfer went through to a fraudulent account, notwithstanding the bank's erroneous representations that it could prevent the funds from being transferred, the plaintiff brought a claim for misrepresentation. *Id.* The court held that the claim for misrepresentation was beyond, and independent of, the wire transfer process itself. Thus, it was not preempted by Article 4A. *Id.* at *3.

13. On the other hand, in *Pirata P.S.C. v. Bank of America., N.A.*, the plaintiff alleged that a bank breached its fiduciary duties "by failing to use ordinary care to faithfully and diligently execute [ ] wire instructions…" 709 F. Supp. 3d 353, 358 (W.D. Ky. 2024). After initiating an international wire transfer, the defendant bank failed to properly execute the transaction, which resulted in the funds being transferred to an unknown recipient. *Id.* at 355–56. Although the plaintiff argued that the UCC did not apply to this claim because it related to actions taken "outside or after completion of the [funds transfer] process," similar to the arguments made by the Trustee here, the court disagreed. *Id.* at 359. The court held the breach of fiduciary duty claim was preempted "because it is a common law claim involving misconduct during the funds transfer process." *Id.* (internal quotation marks, emphasis, and citations omitted). Conversely, and similar to the court in *3T Oil & Gas Services*, the *Pirata* court held that claims relating to misconduct "occur[ing] after the wire transfer" relating to a refusal to provide information that could lead to the identification of the actual recipient of the funds were not preempted by the UCC. *Id.* at 360.

14. In the last case cited by the Trustee, *Northcutt & Son Home for Funerals, Inc. v. U.S. Bank N.A.*, the court held that claims for negligence and conversion against a bank were preempted by the UCC when the alleged financial loss underlying the claims "resulted from dozens of fraudulent wire transfers." 747 F. Supp. 3d 1058, 1061 (E.D. Ky. 2024). The defendant bank permitted 47 fraudulent wire transfers to occur after speaking to a person impersonating a representative of the plaintiff over the phone. *Id*. at 1060. Because, just like the Trustee here, the plaintiff did not allege any tortious conduct occurring after the wire transfer process, the court held that the UCC provided the sole remedy for the harms alleged by the plaintiff. *Id.* at 1061.

15. In sum, based on the allegations in the Complaint, and the applicable authorities cited by CFSB in the Motion, the Court should dismiss Counts I, III, IV, and V as preempted by the UCC.

**C.   Kentucky Law Applies.**

16. If the Court does not dismiss the common law counts under the UCC (as adopted in both Texas and Kentucky), the Court then must determine whether Texas or Kentucky law applies. As the Trustee acknowledges in his Objection, the starting point to determine which law applies is the statute—here, section 4-102(b) of the UCC. Under section 4-102(b), the liability of a bank for the claims asserted in the Complaint is governed by the law of the place where the bank is located. Brief ¶ 54; Objection ¶ 11.[5] In an apparent attempt to confuse a straightforward reading of UCC § 4-102(b), the Objection uses dicta from *Villarreal v. First Presidio Bank*, 283 F. Supp. 3d 548 (W.D. Tex. 2017) to argue that UCC § 4-102(b) is "irrelevant" to the Trustee's claims. Objection ¶ 11. This reliance upon *Villarreal* is misplaced. In *Villarreal*, a bank customer sued a bank for wrongful dishonor under the UCC and for unjust enrichment, alleging the bank failed to properly redeem certificates of deposit. 283 F. Supp. 3d at 550. It is unclear how *Villarreal* has any bearing on the case at bar. In contrast, as mentioned above, CFSB's Motion relies upon the holding in *Dean*—a 2014 Supreme Court of Kentucky decision that held (in the context of a check-kiting scheme) that UCC Articles 3 and 4 preempt common law claims against a bank for (i) aiding and abetting, (ii) common law negligence, (iii) breach of duty of good faith and fair dealing, and (iv) punitive damages. If UCC Articles 3 and 4 apply to the *Dean* causes of action (which are

---

[5] As the Trustee acknowledges in his Complaint, CFSB is a Kentucky chartered bank with its principal office in Benton, Kentucky. Complaint ¶ 10. The Trustee does not allege that CFSB maintains branches outside of Kentucky, and the Trustee acknowledges that CFSB only maintained accounts for the two Kentucky Debtors, Farms and Feed Yard. Complaint ¶¶ 8, 63.

