HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

SPECIAL COUNSEL TO THE TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-20084-swe7 |
| McClain Feed Yard, Inc., et al., | § | Jointly Administered |
| | § | |
| Debtors. | § | |
| | § | |
| In re: | § | |
| | § | |
| 2B Farms, a Texas General Partnership, et al., | § | Case No. 23-50096-swe12 |
| | § | Jointly Administered |
| Debtors. | § | |

AgTexas Farm Credit Services, AgTexas, PCA, Thorlakson Diamond T Feeders, LP,

    Plaintiffs, and

Edward Dufurrena, et al.,

    Intervenor-Plaintiffs,

v.

Rabo AgriFinance, LLC, et al.,

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Adversary No. 24-02007-swe
Consolidated Adversary Proceeding

_____

Kent Ries, Chapter 7 Trustee for the Bankruptcy Estates of McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc.,

    Plaintiff,

v.

Community Financial Services Bank; HTLF Bank, Mechanics Bank, and Rabo AgriFinance, LLC,

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

Adversary No. 24-02007-swe
Consolidated Adversary Proceeding

HTLF Bank, as successor to First Bank & Trust,

     Plaintiff, Counter-Defendant, and Cross-Claim Defendant,

v.

2B Farms, a Texas General Partnership, Terry M. Robinson, and Rebecca A. Robinson,

     Defendants, Counterclaim-Plaintiffs, Third-Party Plaintiffs and Third-Party Counterclaim Defendants,

v.

Rabo AgriFinance, LLC and Mechanics Bank,

     Third-Party Defendants and, as to Rabo AgriFinance LLC only, Third-Party Counterclaim Plaintiff and Cross-Claim Plaintiff.

HTLF Bank, as successor to First Bank & Trust,

     Plaintiff and Counter-Defendant,

v.

2B Farms, a Texas General Partnership, Terry M. Robinson, and Angela Robinson,

Defendants and Counter-Plaintiffs.

Adversary No. 24-02007-swe
Consolidated Adversary Proceeding

**OBJECTION AND RESPONSE TO HTLF'S MOTION TO DISMISS
THE TRUSTEE'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

Table of Contents ...................................................................................................................... i

Table of Authorities .................................................................................................................. ii

Introduction ............................................................................................................................... 1

Argument and Authorities ........................................................................................................ 4

      A.     The Trustee is seeking to redress direct injuries and damages that HTLF
            inflicted on the Debtors during McClain's Ponzi scheme. ................................. 4

      B.     HTLF's relabeled *in pari delicto* argument does not support dismissal of any
            claims. ........................................................................................................................ 6

      C.     The Trustee alleged cognizable and plausible knowing participation in
            breach of fiduciary duty and civil conspiracy claims. ....................................... 7

      D.     HTLF had a legally cognizable and factually plausible agency relationship
            with the Debtors, so the Trustee can pursue negligence and breach of
            fiduciary duty claims. ........................................................................................... 14

      E.     The Trustee has cognizable fraudulent transfer and preference claims
            against HTLF. ........................................................................................................ 17

Conclusion and Prayer for Relief ........................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Am. Cancer Soc'y v. Cook*, 675 F.3d 524 (5th Cir. 2012) ............................................................21

*Barnhill v. Johnson*, 503 U.S. 393 (1992) .......................................................................................18

*BG Gulf Coast LNG, L.L.C. v. Sabine-Neches Navigation Dist. of Jefferson Cnty., Tex.*, 49 F.4th
420 (5th Cir. 2022) ..................................................................................................................13

*Caliber Home Loans, Inc. v. Cove*, Civil Action No. 3:22-CV-02298-M, 2025 WL 71983
(N.D. Tex. Jan. 10, 2025) .......................................................................................................13

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716 (Tex. 2014)....................16

*Di Piazza v. Weather Grp. Television, LLC*, Civil Action No. 5:19-CV-060-C, 2019 WL
8107920 (N.D. Tex. June 3, 2019) ........................................................................................18

*Faulkner v. AimBank (In re Reagor-Dykes Motors, LP)*, Adversary No. 20-05039, 2021 WL
1219537 (Bankr. N.D. Tex. Mar 30, 2021) ................................................................... 21, 23

*In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 531 (9th Cir. 1990) .................................23

*In re IFS Fin. Corp.*, 417 B.R. 419 (Bankr. S.D. Tex. 2009) ........................................................23

*In re Reagor-Dykes Motors, L.P.*, No. 18-50214-RLJ-11, 2021 WL 5094783 (Bankr. N.D.
Tex. Oct. 29, 2021)..................................................................................................................22

*In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008).......................................................5

*In re Silver State Holdings, Assignee—7901 Boulevard 26 LLC*, Case No. 19-41579-MXM,
Adversary No. 19-4043-MXM, 2020 WL 7414434 (Bankr. N.D. Tex. Dec. 17,
2020).........................................................................................................................................24

*In re Texas E&P Operating, Inc.*, No. 17-34386-SGJ-7, 2022 WL 2719472 (Bankr. N.D.
Tex. July 13, 2022)........................................................................................................... 20, 24

*In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796 (Bankr.
N.D. Tex. Aug. 14, 2024) .........................................................................................................6

*Janvey v. Alguire*, 846 F. Supp. 2d 662 (N.D. Tex. Sept. 6, 2011) ..............................................22

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185 (5th Cir. 2013) ........... 20, 21

*Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193 (Tex. 2002) ................................................16

*Lewis v. Davis*, 199 S.W.2d 146 (Tex. 1947) ................................................................................6

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir. 1996)................................................11

*Moreland v. U.S.*, Civil Action No. 3:11-CV-358-L, 2013 WL 3283700 (N.D. Tex. June 28, 2013) ................................................................................................................17

*Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546 (5th Cir. 2005) ...........................19

*Nat'l Plan Adm'rs, Inc. v. Nat'l Health Inc. Co.*, 235 S.W.3d 695 (Tex. 2007) ...........................16

*Neal v. U.S.*, 562 F.2d 338 (5th Cir. 1977) ...............................................................................19

*Reagor Auto Mall Ltd. v. FirstCapital Bank of Tex., N.A. (In re Reagor-Dykes Motors, LP),* Case No. 18-50214-RLJ-11, Adversary No. 20-05002, 2020 WL 4939180 (Bankr. N.D. Tex. Aug. 24, 2020) ...................................................................................... 3, 6, 11

*Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922 (Tex. 2015) ................................17

*S.E.C. v. Helms*, No. A-13-CV-1036-ML, 2015 WL 1040443 (W.D. Tex. Mar. 10, 2015) ...................22

*SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458 (5th Cir. 2022) ................................17

*Schertz-Cibolo-Universal City I.S.D. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281 (5th Cir. 1994) .........................................................................................................5

*Sec. & Exch. Comm'n v. Resource Dev. Int'l, LLC*, 487 F.3d 295 (5th Cir. 2007) ................................ 20, 21

*Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004) ................................................................25

*Taylor Foundry Co. v. Wichita Falls Grain Co.*, 51 S.W.3d 766 (Tex. App.—Fort Worth 2001, no pet.) .............................................................................................................17

*Warfield v. Byron*, 436 F.3d 551 (5th Cir. 2006) .......................................................................21

*Willow Tree Consulting Grp., LLC, Trustee of TH Liquidating Trust v. Perkins Coie LLP*, No. 05-23-00264-CV, 2024 WL 575263 (Tex. App.—Dallas Feb. 13, 2024, pet. denied).......................................................................................................................13

## Statutes

Tex. Bus. & Com. Code § 24.005(b) ........................................................................................24

## Rules

Fed. R. Civ. P. 12(b)(6)..............................................................................................................6

Kent Ries, Chapter 7 Trustee of the bankruptcy estates of McClain Feed Yard, Inc. ("**MFY**") (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. ("**7M**") (Case No. 23-20086-swe) (the "**Trustee**"), respectfully objects to HTLF Bank's ("**HTLF**") *Motion to Dismiss Trustee's Second Amended Complaint* and *Brief in Support* (Adversary No. 25-02005-swe, ECF Nos. 70–71) (collectively the "**Motion**"). The Court should deny the Motion.