4899-1753-7119

virtually the same as those alleged by the Trustee), then applying UCC § 4-102(b) would compel the application of Kentucky law.

17. The Trustee further argues that even if Kentucky law might ultimately apply, the Court has insufficient information at this time to determine the choice of law issue. Objection ¶ 8. However, unlike the *CapLOC* case cited in the Objection,[6] the relevant facts here are not in dispute and are recited in the Complaint. CFSB had a contractual relationship with two of the three debtors: McClain Farms, Inc. ("Farms") and McClain Feed Yard, Inc. ("Feed Yard"). Complaint ¶ 63. Both Farms and Feed Yard are incorporated in Kentucky. *Id*. ¶ 8. Farms operated in Kentucky. *Id*. ¶ 8. While Feed Yard operated in Texas, *id*. ¶ 8, Feed Yard does not appear to be relevant to the allegations against CFSB because all the alleged "overdrafts" involving CFSB were perpetrated by Farms in Kentucky. *Id*. at Exhibit E. Brian McClain was a resident of Kentucky and the sole owner and director of Farms and Feed Yard since 2021. *Id*. ¶ 15. CFSB is a Kentucky chartered bank with its branches located solely in Kentucky. *Id*. ¶ 10. CFSB's alleged participation in the alleged Ponzi and check-kiting schemes was conducted in CFSB's Kentucky-based branches. *Id*. at Exhibit E. Moreover, the Trustee does not seem to dispute that all deposit account agreements with CFSB were entered into in Kentucky and applied Kentucky law. In sum, under the circumstances, and considering these undisputed facts, Kentucky has the most significant contacts with the disputes between the Trustee and CFSB. Kentucky law therefore governs the claims asserted by the Trustee against CFSB.

---

[6] *CapLOC LLC v. Liberty Mut. Ins. Eur. Ltd*., No. 3:20-CV-3372-B, 2021 WL 2551591, at *1 (N.D. Tex. June 22, 2021).

**D.    An Ordinary Care Standard Does Not Expand Remedies Beyond the UCC.**

18.    The Trustee also contends in his Objection that a bank's obligation to exercise ordinary care in processing checks and deposits means that a common law claim for negligence may survive dismissal. Objection ¶¶ 50–52 (citing *Forcht Bank, N.A. v. Gibbons*, No. 2014-CA-000592, 2015 WL 4039612 at *3 (Ky. Ct. App. July 2, 2015)). The Trustee's reliance on *Forcht Bank* is misplaced, however. That unpublished decision merely discussed the standards of care applicable to the plaintiff's claims under the UCC, not common law. Because the Trustee has brought only common law claims against CFSB and nothing under the UCC or the CFSB's deposit account agreements with the Debtors, the *Forcht Bank* decision has no application here.

**E.    The Doctrine of *In Pari Delicto* Under Texas and Kentucky Law Requires Dismissal.**

19.    The Trustee further contends that a determination of whether the Trustee is *in pari delicto* is not ripe for decision at the Rule 12(b) stage. While CFSB acknowledged in its Motion that this doctrine is an affirmative defense, CFSB also provided ample authority to dismiss the claims against CFSB on the face of the Complaint. The Trustee's allegations, if taken to be true, paint a clear picture of McClain, through the Debtors, conducting fraudulent schemes and misusing the four bank defendants with "Rabo at the nucleus." Complaint ¶ 46. In other words, the Debtors were the principal actors, and they simply used Rabo to perpetuate this fraud, with depositary banks like CFSB being tools used to perpetuate the schemes.

20.    While the Trustee raises the public policy argument in his Objection and asks the Court to defer a finding of *in pari delicto* until summary judgment or trial, the Trustee provides no authority or indication of what fact issues the Court must decide as part of its public policy consideration. The answer is that there are none, and there's no justification for delay on this point. By the Trustee's own admission, on the face of the Complaint, the Debtors are at equal or greater

fault than the banks they used to perpetuate their fraud. Accordingly, based on the authorities cited in the Motion, the common law claims asserted against CFSB may be dismissed as a matter of law.