## INTRODUCTION

1. This case arises from a massive years-long $2 billion Ponzi scheme operated by Brian McClain ("**McClain**"), the Debtors' now-deceased former owner. *See* Trustee's Second Amended Complaint, Adversary No. 25-02005, ECF No. 48 ("Compl.") ¶¶ 19–115. McClain used his cattle business as a front to solicit investors. Compl. ¶¶ 19–35. But McClain never actually had enough money to pay his investors their purported profits, or eventually, their principal. Compl. ¶ 41. To paper over his insolvency, McClain sourced new money in three ways:

    a.    ***First,*** McClain solicited new investors and used their money to pay off old investors. Compl. ¶¶ 27, 30, 41.

    b.    ***Second,*** McClain manufactured phantom funds (to pay his investors) by kiting checks between: (a) Debtors' accounts at Community Financial Services Bank ("**CFSB**") and Mechanics Bank ("**Mechanics**"); and (b) investor accounts at HTLF. Compl. ¶¶ 38–45, 77–91.

    c.    ***Third,*** McClain repaid his investors with the proceeds of a seemingly infinite loan from Rabo AgriFinance, LLC ("**Rabo**"). Compl. ¶¶ 55–61, 64–73.

2. McClain's suspicious activity produced a critical mass of red flags within CFSB, HTLF, Mechanics, and Rabo. Compl. ¶¶ 46–73, 77–113. But, instead of investigating and stopping the scheme in its tracks, those four banks all actively enabled, facilitated, and operated McClain's Ponzi scheme. *See* Compl. ¶¶ 77–113. Their motive was simple. Each bank benefited from the Ponzi scheme in different ways. Compl. ¶¶ 60, 70, 83, 86, 109 & n.12, 155–57. HTLF specifically profited by charging interest on the loans HTLF made to its depositors so they could invest in McClain's Ponzi

scheme. HTLF's recovery of its loan principal and interest profits depended on the fraudulent profits that investors made from McClain's Ponzi scheme—such that HTLF would suffer significant financial losses if it did the right thing and ended the Ponzi scheme. But profits prevailed over prudence. Compl. ¶¶ 80, 83, 127, 156; *see also* Compl. ¶ 32 (describing how, at the end of the Ponzi scheme, the "turns" between investment and repayment accelerated to a completely unrealistic matter of weeks or even days). Nor did HTLF want to surrender the side benefits of inflated investor deposit account balances at HTLF as a result of the kite (Compl. ¶ 80), specifically larger lendable reserves that could earn interest income, increased liquidity, easier satisfaction of capital reserve regulations, and a higher business valuation.

3.      While HTLF did not house the Debtors' bank accounts, that does not free HTLF of liability for actively facilitating the Ponzi Scheme. At McClain's direction, HTLF employees Shawn Ragland ("**Ragland**") and Rebecca Fernandez ("**Fernandez**") held pre-signed blank checks for the Debtors' bank accounts. Compl. ¶¶ 28, 46, 78–83, 127, 133, 149, 154, 165, 206–07. To "more quickly facilitate the flow of funds to and from the Debtors," *see* Compl. ¶ 28, Ragland and Fernandez followed McClain's instructions to: (a) complete the checks; (b) deposit them into investor accounts at HTLF; (c) immediately credit the investor accounts for funds yet to arrive from Debtors' bank accounts; then (d) immediately wire most or all of the same cash back to the Debtors' accounts before the Debtors' bank honored the original check to the investor. Compl. ¶¶ 78–82. That series of facially illegitimate and problematic transactions happened countless times.

4.      In doing so, HTLF loaned the Debtors money twice. *__First,__* by immediately crediting investor accounts for funds yet to arrive from the Debtors, HTLF effectively put its own money into those investor accounts. Compl. ¶ 80. That "fronting" of money temporarily relieved Debtors of their obligation to repay McClain's investors, thus inflating Debtors' bank account balances. Compl. ¶ 80. *__Second,__* by wiring money straight back to Debtors before the incoming funds cleared, HTLF essentially sent its own money to Debtors' bank accounts. Compl. ¶ 80. That process again inflated the Debtors' funds because their accounts were immediately credited for the incoming funds from HTLF before those funds even left HTLF's control.

5.      Practically, HTLF's constant manufacture of float at McClain's direction perpetuated McClain's Ponzi scheme by allowing McClain to pay investors out of Debtors' bank accounts even though the underlying funds simply did not exist.  HTLF nevertheless disclaims liability through a three-part logical chain: (a) HTLF was authorized to fill out the blank pre-signed checks for the Debtors' accounts; (b) banks normally grant provisional settlement credit for incoming funds; and (c) provisional settlement credits are not loans.  *See* Mot. ¶¶ 4–14.  In essence, HTLF theorizes that it cannot be held liable because it served as a "mere conduit" of funds as they passed between Debtors and certain investors who housed accounts at HTLF.

6.      HTLF's proposed logical chain is incomplete because it elides the Trustee's allegation that HTLF employees Ragland and Fernandez knowingly and actively operated the check kite to allow HTLF to benefit from interest charged on loans to McClain investors.  Compl. ¶¶ 79–80, 82–83, 156, 207.  HTLF also discounts the Trustee's allegation that, during the float-creation process described in Paragraph 4 of this Objection, "HTLF was the party whose cash was at risk when used by Debtors and was effectively loaning Debtors the float" required to sustain McClain's Ponzi scheme.  Compl. ¶ 80.  And HTLF's implied "mere conduit" case theory is an affirmative defense that plainly cannot be addressed at the motion to dismiss stage of a case.  *See Reagor Auto Mall Ltd. v. FirstCapital Bank of Tex., N.A. (In re Reagor-Dykes Motors, LP)*, Case No. 18-50214-RLJ-11, Adversary No. 20-05002, 2020 WL 4939180, at *4 (Bankr. N.D. Tex. Aug. 24, 2020).  That is because a "mere conduit" affirmative defense requires a fact-intensive adjudication of whether HTLF actually loaned its own money to Debtors through provisional credits and outgoing wires.

7.      Because the Court must accept as true the Trustee's factual allegations, it should deny the Motion and allow the Trustee to obtain discovery from HTLF about its liability for the misconduct now at issue.  The Trustee is legally entitled to explore his allegation that Ragland and Fernandez were aware of, and knowingly operated, McClain's Ponzi scheme.  The Trustee also has the right to fully investigate his allegation that HTLF perpetuated McClain's Ponzi scheme by loaning its own money to the Debtors in a never-ending stream of transactions that cycled funds through investor accounts at HTLF to create phantom money for the Debtors.

## ARGUMENT AND AUTHORITIES

8.      HTLF's brief is structured as five loosely related arguments applicable to various groups of the Trustee's claims.  ___First,___ HTLF claims the Trustee lacks standing because he is asserting causes of action or damages that belong to McClain's investor-creditors.  *See* Mot. ¶¶ 18–22.  ___Second,___ HTLF insists it cannot be held liable for the Debtors' self-inflicted injuries, which is really a relabeled *in pari delicto* argument.  *See* Mot. ¶¶ 23–29.  ___Third,___ HTLF postulates that the Trustee did not allege sufficient facts to support his knowing participation in breach of fiduciary duty and civil conspiracy claims.  *See* Mot. ¶¶ 30–42.  ___Fourth,___ HTLF suggests that the Trustee failed to allege cognizable breach of fiduciary duty and negligence claims against HTLF.  *See* Mot. ¶¶ 43–47.  ___Fifth,___ HTLF urges that the Trustee did not allege plausible fraudulent transfer and preference claims against HTLF.  *See* Mot. ¶¶ 48–64.  Those arguments are discussed in turn below—and the Court should discard all of HTLF's grounds for dismissal as factually and legally futile.