**F.     The Court Should Deny Leave to Amend**

21.     CFSB reiterates its position that the circumstances here warrant denial of leave to amend the Complaint a third time. The Trustee has already filed *three* complaints in this lawsuit (the original complaint, first amended complaint, and the current Second Amended Complaint).

22.     The Trustee suggests that it would be inequitable to deny him a *fourth* bite at the apple because CFSB did not fully comply with his pre-suit discovery efforts. This argument is both inaccurate and irrelevant.[7] The Trustee apparently believed he had enough information from his pre-litigation investigation to proceed with this lawsuit. The Complaint includes specific allegations of alleged misconduct by the other three defendants. If there was a good faith basis to make similar allegations against CFSB, the Trustee could have done so in his first three attempts. Unlike Bankruptcy Rule 2004, the litigation discovery rules are not a tool to engage in fishing expeditions in aid of improving a complaint that is already on file. *See, e.g., In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) ("Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure") (citations omitted).

23.     Under these rare and unusual circumstances, leave to amend a fourth time should be denied.

*[Remainder of page intentionally left blank]*

---

[7] At no time prior to the commencement of this lawsuit did the Trustee file (or even threaten to file) a motion to compel additional documents from CFSB.

4899-1753-7119

WHEREFORE, CFSB respectfully requests that this Court dismiss the Complaint in its entirety with prejudice and grant it such other and further relief to which it is justly entitled.

Respectfully submitted this 20th day of August, 2025.

        **GRAY REED**
        By:  */s/ Aaron M. Kaufman*
            Aaron M. Kaufman
            Texas Bar No. 24033684
            Amber M. Carson
            Texas Bar No. 24075610
        1601 Elm Street, Suite 4600
        Dallas, TX 75201
        Telephone:    (214) 954-4135
        Facsimile:      (214) 953-1332
        Email:            akaufman@grayreed.com
                           acarson@grayreed.com

-and-

        **MORGAN POTTINGER MCGARVEY**
        By:  *Keith J. Larson*
            Keith J. Larson (admitted *pro hac vice*)
        401 South Fourth Street, Suite 1200
        Louisville, KY 40202
        Telephone:    (502) 560-6758
        Facsimile:      (502) 585-3498
        Email:            kjl@mpmfirm.com

*Counsel to Community Financial Services Bank*

4899-1753-7119

## **Certificate of Service**

      I certify that on August 20, 2025, I caused a copy of the foregoing document to be served via electronic mail on the counsel listed below, and via the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

**LYNN PINKER HURST & SCHWEGMANN LLP**
Alan Dabdoub
adabdoub@lynnllp.com
Campbell Sode
csode@lynnllp.com
Farsheed Fozouni
ffozouni@lynnllp.com
Nathaniel Plemons
nplemons@lynnllp.com
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201

**JOBE LAW PLLC**
Hudson M. Jobe
hjobe@jobelawpllc.com
6060 North Central Expressway, Suite 500
Dallas, Texas 75206

*Counsel for the Plaintiff/Trustee*

**LOVELL LOVELL ISERN & FARABOUGH, LLP**
John H. Lovell
john@lovell-law.net
112 Southwest 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314

*Counsel for Defendant HTLF Bank*

**RAY QUINNEY & NEBEKER P.C.**
Michael R. Johnson
mjohnson@rqn.com
36 South State Street, Suite 1400
Salt Lake City, Utah 84111

**UNDERWOOD LAW FIRM, P.C.**
Thomas C. Riney
tom.riney@uwlaw.com
Heath Hendricks
heath.hendricks@uwlaw.com
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101

*Counsel for Defendant Rabo Agrifinance, LLC*

**HUSCH BLACKWELL LLP**
Buffey Klein
Buffey.Klein@huschblackwell.com
Richard A. Illmer
rick.illmer@huschblackwell.com
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201

*Counsel for Defendant Mechanics Bank*

 

    */s/ Aaron M. Kaufman*
    Aaron M. Kaufman

13

4899-1753-7119