**A.      The Trustee is seeking to redress direct injuries and damages that HTLF inflicted on the Debtors during McClain's Ponzi scheme.**

9.      HTLF's first argument is that all of the Trustee's claims should be dismissed because they implicate damages belonging to individual creditors.  *See* Mot. ¶¶ 18–22.  In so arguing, HTLF misapplies Fifth Circuit law about bankruptcy estate claim ownership and misreads the Trustee's as-pleaded damages allegations against HTLF.  The Court should reject HTLF's interpretation of the Trustee's legal claims and damages to the Debtors.

10.      At the outset, HTLF's position on claim ownership and damages is inconsistent with its earlier representations to this Court.  HTLF previously moved to dismiss certain claims asserted by non-Trustee parties against HTLF.  In that motion, HTLF argued that the non-Trustee parties "lack standing to assert fraudulent transfers from McClain to [HTLF].  Such claims are property of the McClain estates."  *See* Adversary No. 24-02007-swe, ECF Nos. 119 at 4, 120 ¶ 27, 121 at 4.  Given that statement, HTLF cannot now insist that the Trustee's fraudulent transfer claims suddenly belong to the individual McClain creditors, not the Trustee.

11.     HTLF separately admits that the identity of the directly injured party decides whether a claim belongs to a bankruptcy estate or its creditors.  Mot. ¶ 19 (citing *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 589 (5th Cir. 2008)).  HTLF also correctly notes that the Trustee has exclusive standing to prosecute direct injuries to the Debtors.  Mot. ¶ 19 (citing *In re Seven Seas*, 522 F.3d at 584; *Schertz-Cibolo-Universal City I.S.D. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994)).  Those points of law preclude dismissal.

12.     Despite HTLF's contrary suggestions, the Trustee's complaint faithfully follows Fifth Circuit claim ownership rules by asserting only claims about injuries and damages directly inflicted on the Debtors.  *See, e.g.*, Compl. ¶ 167 ("By continuing to extend credit in the form of both dollars and a fictitious float, Defendants directly and proximately damaged Debtors by enabling them to incur nearly $200 million in debt—when Rabo had initially determined years earlier that the Debtors were not qualified for a less than $2 million loan.").  That explosion of the Debtors' indebtedness plainly is a direct injury to the Debtors, not their creditors.  HTLF therefore has no argument that the Trustee lacks standing to recover money damages from HTLF.

13.     Aware of that fatal weakness in its damages argument, HTLF confuses the issues by conflating the nature of direct damages alleged by the Trustee with the Trustee's preliminary valuation of those damages at the motion to dismiss stage.  Mot. ¶¶ 20–22.  To be sure, the Trustee's complaint uses creditor claims against Debtors' bankruptcy estate as a rough indicator of direct damages inflicted on Debtors by HTLF's misconduct.  *See* Compl. ¶¶ 124, 140, 158, 167.  But that does not necessarily mean the Trustee is trying to recover damages for claims unique to the individual creditors.  Rather, without the benefit of fact discovery, the Trustee has done his best to estimate the liability faced by HTLF and its co-defendants.  *E.g.,* Compl. ¶ 140.  Proper valuation of the Debtors' direct damages is a fact issue for discovery and trial, not motions to dismiss.

14.     Because the Trustee's live complaint properly alleges direct damages to the Debtors **_not_** reliant on injuries to creditors, the Court must reject HTLF's "no direct damages" argument for dismissal of the Trustee's claims.  The true measure of Debtors' direct damages will reveal itself during the discovery process and ensuing trial on the merits.

**B.      HTLF's relabeled *in pari delicto* argument does not support dismissal of any claims.**

15.      After briefing its unpersuasive "no direct damages" argument, HTLF changes tack and seeks dismissal based on the Debtors' self-inflicted injuries and liability to third parties.  Mot. ¶¶ 21, 23–29.  That is merely a relabeled *in pari delicto* argument, as shown by HTLF's focus on Debtors' purported misconduct in operating a Ponzi scheme.

16.      The fundamental (and insurmountable) problem for HTLF is that affirmative defenses like *in pari delicto* typically are not ripe for resolution at the motion to dismiss stage.  *See, e.g., In re Reagor-Dykes*, 2020 WL 4939180, at *13 ("Like the mere-conduit defense, *in pari delicto* is an affirmative defense.  Although dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint.  In the usual case, a court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint.  ___Specifically, as defined in Texas courts, the applicability of in pari delicto in any specific circumstance depends on the facts and circumstances and considerations of public policy.  These facts cannot be decided on a motion to dismiss___.  Here, *in pari delicto* does not arise from the face of the complaint; it requires a fact-intensive inquiry on its applicability." (emphasis added and cleaned up)); *accord Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947); *In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796, at *21, *27 (Bankr. N.D. Tex. Aug. 14, 2024) (emphasizing that the *in pari delicto* affirmative defense is so fact-intensive that it cannot be decided even at the summary judgment stage of a case).[1]

17.      Moreover, in considering only undisputed facts at the summary judgment stage, the *In re Vantage* court found that even if the wrongdoer's acts were imputed to the debtor company, the defense would still not bar recovery because the Trustee "is an innocent party seeking recovery from" defendants for the benefit of innocent creditors, and there was no evidence that the Trustee's recovery would benefit the actual wrongdoer.  *Id.* at *28.  So barring the "[t]rustee's tort claims … based on *in pari delicto* … would __not__ outweigh the overall policy of not inflicting additional harm on the innocent

---

[1] HTLF committed its bad acts at a Texas branch.  Because HTLF does not seek refuge in any other state's law, the Trustee applies Texas *in pari delicto* law to HTLF's motion to dismiss.

victims of the … scheme." *Id.* The *In re Vantage* court even went so far as to recommend granting

summary judgment in the trustee's favor on the *in pari delicto* issue even though the trustee had not

moved for summary judgment on that defense. *Id.* The analysis and conclusion should be no different

here, where the Trustee's recovery will in no way benefit McClain or his personal estate, and where

the *in pari delicto* defense would further harm innocent creditors by narrowing the Trustee's avenues

for recovery and equitable distribution of estate assets.

18.     The foregoing caselaw establishes, beyond peradventure, that HTLF is not entitled to

dismissal of the Trustee's claims under an *in pari delicto* theory, however it may be labeled or briefed by

HTLF. So the Court must deny HTLF's motion to dismiss and allow the Trustee to prosecute his

claims through the discovery stage, which will help illustrate whether HTLF can fairly assert an *in pari*

*delicto* affirmative defense to the Trustee's pending claims.

## C.     The Trustee alleged cognizable and plausible knowing participation in breach of fiduciary duty and civil conspiracy claims.

19.     HTLF begins its third argument for dismissal by admitting that the Trustee can assert

claims against HTLF for causing McClain and the Debtors to operate the Ponzi scheme at issue. *See*

Mot. ¶ 29 ("[T]he Debtors may have potential claims against McClain or other parties who caused

them to operate the scheme." (cleaned up)). That is precisely the crux of the Trustee's claims. HTLF

and its co-defendants caused Debtors to operate a Ponzi scheme as follows. CFSB, HTLF, Mechanics,

and Rabo knew about Debtor banking activity in furtherance of a Ponzi scheme fraud, specifically

huge volumes of massive and never-ending intercompany and investor transfers used to manufacture

"float" needed to pay investors. Compl. ¶¶ 19–45, 77–83. In relevant part, HTLF knew about **$265**

**million** in illegitimate transfers between Debtors and investor accounts at HTLF. Compl. ¶ 206 &

Ex. B. Those intercompany and investor transfers triggered automated internal check kiting and fraud

alerts at CFSB, HTLF, and Mechanics, Compl. ¶¶ 77, 91, 100, 104, and caused pervasive overdrafts

in the Debtors' bank accounts, Compl. ¶¶ 44–45. Instead of investigating and then stopping the illicit

activity, CFSB, HTLF, Mechanics, and Rabo knowingly operated the Ponzi scheme for their own

ends. *E.g.*, Compl. 46–115. HTLF's active role in operating the Ponzi scheme consisted of following McClain's instructions to: (a) fill out pre-signed and blank checks made out on the Debtors' bank accounts; (b) deposit those checks into investor accounts at HTLF; (c) immediately credit the investor accounts for the incoming funds before they arrived from Debtors' bank accounts; and then (d) immediately wire a corresponding amount of money to the Debtors' bank accounts. Compl. ¶¶ 77–83. Those intentional acts by HTLF created huge amounts of phantom money in the Debtors' bank accounts, which McClain used to pay investors. Compl. ¶¶ 77–83. There lies the flaw in HTLF's motion. HTLF seeks dismissal of claims that prosecute HTLF's role in actively operating a years-long $2 billion Ponzi scheme in concert with CFSB, Mechanics, and Rabo. But dismissal is unavailable to HTLF, as conceded in its Motion. *See* Mot. ¶ 29.

20.    Setting aside its spurious argument about "non-operation" of the Ponzi scheme (*see* Mot. ¶¶ 29–30), HTLF shifts gears and seeks dismissal of the Trustee's knowing participation in breach of fiduciary duty and civil conspiracy claims (*see* Mot. ¶¶ 31–32). HTLF's general argument is that the Trustee must, but did not, allege that HTLF actually knew about, and intentionally participated in or operated, the Ponzi scheme. Mot. ¶¶ 31–32, 38. But the factual allegations recited in Paragraph 19 of this Objection instantly dispel HTLF's general argument. Those factual allegations show HTLF had actual knowledge of the Ponzi scheme because it was privy to a years-long pattern of **$265 million** in highly suspicious transfers between Debtors and investor accounts at HTLF (Compl. ¶¶ 19–46, 77–83, 206 & Ex. B), which triggered automated internal check kiting and fraud alerts at HTLF (Compl. ¶¶ 77, 91, 100, 104), but HTLF actively operated the Ponzi scheme by kiting checks for McClain so he could pay investors (Compl. ¶¶ 77–83). The Trustee's allegations about HTLF's motive further prove HTLF's knowledge of the Ponzi scheme. HTLF lent money to investors so they could invest with McClain, and HTLF's recoupment of that loan principal and related interest income depended on the facially illegitimate profits those investors earned from McClain's Ponzi scheme. *See* Compl. ¶¶ 32, 80, 83, 127, 156. Nor did HTLF want to surrender the benefits of higher deposit balances that resulted from HTLF immediately crediting investor accounts for incoming funds from McClain, such as an increased lending base. *See, e.g.*, Compl. ¶ 80.

21.     Next, HTLF makes two alternative arguments for dismissal of the Trustee's knowing participation in breach of fiduciary duty and civil conspiracy claims.  *First*, HTLF claims the Trustee cannot plausibly allege that HTLF knowingly defrauded itself in a check kite.  *See* Mot. ¶ 33–37.  **Second**, HTLF insists that knowledge of and participation in a check kite is not knowledge of and participation in a Ponzi scheme.  *See* Mot. ¶¶ 39–42.  Neither point is persuasive, necessitating denial of HTLF's Motion.  The Trustee is entitled to pursue fulsome discovery from HTLF so the Trustee can secure appropriate compensation for HTLF's role in the Ponzi scheme and equitably distribute those proceeds to innocent victims of HTLF's misconduct.

22.     **HTLF knowingly defrauding itself.**  This part of the Motion offers a counterfactual narrative that: (a) HTLF just moved money in and out of investor accounts (Mot. ¶ 33); and (b) HTLF was the only bank giving provisional credit on those transactions (Mot. ¶¶ 34–36); so (c) HTLF is an innocent  Ponzi scheme "victim" (Mot. ¶ 34).  Not so.

23.     The first problem for HTLF is that the Trustee's live complaint alleges—in multiple places—that outgoing wires from HTLF caused immediate provisional credits in the Debtors' bank accounts for the relevant funds.  *E.g.*, Compl. ¶¶ 80 ("HTLF's agreement to engage, and engagement in, such an irregular arrangement whereby it held and completed blank checks for a non-customer, directly enabled McClain to continue to perpetuate the Ponzi scheme by enabling Debtors to both repay investors and temporarily recapitalize itself with the 'float,' which further enabled Debtors to continue to repay investors."); 127 ("[HTLF] acted as a 'shadow lender' to McClain by pre-paying him out of the investors' HTLF accounts before the underlying funds from Mechanics or CFSB cleared."); 154 (specifically alleging that "despite repeated and extended overdrafts in the millions of dollars, CFSB, Mechanics, and HTLF continued to honor the Debtors' NSF checks, both as payor and payee;" "CFSB and Mechanics, both via their payment of NSF checks **and continued automatic crediting of checks despite repeated prior overdrafts**, lent Debtors any fund shortfalls caused by overdrafts on Debtors' bank accounts at CFSB and Mechanics to perpetuate the fraudulent Ponzi scheme," and

"HTLF took the further step of creating 'float' for the Debtors by immediately crediting the corresponding customer's account in full for the check and immediately returning some or all of the floated funds back to the Debtors, repeating the circular transactions so many times it was evident the transactions could only have illicit motivations"). Those allegations contradict and negate HTLF's argument that the circular transactions at issue only inflated the balances of the 2B Farms accounts. The inescapable truth for HTLF is it knowingly coordinated with its co-defendants to inflate Debtors' bank account balances so McClain could pay investors with "float," *i.e.*, phantom money, sourced from HTLF. *See, e.g.,* Compl. ¶¶ 80, 127, 154.

24.    The second problem for HTLF is that the Trustee's live complaint explains why HTLF operated McClain's Ponzi scheme (*cf.* Mot. ¶ 37). HTLF profited from that Ponzi scheme by charging interest on the loans it made to McClain's investors, and HTLF's loan principal and interest was effectively secured by facially illegitimate profits from McClain's Ponzi scheme. If HTLF stopped manufacturing float for McClain, then HTLF would lose loan principal and interest income tied up in the Ponzi scheme. *See* Compl. ¶¶ 83 ("HTLF would loan Bo Robinson and/or 2B Farms money to invest with McClain, which loans were secured by their respective deposit accounts at HTLF. HTLF would therefore profit off of the interest it collected from its customers, who happily paid it since they were still securing significant 'guaranteed' profits to cover the interest, and then some, each time."); 156 ("HTLF was getting easy, free money by profiting off of the interest it would charge to loan the money to investors, including Bo Robinson and 2B Farms, who would in turn make money off of their purported investments and guaranteed profits. HTLF simply did not want to turn off its spigot of cash."). HTLF also benefited from increased deposit balances that resulted from its immediate crediting of investor accounts for incoming funds from Debtors through a larger lending base that could earn interest income, better liquidity, easier satisfaction of capital reserve regulations, and a higher business valuation. *See* Compl. ¶ 80.

25. The third problem for HTLF is that HTLF's revision of the Trustee's complaint does nothing more than articulate a "mere conduit" affirmative defense. That is obvious from HTLF's singular focus on "processing transactions" (Mot. ¶ 33) and "regular banking activity" (Mot. ¶ 34) that was merely "neutral, not inherently fraudulent" (Mot. ¶ 33). The Trustee reminds HTLF that the "mere conduit" affirmative defense is not ripe for adjudication at the motion to dismiss stage. *See In re Reagor-Dykes*, 2020 WL 4939180, at *4 ("[The] mere-conduit argument is an affirmative defense that is not appropriately considered on a motion to dismiss." (collecting cases)). HTLF cannot gain dismissal of the Trustee's claims simply by avoiding the "mere conduit" label and making substantially the same argument under a different set of labels.

26. The fourth problem for HTLF is it cannot secure dismissal by engaging in uninformed speculation about purportedly legitimate reasons for the endless circular flow of floated funds between HTLF and Debtors' bank accounts. *See* Mot. ¶ 37. The veracity of those alternative explanations is a matter for the trier of fact, not a court ruling on a motion to dismiss (where the sole focus is the factual allegations in, and inferences from, the plaintiff's complaint). *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) ("Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint."). The Court must reject HTLF's efforts to pre-litigate fact-heavy case theories best reserved for a trial on the merits.

27. In summary, HTLF's curated narrative about "knowingly defrauding itself" offers zero basis for dismissal. HTLF cannot selectively edit the Trustee's complaint to omit allegations that CFSB and Mechanics created float by immediately crediting Debtors' accounts for incoming funds from HTLF. Nor can HTLF delete the Trustee's allegations about HTLF's motive for operating the Ponzi scheme. And HTLF cannot secure dismissal based on fact-heavy affirmative defenses and post-hoc rationalizations for misconduct alleged by the Trustee.

28.    **A distinction without a difference:  check kiting versus Ponzi scheme**.  HTLF's next argument for dismissal of the Trustee's knowing participation in breach of fiduciary duty and civil conspiracy claims is that, even if HTLF knew it was operating a check kite, that is not tantamount to knowledge of a broader Ponzi scheme.  *See* Mot. 39–42.  That distinction without a difference is unpersuasive because HTLF misunderstands the as-pleaded allegations against HTLF in the Trustee's complaint.  HTLF's interpretation of the Trustee's live Complaint is misguided and cannot support dismissal of Trustee claims against HTLF.

29.    Per Paragraph 19 of this Objection, the Trustee's factual allegations show that HTLF actually knew about the Ponzi scheme because it was privy to a years-long pattern of **$265 million** in very suspicious transactions (Compl. ¶¶ 19–46, 77–83, 206 & Ex. B) that triggered automated internal check kiting and fraud alerts at HTLF (Compl. ¶¶ 77, 91, 100, 104), but HTLF operated the Ponzi scheme by kiting checks so McClain could pay investors with phantom funds (Compl. ¶¶ 77–83).  The Trustee's allegations about motive corroborate HTLF's knowledge of the Ponzi scheme.  HTLF lent money to investors for investment with McClain and charged interest on those loans.  Its recovery of loan principal and interest depended on facially illegitimate profits that investors earned on the Ponzi scheme (Compl. ¶¶ 80, 83, 127, 156; *see* Compl. ¶ 32 (describing how, at the end of the Ponzi scheme, the "turns" between investment and repayment accelerated to a completely unrealistic matter weeks or even days)).  HTLF also benefited from increased deposit balances that resulted from its immediate crediting of investor accounts for incoming funds from Debtors through a larger lending base that could earn interest income, better liquidity, easier satisfaction of capital reserve regulations, and a higher business valuation.  *See*  Compl. ¶ 80.

30.    Those factual allegations by the Trustee dispense with HTLF's cohort of purportedly missing factual allegations about HTLF's actual knowledge of the Ponzi scheme.  *See* Mot. ¶ 40.  Simply put, the Trustee has alleged concrete and particularized facts about HTLF's actual knowledge of the

Ponzi scheme, what HTLF did to operate that Ponzi scheme, and why HTLF would entangle itself in such a misadventure.  That is all that is required at the motion to dismiss stage, so HTLF cannot gain dismissal of the Trustee's knowing participation in breach of fiduciary duty and civil conspiracy claims against HTLF.  *See BG Gulf Coast LNG, L.L.C. v. Sabine-Neches Navigation Dist. of Jefferson Cnty., Tex.*, 49 F.4th 420, 424–25 (5th Cir. 2022) ("A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." (citations omitted and cleaned up)).

31.    **Civil conspiracy and underlying torts.**  In another attempt to avoid liability for its misconduct, HTLF makes another substantive argument in a footnote, which insists that the Trustee's civil conspiracy claim must fail for lack of an underlying tort.  Mot. ¶ 28 n.8.  HTLF is incorrect.  The Trustee pleaded a legally cognizable and factually plausible knowing participation in breach of fiduciary duty claim against HTLF and co-defendants CFSB, Mechanics, and Rabo.  That knowing participation claim supplies the underlying tort necessary for the Trustee's civil conspiracy claim against HTLF.  *E.g.*, *Willow Tree Consulting Grp., LLC, Trustee of TH Liquidating Trust v. Perkins Coie LLP*, No. 05-23-00264-CV, 2024 WL 575263, at *6 (Tex. App.—Dallas Feb. 13, 2024, pet. denied) (emphasizing that knowing participation in breach of a fiduciary duty can be the underlying tort for a civil conspiracy claim in Texas); *see also Caliber Home Loans, Inc. v. Cove*, Civil Action No. 3:22-CV-02298-M, 2025 WL 71983, at *17 n.23 (N.D. Tex. Jan. 10, 2025) (same).  The Court must reject HTLF's quietly footnoted "no-underlying-tort" argument because it plainly mistakes the basis for the Trustee's civil conspiracy claim against HTLF, CFSB, Mechanics, and Rabo.

32.    Overall, the Trustee is entitled to proceed to discovery on his knowing participation in breach of fiduciary duty and civil conspiracy claims against HTLF for at least five reasons.  ***First,*** HTLF admitted that the Trustee can prosecute HTLF for causing McClain to operate a Ponzi scheme, and that is the heart of the Trustee's claims.  ***Second,*** the Trustee's live complaint alleges concrete

and particularized facts showing that HTLF actually knew about, and actively operated, McClain's Ponzi scheme. ***Third,*** HTLF's argument about knowingly defrauding itself is a non-starter because it promotes an unstated "mere conduit" affirmative defense ill suited for the motion to dismiss stage by overlooking key allegations against HTLF in the live complaint. ***Fourth,*** HTLF's attempt to draw a distinction between knowledge of a check kite and knowledge of a Ponzi scheme misses the mark because the Trustee has alleged facts sufficient to show that HTLF had actual knowledge of, and took an active role in operating, McClain's Ponzi scheme. ***Fifth,*** HTLF's footnoted argument about the lack of an underlying tort capable of supporting a civil conspiracy claim ignores the Trustee's knowing participation in breach of fiduciary duty claim.

**D.    HTLF had a legally cognizable and factually plausible agency relationship with the Debtors, so the Trustee can pursue negligence and breach of fiduciary duty claims.**

33.    Knowing participation and civil conspiracy aside, HTLF requests dismissal of the Trustee's breach of fiduciary duty and professional negligence claims. Mot. ¶¶ 43–47. The latter two claims prosecute HTLF because it acted as the Debtors' agent when it: (a) took control of pre-signed blank checks for Debtors' bank accounts; (b) filled out those blank checks; and (c) deposited the checks into investor accounts. *See* Compl. ¶¶ 133–40, 159–67. HTLF disclaims liability for breach of fiduciary duty and professional negligence on the theory that the Trustee did not allege breach of a legal duty arising from the agency relationship, or allege how HTLF's actions proximately damaged the Debtors. Neither point merits dismissal.

34.    **Breach of a legal duty arising from the agency relationship.** As HTLF admits, an agency relationship creates fiduciary duties coextensive with the scope of the agency relationship. *See* Mot. ¶ 44 (citations omitted). HTLF further concedes that, under Texas law, an agency relationship of the kind alleged by the Trustee will "give rise to a duty of ordinary care with respect to the services to be provided." *See* Mot. ¶ 45 (citations omitted).

35.    Those legal principles defeat HTLF's motion to dismiss.  HTLF was an agent of the Debtors because HTLF filled out and deposited blank, pre-signed checks drawn on the Debtors' bank accounts.  Compl. ¶¶ 133, 162.  So HTLF had fiduciary duties—and a duty of ordinary care—to Debtors in connection with HTLF's handling of those blank, pre-signed checks.  Compl. ¶¶ 133, 162.  But HTLF breached those legal duties as follows: (a) HTLF knew about the Ponzi scheme because it was privy to a years-long pattern of **$265 million** in highly suspicious transactions (Compl. ¶¶ 19–46, 77–83, 134, 165–66, 206 & Ex. B), which triggered internal check kiting and fraud alerts at HTLF (Compl. ¶¶ 77, 91, 100, 104, 134, 165–66); yet (b) HTLF took no investigatory or corrective action; it instead actively operated the Ponzi scheme by kiting checks and transferring funds back to Debtors' bank accounts so McClain could pay investors with phantom funds (Compl. ¶¶ 77–83, 134, 165–66).  The Trustee's allegations about HTLF's motives confirm HTLF's breaches of its fiduciary duties (and duty of ordinary care) to the Debtors.  By operating the Ponzi scheme, HTLF prioritized its own interests at Debtors' expense.  HTLF loaned money to investors for investment with McClain and charged interest on those loans.  And HTLF's recovery of such loan principal and interest profit depended on the facially illegitimate profits that investors earned on the Ponzi scheme (Compl. ¶¶ 80, 83, 127, 134, 156, 165–66; *see* Compl. ¶ 32 (describing how, at the end of the Ponzi scheme, the "turns" between investment and repayment accelerated to an entirely unrealistic weeks or days)).  HTLF also benefited from increased deposits that resulted from HTLF's immediate crediting of investor accounts for incoming funds from the Debtors through a larger lending base that could earn interest income, better liquidity, easier satisfaction of capital reserve rules, and a higher valuation.  *See* Compl. ¶ 80.  Dismissal of the Trustee's claims is unwarranted here.

36.    HTLF argues around that dispositive analysis by suggesting that HTLF cannot be held liable because HTLF just filled out and deposited the blank, pre-signed checks on Debtors' accounts. Mot. ¶ 46.  But that reasoning omits the Trustee's allegations that HTLF actually knew a Ponzi scheme

was afoot, but chose to operate that fraudulent misadventure for HTLF's own purposes. The instant HTLF knew about the Ponzi scheme, its fiduciary duties (and duty of ordinary care) to the Debtors required immediate intervention by HTLF to stop the fraud and resulting financial damage to Debtors. *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Inc. Co.*, 235 S.W.3d 695, 700 (Tex. 2007); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) (outlining the scope of the fiduciary duties (or duty of ordinary care) that materialize from an agency relationship like that between HTLF and Debtors). Plainly, HTLF owed Debtors a duty because HTLF controlled Debtors' bank accounts by holding blank checks and making wire transfers. And HTLF knowingly, intentionally, and voluntarily breached those duties by operating a years-long, $2 billion Ponzi scheme.

37.    **Proximately caused damages**. Apart from breach, HTLF seeks dismissal for failure to allege proximate causation of direct damages to Debtors (Mot. ¶ 47). That fleeting argument by HTLF overlooks the Trustee's allegation that, "[b]y continuing to extend credit in the form of both dollars and a fictitious float, [HTLF] directly and proximately damaged Debtors by enabling them to incur nearly $200 million in debt—when Rabo had initially determined years earlier that Debtors were not qualified for a less than $2 million loan." Compl. ¶ 167. At all times, HTLF knew and reasonably foresaw that, the longer HTLF operated the Ponzi scheme (and the more money HTLF put into the Ponzi scheme), the more indebted Debtors became to HTLF, its co-defendants, and third parties. That explosion in indebtedness constitutes direct injury to the Debtors. So dismissal is unavailable to HTLF because the Trustee's live complaint plausibly alleges that HTLF proximately caused direct injury to Debtors by greatly increasing their indebtedness.

38.    HTLF then quibbles with the Trustee's factual allegations by interspersing its Motion with speculation about what McClain could have done to minimize damages, and alternative causes of Debtors' damages. Mot. ¶ 47 ("Had McClain simply returned the floated funds to HTLF and 2B

Farms, there would have been no damages to anyone.  Any damages arose out of the Debtors' Ponzi scheme, which was a superseding and intervening cause.").  The insurmountable problem with HTLF's reasoning is that HTLF (not the Trustee) bears the burden of proving its putative affirmative defenses of mitigation and causation, which are fact questions for trial that cannot be addressed at the motion to dismiss stage.  *See, e.g., Moreland v. U.S.*, Civil Action No. 3:11-CV-358-L, 2013 WL 3283700, at \*2 (N.D. Tex. June 28, 2013) ("The party asserting failure to mitigate has the burden of proving facts showing lack of such mitigation and must also show the amount by which damages were increased by failure to mitigate."); *Taylor Foundry Co. v. Wichita Falls Grain Co.*, 51 S.W.3d 766, 774 (Tex. App.—Fort Worth 2001, no pet.) ("Mitigation of damages is an affirmative defense that is designed to preclude the plaintiff's recovery if the plaintiff could have avoided any damages by his or her own reasonable efforts at slight expense."); *SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 477 (5th Cir. 2022) ("Questions of causation are factual issues …." (cleaned up)); *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 929 (Tex. 2015) ("Questions of causation such as proximate cause are normally treated as questions of fact ….").  And, to the extent that HTLF is re-urging its *in pari delicto* argument under a different label, that argument necessarily fails because, as explained above, *in pari delicto* cannot be decided on a motion to dismiss.

39.    The above discussion establishes that the Court must deny HTLF's motion to dismiss the Trustee's breach of fiduciary duty and negligence claims.  As pleaded, the live complaint plausibly alleges breach of legal duties arising from the agency relationship between HTLF and Debtors—and HTLF's proximate causation of direct damages to Debtors.

## E.    The Trustee has cognizable fraudulent transfer and preference claims against HTLF.

40.    HTLF finally advances a complex five-level argument for dismissal of the Trustee's fraudulent transfer and preference claims (*see* Mot. ¶¶ 48–64).  Properly untangled, HTLF really makes three overlapping arguments.  **_First_,** HTLF disclaims liability because it did not control the Debtors'

funds (Mot. ¶¶ 48–50, 54).  **_Second_**, HTLF disputes the amount of recoverable damages available to the Trustee on his fraudulent transfer and preference claims (Mot. ¶¶ 51–53, 55).  **_Third_**, HTLF insists that the Ponzi scheme presumption does not apply because the Debtors engaged in some legitimate business activity (a "Ponzi-like" scheme), so dismissal is required because the Trustee did not allege badges of fraud (Mot. ¶¶ 56–64).  As explained in turn below, none of those arguments merit dismissal, so the Court must deny HTLF's Motion.

41.    **Control of Debtor funds.**  HTLF attempts to litigate the fact issue of whether HTLF actually controlled Debtor funds through: (a) HTLF's possession of pre-signed blank checks drawn on the Debtors' accounts; (b) HTLF's application of Debtor funds to outstanding investor loan balances at HTLF; and (c) HTLF's wiring of funds received from the Debtors straight back to the Debtors.  (Mot. ¶¶ 48–50, 54; *see* Compl. ¶¶ 206–10).  Such factual analysis is improper on a motion to dismiss, where the Court must accept as true the Trustee's allegations that HTLF controlled Debtor funds in various ways.  *See Di Piazza v. Weather Grp. Television, LLC*, Civil Action No. 5:19-CV-060-C, 2019 WL 8107920, at *1 (N.D. Tex. June 3, 2019) ("The court must accept all factual allegations in a complaint as true and draw all reasonable inferences in the plaintiff's favor").  And HTLF's citation to *Barnhill v. Johnson* for dismissal of the Trustee's fraudulent transfer allegation about HTLF's control of Debtors' pre-signed blank checks does not help HTLF.  Mot. ¶ 48 (citing 503 U.S. 393, 401 (1992)).  *Barnhill* was not about control of funds through pre-signed blank checks.  Rather, *Barnhill* resolved a timing dispute by holding that a transfer eventuates when a bank honors a check, not when the payee receives the check.  *See* 503 U.S. at 394–95, 400–01.

42.    **Amount of recoverable damages.**  HTLF next admits that banks become transferees when they apply incoming funds to loan balances—and that the Trustee's live complaint alleges such transfers happened because HTLF applied the Debtors' funds to outstanding investor loan balances at HTLF.  Mot. ¶ 51.  But HTLF then tries to litigate the fact question of the damages available to the

Trustee by arguing against the Trustee's recovery of: (a) all Debtor transfers to investor accounts at HTLF; and (b) funds returned to the Debtors. Mot. ¶¶ 51–53, 55. The problem for HTLF is that the amount of fraudulently or preferentially transferred funds (and the amount of recoverable damages) is a fact question for trial, not motions to dismiss. *E.g., Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 550 n.10 (5th Cir. 2005) ("The foreseeability of damages is a fact question … and the amount of damages that was reasonably foreseeable involves a fact question that the plaintiff is entitled to present to a jury." (cleaned up)); *Neal v. U.S.*, 562 F.2d 338, 341 (5th Cir. 1977) ("As with all other questions of fact, the amount of damages found by the trial court to have been sustained by a plaintiff is not to be overturned unless clearly erroneous."). It may be that all of the Debtors' funds transferred to HTLF are subject to fraudulent or preferential transfer clawbacks because those funds were applied to outstanding HTLF loans. Or perhaps not all of those Debtor funds are recoverable as fraudulent or preferential transfers. The exact amount of recoverable funds can only be determined through fact discovery, and HTLF cannot unilaterally short-circuit the discovery process through premature efforts to adjudicate damages recoverable by the Trustee.

43.    **Ponzi scheme presumption and badges of fraud.** HTLF urges dismissal of the Trustee's fraudulent transfer and preference claims, ostensibly because the Ponzi scheme presumption does not apply and the Trustee did not allege badges of fraud. Mot. ¶¶ 56–64. That argument fails because: (a) the Trustee pleaded, and Judge Jones already found, that a Ponzi scheme was afoot; and (b) the Trustee's entitlement to the Ponzi scheme presumption absolves him of any requirement to plead badges of fraud for specific HTLF transactions.

44.    At the outset, the Trustee pleaded that McClain operated a Ponzi scheme through Debtors, whereby McClain solicited passive investors by promising to grow and sell large amounts of fictional cattle for profit. Those passive investors paid the Debtors large sums of money by check, wire, and other methods, based on McClain's promises that the passive investors would be repaid after

the ghost cattle were fattened and sold.  Because McClain never actually bought or sold ninety percent

of the cattle required under the investor arrangements, there were no actual sale proceeds from which

Debtors could repay investors, much less actual profits.  So McClain, CFSB, HTLF, Mechanics, and

Rabo jointly operated a massive check kite, and McClain solicited countless new investors.  Those

coordinated activities provided the cash needed to pay off preexisting investors and supply promised

returns on their phantom cattle.  Compl. ¶¶ 19–45, 110.

45.     That set of facts unquestionably constitutes a Ponzi scheme entitled to a presumption

of fraud because each constituent transfer was made for the purpose of hiding Debtors' insolvency

from then-unpaid investor-creditors.  Judge Jones made that exact point when he found that a Ponzi

scheme was afoot in the McClain cases, albeit in a sister adversary proceeding (24-02007) in which the

Trustee intervened.  On January 30, 2025, Judge Jones denied Mechanics' motion to say discovery

pending resolution of Mechanics' motion to dismiss the investor-plaintiff and intervenors' claims.

That motion to stay contended that the investor-plaintiff and intervenors' claims did not satisfy Rule

9(b)'s heightened pleading standard for fraud.  *See* Adversary No. 24-02007-SWE, ECF No. 92 ("MTS

Order") 1, 5–6.  In his order denying the motion to stay, Judge Jones noted that "Ponzi and kiting

schemes—this very action—allow for a presumption of fraud."  MTS Order 6 (citing, *inter alia*, *Janvey*

*v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 196 (5th Cir. 2013) ("This Court has held

that transfers from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi

scheme is, as a matter of law, insolvent from its inception."); *Sec. & Exch. Comm'n v. Resource Dev. Int'l,*

*LLC*, 487 F.3d 295, 301 (5th Cir. 2007) (same)).

46.     Because the Trustee is entitled to the Ponzi scheme presumption, he was not required

to allege any badges of fraud.  *E.g.*, *In re Texas E&P Operating, Inc.*, No. 17-34386-SGJ-7, 2022 WL

2719472, at *9 (Bankr. N.D. Tex. July 13, 2022) ("A trustee can avoid the burden of proving actual

fraudulent intent—or laboriously establishing different badges of fraud—in one situation identified

by the Fifth Circuit: when there was a Ponzi scheme (the 'Ponzi-Scheme Presumption').”); *Faulkner v.*

*AimBank (In re Reagor-Dykes Motors, LP)*, Adversary No. 20-05039, 2021 WL 1219537, at \*9–10 (Bankr.

N.D. Tex. Mar 30, 2021) (holding that, in furtherance of a fraudulent transfer claim, a complaint did

not need to allege badges of fraud, or that transfers were not for reasonably equivalent value, because

the transfers were part of a Ponzi-like check kiting scheme that permitted an inference of fraudulent

intent at the motion to dismiss stage—the court denied the motion to dismiss because the plaintiff's

fraudulent transfer allegations were legally sufficient).  The same legal principle and analysis disposes

of HTLF's arguments for dismissal of Trustee claims.

47.    HTLF resists the Trustee's dispositive analysis by questioning and disputing the Fifth

Circuit's binding caselaw about the Ponzi scheme presumption.  Mot. ¶ 59.  Regardless of the merits

of HTLF's argument, this Court is bound by comprehensive Fifth Circuit precedent confirming that,

when a Ponzi scheme is alleged, the plaintiff is entitled to the Ponzi scheme presumption and need

not allege specific badges of fraud.  *E.g.*, *Democratic Sen. Campaign Cmte.*, 712 F.3d at 196 (“[The Fifth

Circuit] has held that transfers from a Ponzi scheme are presumptively made with intent to defraud,

because a Ponzi scheme is, as a matter of law, insolvent from its inception.” (citing *Am. Cancer Soc'y v.

Cook*, 675 F.3d 524, 527 (5th Cir. 2012); *Warfield v. Byron*, 436 F.3d 551, 558–59 (5th Cir. 2006)); *Resource

Dev.*, 487 F.3d at 301 (“In this circuit, proving that [a scheme] operated as a Ponzi scheme establishes

the fraudulent intent behind the transfers.”).  This court should decline HTLF's invitation to revisit

the Fifth Circuit's settled jurisprudence about the availability of the Ponzi scheme presumption in

cases like the Trustee's lawsuit pending against HTLF.

48.    Presaging the futility of its disagreement with the Fifth Circuit, HTLF urges dismissal

on the basis that the Trustee alleged a “Ponzi-like” scheme incapable of triggering the Ponzi scheme

presumption.  *See* Mot. ¶¶ 60–61.  That argument is unpersuasive and cannot support dismissal of the

Trustee's fraudulent transfer and preference claims.

49.     _**First**_, it is an open question whether the Ponzi scheme presumption also applies to Ponzi-like schemes because the Fifth Circuit has never squarely addressed that question one way or the other. *See, e.g., In re Reagor-Dykes Motors, L.P.*, No. 18-50214-RLJ-11, 2021 WL 5094783, at *3 (Bankr. N.D. Tex. Oct. 29, 2021) ("The caselaw cited by the parties does not establish conclusively that the Ponzi scheme presumption has been extended to Ponzi-like schemes, nor that it has been limited to Ponzi schemes in their strictest sense.").

50.     _**Second**_, the Court need not resolve that doctrinal tension because, at the motion to dismiss stage, the Court must accept as true the Trustee's allegation that McClain operated a classic Ponzi scheme. Compl. ¶¶ 19–45, 110; *see In re Reagor-Dykes*, 2021 WL 5094783, at *3 ("What is relevant to this dispute is the Trustee's theory of the case, which rests on the Ponzi scheme presumption. The Court has already recognized that the Trustee's claims rest on the Ponzi-scheme presumption and held that is sufficient at the motion-to-dismiss stage.").

51.     _**Third,**_ HTLF never explains why a classic Ponzi scheme does not arise from the Trustee's allegation that McClain used sham Partnership Agreements to solicit new investors for his ghost cattle Ponzi scheme, then used "those new investments to pay for the high premiums promised to earlier investors." *Janvey v. Alguire*, 846 F. Supp. 2d 662, 672 (N.D. Tex. Sept. 6, 2011); *see also* Compl. ¶¶ 19–45, 110. At best, HTLF insists no classic Ponzi scheme existed because the Debtors had some legitimate business operations. Mot. ¶ 61. But HTLF ignores the possibility that McClain ran a Ponzi scheme and a legitimate business at the same time. HTLF tellingly cites no authority for the proposition that concurrent legitimate business activity vitiates the existence of a classic Ponzi scheme and makes it a Ponzi-like scheme not entitled to the Ponzi scheme presumption. Mot. ¶ 61. In contrast, the Trustee has located multiple cases confirming that legitimate business activities do not preclude a finding of a classic Ponzi scheme entitled to the eponymous presumption. *E.g., S.E.C. v. Helms*, No. A-13-CV-1036-ML, 2015 WL 1040443, at *8 (W.D. Tex. Mar. 10, 2015) ("The likelihood

that Vendetta Partners conducted some legitimate business operations does not counteract the existence of a Ponzi scheme because the distributions made to investors were nevertheless funded by other investors' money." (collecting cases)); *see In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 531, 535–36 (9th Cir. 1990) (concluding that a multiple-entity organization which solicited investments for production and sale of plants was fraudulent—even though the organization did in fact produce and sell a handful of plants for money); *In re IFS Fin. Corp.*, 417 B.R. 419, 440–41 (Bankr. S.D. Tex. 2009) ("The fact the scheme may have contained some revenue-generating businesses is not sufficient to defeat a finding of fraudulent intent where the revenue-generating businesses could not have reasonably been expected to fund the operations."). Those decisions remain faithful to the practical reality that many Ponzi schemes actually originate in legitimate business activities that spiral out of control when the principal promises unrealistic returns.

52.    Based on the foregoing discussion, the Trustee is entitled to rely on the Ponzi scheme presumption to establish that every single transaction between the Debtors and HTLF was made with actual intent to hinder, delay, or defraud the Debtors' creditors. HTLF has identified no cognizable reason to deprive the Trustee of the Ponzi scheme presumption because its arguments to the contrary misread the Trustee's live complaint, misapply settled Fifth Circuit law about the viability of the Ponzi scheme presumption, and misuse the existence of legitimate business activity as a way to circumvent the Trustee's allegations about a classic Ponzi scheme.

53.    Finally, HTLF would not be entitled to dismissal even if the Trustee was required to allege badges of fraud. *See* Mot. ¶¶ 62–64. The Trustee initially notes that HTLF's argument about reasonably equivalent value (Mot. ¶ 63) is a non-starter because—as a matter of law—every transfer made in furtherance of a Ponzi or Ponzi-like scheme **_cannot be_** in exchange for reasonably equivalent value. *See, e.g., Faulkner*, 2021 WL 1219537, at *9–*10.

54.     Moving on to badges of fraud, "[t]here is no clear authority on how many badges of fraud must be present to sufficiently establish actual intent under either TUFTA or the Bankruptcy Code." *Texas E&P*, 2022 WL 2719472, at *8 (cleaned up).  Although "a badge of fraud, standing alone, may amount to little more than a suspicious circumstance, insufficient in itself to constitute a fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable.  Not all, or even a majority, of the badges of fraud must exist to find actual fraud." *Id.* (cleaned up).  So courts faced with fraudulent transfer and preference claims "must consider all the factors and the totality of the circumstances" when passing on whether a plaintiff like the Trustee has alleged sufficient facts to show fraud.  *Id.* (cleaned up).

55.     The Trustee adequately identified transactions between the Debtors and HTLF (*see* Compl. ¶ 206 & Ex. B)—and alleged several Bankruptcy Code and TUFTA badges of fraud for every identified transfer as follows.  *Id.* (reciting badges of fraud in Bankruptcy Code contexts); Tex. Bus. & Com. Code § 24.005(b) (setting out TUFTA badges of fraud).  So HTLF is not entitled to dismissal because the Trustee sufficiently pleaded badges of fraud.

   a.    ***First***, the Bankruptcy Code and TUFTA both treat as a badge of fraud a close relationship between the debtor and transferee.  The Trustee's allegation about HTLF holding blank pre-signed checks on the Debtors' bank accounts (Compl. ¶¶ 77–83) adequately pleads that badge of fraud because HTLF at least plausibly qualifies as an agent or non-statutory insider of Debtors.  *E.g., In re Silver State Holdings, Assignee—7901 Boulevard 26 LLC*, Case No. 19-41579-MXM, Adversary No. 19-4043-MXM, 2020 WL 7414434, at *26 n.146 (Bankr. N.D. Tex. Dec. 17, 2020).

   b.    ***Second***, one TUFTA badge of fraud is concealment of the transfer.  The Trustee adequately pleaded that badge of fraud because the live complaint explains that all of the Debtors' transfers to HTLF were made in furtherance of a massive $2 billion check kiting-fueled Ponzi scheme that concealed the insolvent nature of McClain's ghost cattle operation from McClain's investors, who later became creditors (Compl. ¶¶ 19–45).

c.    ***Third,*** the Bankruptcy Code and TUFTA both treat as a badge of fraud the debtor's financial condition before and after the transaction in question. The Trustee sufficiently pleaded that badge of fraud because his live complaint states that the Debtors were insolvent at all relevant times, *i.e.*, from inception of the Ponzi scheme (Compl. ¶¶ 41, 53).

d.    ***Fourth,*** TUFTA treats as a badge of fraud the fact a transfer occurs shortly before or after a substantial debt was incurred. The Trustee adequately pleaded that badge of fraud by alleging HTLF's kiting of checks resulted in the Debtors immediately incurring two debts, one to HTLF for the value of the funds HTLF fronted into investor accounts, and one to Debtors' bank for account overdrafts (Compl. ¶¶ 80, 127, 154).

e.    ***Fifth,*** the Bankruptcy Code treats as a badge of fraud the general chronology of transfers under inquiry and cumulative effect of the transactions at issue. The Trustee sufficiently pleaded that badge of fraud by alleging that HTLF was privy to **$265 million** of suspicious transactions that put HTLF on notice about McClain's Ponzi scheme fraud, yet HTLF operated that Ponzi scheme by kiting checks (Compl. ¶¶ 77–83, 206 & Ex. B).

f.    ***Sixth,*** HTLF cannot dispute that its handling of blank, pre-signed checks on the Debtors' bank accounts, and the fact that HTLF moved hundreds of millions of dollars to and from Debtors' bank accounts with impunity, jointly lend themselves to a veneer of fraud that entitled the Trustee to pursue fact discovery against HTLF (Compl. ¶¶ 77–83, 206 & Ex. B). The totality of those inherently suspicious circumstances qualifies as a cognizable badge of fraud under the Bankruptcy Code and TUFTA.

## CONCLUSION AND PRAYER FOR RELIEF

56.    For the above reasons, the Trustee requests that the Court deny HTLF's motion to dismiss and allow the Trustee to pursue discovery. The Trustee alternatively seeks leave to amend his complaint to remedy any deficiencies. Such leave should be freely granted. *See Smith v. EMC Corp.,* 393 F.3d 590, 595 (5th Cir. 2004) ("Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend. A district court must possess a substantial reason to deny a request for leave to amend." (cleaned up)). Finally, the Trustee seeks all other relief to which he may justly be entitled.

Respectfully submitted,


*/s/ Alan Dabdoub*
Alan Dabdoub
  State Bar No. 24056836
  adabdoub@lynnllp.com
Campbell Sode
  State Nar No. 24134507
  csode@lynnllp.com
Farsheed Fozouni
  State Bar No. 24097705
  ffozouni@lynnllp.com
Steven G. Gersten
  State Bar No. 24087579
  sgersten@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
  2100 Ross Avenue, Suite 2700
  Dallas, Texas 75201
  Telephone:    214-981-3800
  Facsimile:    214-981-3839


*/s/ Hudson M. Jobe*
Hudson M. Jobe
  Texas Bar No. 24041189
  hjobe@jobelawpllc.com
**JOBE LAW PLLC**
  6060 North Central Expressway, Suite 500
  Dallas, Texas 75206
  (214) 807-0563


**SPECIAL COUNSEL TO THE TRUSTEE**


### CERTIFICATE OF SERVICE

I hereby certify that, on September 4, 2025, a true and correct copy of the foregoing was served via the Court's ECF system on all parties that have appeared and requested notice via the Court's ECF system.


*/s/ Alan Dabdoub*
Alan Dabdoub